**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARVIN PEARLSTEIN, Individually and on Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>    v.<br><br>BLACKBERRY LIMITED (formerly known as RESEARCH IN MOTION LIMITED), THORSTEN HEINS and BRIAN BIDULKA,<br><br>                   Defendants. | No. 1:13-cv-07060-TPG<br><br>ECF Case |
| BENYAMIN KOHANIM, Individually and on Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>    v.<br><br>BLACKBERRY LIMITED (formerly known as RESEARCH IN MOTION LIMITED), THORSTEN HEINS and BRIAN BIDULKA,<br><br>                   Defendants. | No. 1:13-cv-07132-TPG<br><br>ECF Case |
| VU TRAN, Individually and on Behalf of All Other Others Similarly Situated,<br><br>          Plaintiff,<br><br>    v.<br><br>BLACKBERRY LIMITED (formerly known as RESEARCH IN MOTION LIMITED), THORSTEN HEINS and BRIAN BIDULKA,<br><br>                   Defendants. | No. 1:13-cv-07972-TPG<br><br>ECF Case |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF MARK KATZ'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND IN OPPOSITION TO THE COMPETING MOTIONS**

Lead plaintiff movant Mark Katz respectfully submits this memorandum of law in further support of his motion for appointment as lead plaintiff and approval of lead counsel and in opposition to the competing motions.

## I.   PRELIMINARY STATEMENT

Four motions have been filed by individuals and unrelated groups of individuals seeking appointment as lead plaintiff in this action. The PSLRA requires a court to adopt the rebuttable presumption that "the most adequate plaintiff…is the person or group of persons that…has the largest financial interest in the relief sought by the class and otherwise satisf[ies] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii). After reviewing the competing motions, individual movant Mark Katz believes that he is the "most adequate plaintiff" as defined by the PSLRA, and should be appointed lead plaintiff.

The competing movants are, in descending order of claimed financial interest[1]:

- The self-styled Blackberry Limited Investor Group (for brevity, referred to herein as the "Piven Group"), comprising five apparently unrelated individuals claiming collective financial losses of $337,364;

- Todd Cox and Mary Dinzik (the "Cox-Dinzik Group"), also apparently unrelated individuals, claiming collective losses of $326,723;

- Individual investor Mark Katz, claiming losses of $224,334; and

- Individual investor Omar Ahmed, claiming losses of $210,458.

---

[1] The PSLRA does not provide a specific method for determining a movant's financial interest. Mark Katz and Omar Ahmed calculated their losses using the PSLRA's statutory damages cap, 15 U.S.C. §78u-4(e), while the Piven Group and Cox-Dinzik Group calculated their losses pursuant to principles articulated in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 347 (2005). Under *Dura*, shareholder damages as a result of a partial corrective disclosure are calculated as the number of shares held multiplied by the price drop caused by a partial corrective disclosure but cannot exceed the PSLRA's statutory damages cap. Under 15 U.S.C. §78u-4(e), shareholder damages are calculated as the number of shares held multiplied by the 90-day mean trading price of the security, beginning on the date of the corrective disclosure. Here, the competing movants' relative rankings are the same under either method.

II.    ARGUMENT[2]

A.    Legal Standards

Under the statutory scheme of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the Court must decide which of the four movants seeking appointment as lead plaintiff is "most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i). Because the lead plaintiff will serve as a fiduciary to prosecute the action on behalf of the entire putative class, the movant selected must *both* have the greatest financial stake in the litigation *and* meet the individual requirements for a class representative under Fed.R.Civ.P. 23. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

After identifying the movant with the largest financial interest, the Court must next determine whether that movant has also made a *prima facie* showing that it meets the typicality and adequacy requirements of Rule 23. If the movant satisfies these requirements, it becomes the "presumptive lead plaintiff." Thereafter, competing plaintiffs may submit "proof" that the presumptive lead plaintiff does not satisfy the requirements of Rule 23 or is subject to unique defenses. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (class members may provide evidence that movant "will not fairly and adequately protect the interests of the class").

B.    The Artificial, Lawyer-Created Groups Should Be Rejected

Two of the four competing movants claim larger financial losses than Mark Katz: the five-member Piven Group and the two-member Cox-Dinzik Group; however, "damages alone are not the only relevant consideration...and the analysis does not end there." *Switzenbaum v. Orbital Sciences Corp.*, 187 F.R.D. 246, 250 (E.D.Va.1999). The respective size of the movants'

---

[2] Because all movants have requested consolidation of these actions, Mark Katz respectfully refers the Court to his opening motion stating his arguments in favor of consolidation. *See* D.E. 15, at 3-4.

financial interests is merely the starting point of the analysis: A court may not simply "'presume' that the movant with 'the largest financial interest in the relief sought by the class' satisfies [Rule 23's] typicality and adequacy requirements." *In re Cendant Corp. Litig,* 264 F.3d 201, 264 (3d Cir. 2001).

The Piven Group and the Cox-Dinzik Group, although asserting the largest and second-largest losses of the competing movants, are not adequate representatives because they comprise apparently unrelated individuals, assembled by their lawyers to amass larger losses than individual movants. *See In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 224 (D.D.C.1999) ("The mere fact that a proposed lead plaintiff group might have the largest combined financial stake," does not show that it has the capacity to provide adequate representation for others.). Neither the Piven Group nor the Cox-Dinzik Group has explained its creation, demonstrated a collective ability to provide adequate representation for others, or offered any potential benefit over a motivated, individual lead plaintiff. As such, these lawyer created-and-controlled entities will not adequately represent absent class members, and should be rejected as lead plaintiff.

Although the PSLRA allows groups of investors to be appointed as lead plaintiff, *see* 15 U.S.C. §78u-4(a)(3)(B)(iii), courts uniformly require unrelated groups to demonstrate their ability to *collectively* manage the litigation, and "courts in this District do not hesitate to deny a proposed group's motion for lead-plaintiff status if the movants have not provided a sufficient evidentiary basis for aggregation or if the court otherwise is persuaded that the proposed group has been assembled as a makeshift by attorneys for the purpose of amassing…the greatest financial interest in the action." *Varghese v. China Shenghuo Pharmaceutical Holdings, Inc*., 589 F.Supp.2d 388, 392 (S.D.N.Y. 2008).); *see also Pipefitters Local No. 636 Defined Ben. Plan v. Bank of America Corp*., No. 11 Civ. 733 (WHP), 2011 WL 2461953, at *3 (S.D.N.Y. June 20,

2011) ("a proposed group must proffer an evidentiary showing that unrelated members of a group will be able to function cohesively and to effectively manage the litigation apart from their lawyers.").

1.      **The Piven Group**

The Piven Group bears several hallmarks of a makeshift, lawyer-assembled aggregation:

> The [] Group does not describe how or why the group was formed, how its members will work together to manage the litigation, whether a pre-litigation relationship existed between its members, or any other information about how such aggregation would benefit the class. The [] Group does not inform the Court whether its members have ever communicated with each other or plan to do so in the future, or if they are even aware of each other's existence. Indeed, the only submissions provided to the Court about the group members' interests and involvement in the litigation thus far are boilerplate certifications signed and dated by each group member.

Var*ghese,* 589 F.Supp.2d at 394.

Similarly, the Piven Group does not describe how or why it members came together as a group or how their aggregation benefits the class. Its members apparently are unaware of each other, unaware they are part of a group, and collectively lack any plan to organize their efforts. The group has not provided any explanation how it will formulate strategy, any protocols to resolve disputes or handle any emergencies that may arise, or any procedures its members will utilize to communicate apart from their attorneys (or any indication that they will). Consequently, there is nothing in the Piven Group's motion that suggests it will be able to efficiently and effectively manage this litigation as a group. "The burden is on those seeking to aggregate to demonstrate the cohesiveness of their purported 'group' and that failure to provide significant information about the identity of the members other than a conclusory statement of names, transactions for purchase of securities, and largest financial interest should result in

4

denial of their application for appointment as Lead Plaintiff." *In re Waste Management, Inc. Sec. Litig.*, 128 F.Supp.2d 401, 413 (S.D.Tex.2000.).

The Piven Group members' disproportionate investments are further indication that the group was assembled solely to create the largest loss, and "[a] particular concern arises when lead plaintiff status is sought by a 'group' of persons who were previously unaffiliated, each of whom have suffered modest losses, and who thus have ***no demonstrated incentive or ability to work together*** to control the litigation." *See In re Baan,* 186 F.R.D. at 224 (emphasis added). Here, while group member Linda Jui Lin Chang individually asserts more than 50% of the group's total financial interest, all the other members' contributions are substantially smaller: the next-largest, Batuhan Ulug, contributes only 21% of the group's total, and two other members – Yong M. Cho and Inamul Desai – contribute less than 10% each, with Desai providing a mere 2% of the total. *See* Declaration of Brian C. Kerr ("Kerr Decl."), Exhibit B, at 2-3 and 5-6 (D. E. 10).

Despite this disparity, the group member's provide no explanation of their incentives to form a group or any reason why such a wide-ranging lead plaintiff group would be beneficial to the class. The group's silence in this regard indicates that, at minimum, members Cho and Desai were included in the group only for whatever minuscule, incremental financial advantage they might provide over an individual movant, and "[n]othing before this Court indicates that these random cumulations of plaintiffs are anything more than an effort to achieve the highest possible 'financial interest.'" *In re Doral Fin. Corp. Sec. Litig.*, 414 F.Supp.2d 398, 401-02 (S.D.N.Y.2006). Instead, these additional, unnecessary members only complicate the group's already evident lack of organization, and further weaken its ability to effectively represent the class. *See In re Baan*, 186 F.R.D. at 224. ("The marginal benefit of including another member in

5

the group [should be] weighed against the further division of decisionmaking authority and the attendant problems that enlargement of the group entails."); *see also Wenderhold v. Cylink Corp.*, 188 F.R.D. 577, 586 (N.D.Cal.1999.) (rejecting aggregation where proposed group members "do not contribute a significant level of financial interest...[or] purport to possess any unique expertise that would enable them to monitor class counsel more effectively.").

Finally, any notion that the Piven Group came together independently of its attorneys is contradicted by its members' boilerplate certifications, which were signed across the span of nearly one month – but no two were signed on the same day. Kerr Decl., Exhibit A. (D. E. 10). Moreover, the certifications expressly delegate the decision whether to seek appointment "individually or as part of a group" – contrary to the PSLRA's goal of preventing lawyer-driven litigation. *See In re Donnkenny Inc. Sec. Litig.,* 171 F.R.D. 156, 157–58 (S.D.N.Y.1997) ("One of the principal legislative purposes of the [PSLRA] was to prevent lawyer-driven litigation. ...To allow lawyers to designate unrelated plaintiffs as a 'group' and aggregate their financial stakes would allow and encourage lawyers to direct the litigation."); *see also In re Cendant,* 264 F.3d, at 267 (lawyer-created group indicates its members "could not be counted on to monitor counsel in a sufficient manner.").

### 2.    The Cox-Dinzik Group

Despite its smaller size, all the Piven Group's deficiencies are also present in the Cox-Dinzik Group. As one Court in this District noted, "the fact that an unrelated group is small does not, in and of itself, make it a more acceptable lead plaintiff." *Beckman v. Ener1, Inc.*, No. 11 Civ. 5794 (PAC), 2012 WL 512651, at *3 (S.D.N.Y. Feb. 15, 2012). Although both members signed a single certification form, this group likewise provides no information about its members' relationship, their ability to work together, or any benefit to the class from their

aggregation. *See Niederklein v. PCS EdventuresA.com, Inc.*, No. 1:10-cv-00479-EJL-CWD, 2011 WL 759553, at *6 (D.Idaho Feb. 24, 2011) (rejecting two-member group that submitted merely boilerplate certifications, [i]nstead of explaining how the members...are prepared to work together to manage this litigation on behalf of the proposed class."). Also, like the Piven Group, the Cox-Dinzik Group does not describe any mechanisms, protocols or procedures for managing the litigation. Significantly, this two-member group also does not explain how it will resolve disputes, creating the potential that "disagreements within the lead plaintiff appointees end up disadvantaging the class." *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 119-20 (E.D.N.Y. 2012) (rejecting two-member group).

In addition, the Cox-Dinzik Group has not provided adequate information to evaluate its members independently. The group's certification lists numerous transactions but does not specify each member's individual transaction information. *See* Declaration of Kim E. Miller, Exhibit A, at 3-4 (D.E. 13-1). Consequently, this Court has no way of knowing whether its member's individual financial interests are substantially similar or – like the Piven Group – wildly disparate, and thus no way to gauge whether each member is sufficiently motivated to pursue this litigation. Moreover, the Cox-Dinzik Group certification lists prices for more than 50 purchases that are outside the price range at which BlackBerry Limited stock traded on those days – some by 10% or more, resulting in a more than $82,000 discrepancy between their certification and the historical data. *See* Declaration of Gregory B. Linkh In Further Support of Mark Katz's Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel, Exhibit A, attached hereto. As a result, the Cox-Dinzik Group has failed to provide reliable information about the group's *collective* financial interest – much less its individual members' incentives.

C. **Mark Katz Is The Movant With The Largest Financial Interest Who Also Satisfies The Requirements Of Rule 23 And Should Be Appointed Lead Plaintiff**

Appointing Mark Katz as lead plaintiff avoids all of the competing groups' infirmities and provides the class with a single, highly motivated investor who can efficiently supervise counsel and whose substantial financial interest in this litigation – comparable to or greater than competing movants – demonstrates his incentive to prosecute this case to a successful conclusion. *See In re Razorfish, Inc. Sec. Litig.*, 143 F.Supp.2d 304, 308 (S.D.N.Y.2001) (concluding a single entity can more effectively supervise counsel than a four-member group that "has no independent existence and its composite members have no prior relationship."). Moreover, unlike the Piven Group and the Cox-Dinzik Group, there is nothing to suggest that Mark Katz does not satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure.

Mark Katz has demonstrated that he will fairly and adequately protect the interests of the class as a result of his significant financial stake in this litigation. As evidenced by Glancy Binkow & Goldberg LLP's firm résumé, previously filed with the Court (D.E. 16, Exhibit D), Mark Katz has retained experienced counsel, and he is ready, willing and able to provide vigorous prosecution of the claims in this action on behalf of absent Class members.

## III.    CONCLUSION

For the foregoing reasons, and those stated in his opening motion, Mark Katz respectfully asks the Court to grant his motion and enter an Order (a) consolidating the above-captioned actions, (b) appointing Mark Katz as lead plaintiff, (c) approving his selection of Glancy Binkow & Goldberg LLP as lead counsel for the Class, and granting such other relief as the Court may deem just and proper.

Respectfully submitted,

DATED: December 20, 2013        GLANCY BINKOW & GOLDBERG LLP

By:   *s/ Gregory B. Linkh*
Gregory B. Linkh (GL 0477)
Brian P. Murray (BM 9954)
122 East 42nd Street, Suite 2920
New York, New York 10168
Tel: (212) 682-5340
Fax: (310) 201-9160
Email: glinkh@glancylaw.com

-and-

GLANCY BINKOW & GOLDBERG LLP
Lionel Z. Glancy
Michael Goldberg
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Tel: (310) 201-9150
Fax: (310) 201-9160

*Proposed Lead Counsel*

**PROOF OF SERVICE VIA ELECTRONIC POSTING PURSUANT TO SOUTHERN DISTRICT OF NEW YORK LOCAL RULES AND ECF RULES AND INSTRUCTIONS**

I, the undersigned, say:

I am a citizen of the United States and am employed in the office of a member of the Bar of this Court.  I am over the age of 18 and not a party to the within action.  My business address is 122 East 42nd Street, Suite 2920, New York, New York 10168.

On December 20, 2013, I caused to be served the following document:

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF MARK KATZ'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND IN OPPOSITION TO THE COMPETING MOTIONS**

By posting the document to the ECF Website of the United States District Court for the Southern District of New York, for receipt electronically by the following parties:

**See attached Service List.**

And on any non-ECF registered party:

**By Mail**: By placing true and correct copies thereof in individual sealed envelopes, with postage thereon fully prepaid, which I deposited with my employer for collection and mailing by the United States Postal Service.  I am readily familiar with my employer's practice for the collection and processing of correspondence for mailing with the United States Postal Service.  In the ordinary course of business, this correspondence would be deposited by my employer with the United States Postal Service that same day..

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on December 20, 2013, at New York, New York.

*s/ Gregory B. Linkh*
Gregory B. Linkh

# Mailing Information for a Case 1:13-cv-07060-TPG

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **James Joseph Beha , II**
  jbeha@mofo.com,docketny@mofo.com

- **Bruce Whitney Dona**
  bruce.dona@ksfcounsel.com

- **Jordan Eth**
  jeth@mofo.com

- **Joel Charles Haims**
  jhaims@mofo.com,docketny@mofo.com

- **Brian C. Kerr**
  kerr@browerpiven.com

- **Gregory Bradley Linkh**
  glinkh@glancylaw.com

- **Dan Edward Marmalefsky**
  dmarmalefsky@mofo.com,skay@mofo.com,docketny@mofo.com

- **Kim Elaine Miller**
  kim.miller@ksfcounsel.com,kimmiller225@yahoo.com

- **Peter George Safirstein**
  psafirstein@forthepeople.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)