**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------ x
MARVIN PEARLSTEIN, Individually and on
Behalf of All Others Similarly Situated,          :

                 Plaintiff,          :

          - against -          :

BLACKBERRY LIMITED, THORSTEN HEINS,
and BRIAN BIDULKA          :

                Defendants.          :
------------------------------------------------------------------ x

**ECF CASE**

No. 13 Civ. 7060 (TPG)
(Consolidated)

Oral Argument Requested


**DEFENDANTS' REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF THEIR MOTION**
**TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT**


MORRISON & FOERSTER LLP

250 West 55th Street
New York, New York 10019
(212) 468-8000

*Attorneys for Defendants*

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................................ 1

I.     PLAINTIFFS FAIL TO MEET THE REFORM ACT'S EXACTING STANDARDS ................................................................................................................... 2

II.    PLAINTIFFS FAIL TO ADEQUATELY ALLEGE ANY FALSE STATEMENTS ................................................................................................................. 2

    A.     Plaintiffs Must Plausibly Allege That Defendants Did Not Believe Their Subjective Accounting Judgments at the Time They Were Made .......................... 2

    B.     Lack of Particularized Facts Demonstrating That BlackBerry's Revenue Recognition Judgments Were Both Objectively and Subjectively False ............... 4

        1.     Vague allegations about inventory, return, and sell-through levels are not sufficient to plead that BlackBerry's revenue accounting was false ................................................................................................... 4

        2.     Allegations about product novelty and market competition are insufficient to plead that BlackBerry's revenue accounting was false ...................................................................................................... 5

        3.     Allegations about BlackBerry's subsequent revenue accounting are impermissible "fraud-by-hindsight" ............................................................ 6

    C.     Lack of Particularized Facts Showing That Inventory and Supplier Commitment Reserves Were Both Objectively and Subjectively False ................ 7

    D.     Plaintiffs Fail to Allege a Misstatement about the Z10 Launch ............................ 8

    E.     Plaintiffs Fail to Allege a Material Omission Based on Item 303 ......................... 8

    F.     Corporate Optimism and Forward-Looking Statements Are Not Actionable ............................................................................................................... 9

III.   PLAINTIFFS FAIL TO PLEAD FACTS RAISING A STRONG INFERENCE OF SCIENTER .......................................................................................................................... 9

    A.     Plaintiffs Fail to Plead Fraudulent Motive ........................................................... 10

    B.     Plaintiffs Fail to Plead Strong Circumstantial Evidence of Conscious Misbehavior or Recklessness ................................................................................ 11

IV.   PLAINTIFFS FAIL TO ALLEGE LOSS CAUSATION ................................................. 12

V.    PLAINTIFFS FAIL TO PLEAD CONTROL PERSON LIABILITY ............................. 12

CONCLUSION ........................................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Aldridge v. A.T. Cross Corp.*,
   284 F.3d 72 (1st Cir. 2002) .................................................................................................. 10

*ATSI Comm'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007) ..................................................................................................... 2

*Bd. of Trs. of Ft. Lauderdale Empl. Ret. Sys. v. Mechel OAO*,
   811 F. Supp. 2d 853 (S.D.N.Y. 2011) .................................................................................. 11

*CLAL Fin. Batucha Inv. Mgmt., Ltd. v. Perrigo Co.*,
   No. 09 Civ. 2255 (TPG), 2010 WL 4177103 (S.D.N.Y. Oct. 7, 2010) .................................. 7

*ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009) ............................................................................................. 9, 11

*Fait v. Regions Fin. Corp.*,
   655 F.3d 105 (2d Cir. 2011) ................................................................................................ 2, 3

*Fant v. Perelman*,
   No. 97 Civ. 8435 (LAP), 1999 WL 199078 (S.D.N.Y. Apr. 9, 1999) .................................. 11

*In re Bear Stearns Cos.*,
   763 F. Supp. 2d 423 (S.D.N.Y. 2011) .................................................................................... 7

*In re Bristol Myers Squibb Co. Sec. Litig.*,
   586 F. Supp. 2d 148 (S.D.N.Y. 2008) .................................................................................. 12

*In re Cabletron Sys.*,
   311 F.3d 11 (1st Cir. 2002) .................................................................................................. 10

*In re Fannie Mae 2008 Sec. Litig.*,
   742 F. Supp. 2d 382 (S.D.N.Y. 2010) .................................................................................... 6

*In re MF Global Hldgs Ltd. Sec. Litig.*,
   982 F. Supp. 2d 277 (S.D.N.Y. 2013) .................................................................................... 3

*In re Nokia Oyj Sec. Litig.*,
   423 F. Supp. 2d 364 (S.D.N.Y. 2006) .................................................................................. 12

*In re NVIDIA Corp. Sec. Litig.*
   No. 11-17708, 2014 WL 4922264 (9th Cir. Oct. 2, 2014) ..................................................... 8

*In re Omnicom Grp., Inc. Sec. Litig.*,
   No. 02 Civ. 4483 (RCC), 2005 WL 735937 (S.D.N.Y. Mar. 30, 2005) ................................. 10

*In re Optionable*,
   577 F. Supp. 2d 681 (S.D.N.Y. 2008) ............................................................................................. 5

*In re Scholastic Corp. Sec. Litig.*,
   252 F.3d 63 (2d Cir. 2001) ....................................................................................................... 9, 11

*In re ShengdaTech, Inc. Sec. Litig.*,
   No. 11 Civ. 1918 (LGS), 2014 WL 3928606 (S.D.N.Y. Aug. 12, 2014) ................................ 11

*In re Top Tankers, Inc. Sec. Litig.*,
   528 F. Supp. 2d 408 (S.D.N.Y. 2007) ........................................................................................... 8

*In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*,
   202 F. Supp. 2d 8 (S.D.N.Y. 2001) ................................................................................................ 8

*In re UBS AG Sec. Litig.*,
   No. 07 Civ. 11225, 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012) ....................................... 6, 7

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir. 2001) ......................................................................................................... 12

*Kapps v. Torch Offshore, Inc.*,
   379 F.3d 207 (5th Cir. 2004) .......................................................................................................... 8

*Malin v. XL Cap., Ltd.*,
   312 F. App'x 400 (2d Cir. 2009) ................................................................................................. 12

*Matrixx Initiatives, Inc. v. Siracusano*,
   131 S.Ct. 1309 (2011) ...................................................................................................................... 9

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000) ........................................................................................................... 7

*Pirraglia v. Novell, Inc.*,
   339 F.3d 1182 (10th Cir. 2003) ................................................................................................... 10

*Rothman v. Gregor*,
   220 F.3d 81 (2d Cir. 2000) ....................................................................................................... 7, 11

*S. Cherry St. LLC v. Hennessee Grp. Ltd.*,
   573 F.3d 98 (2d Cir. 2009) ........................................................................................................... 10

*S.E.C. v. Cotton,*
   No. 06 Civ. 0905 (AG), 2006 WL 63821128 (C.D. Cal. Dec. 21, 2006) ............................. 5, 6

*Scibelli v. Roth*,
   No. 98 Civ. 7228, 2000 WL 122193 (S.D.N.Y. Jan. 31, 2000)............................................3, 4

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)..................................................................................................2, 10

*Va. Bankshares v. Sandberg*,
   501 U.S. 1083 (1991).......................................................................................................3

**OTHER AUTHORITIES**

Raising Capital in the United States Under the Multijurisdictional Disclosure System, A
   Business Law Guide (2009)...........................................................................................8

**INTRODUCTION**

Plaintiffs gloss over the Reform Act's stringent pleading requirements.  Plaintiffs' core claim is that BlackBerry falsified revenue and inventory accounting for its Z10 devices on two dates: **March 28, 2013**—when reporting results for the fiscal year ended March 2, 2013; and **June 28, 2013**—when reporting results for the quarter ended June 1, 2013.  Yet rather than particularize any facts about what defendants knew on those two dates, plaintiffs instead (1) refer vaguely to information allegedly available "during the class period," which continued for months after June 28, 2013; and (2) obscure that the Z10 was not even for sale in the United States and many other markets as of March 2, and then only available for two months the next quarter.

Without a single internal document or percipient witness to support their claims, plaintiffs try to transform internet articles about isolated retailer discounts into allegations of "systemic" price discounting.  They also argue that because BlackBerry applied a different revenue recognition judgment for the quarter ending August 31, 2013—deferring recognition of revenue on Z10 devices sold to distributors until the devices "sold through" to retail consumers, the accounting for Z10 revenues in earlier periods must have been fraudulent.  This is classic fraud-by-hindsight pleading and ignores that BlackBerry reconfirmed and has never restated (and its independent auditors approved) the earlier accounting.

Plaintiffs also assert—without pointing to any facts alleged in the complaint—that BlackBerry "represented that there was no uncertainty about the Z10" and gave only "boilerplate" warnings to investors (Opp. at 9, 15), ignoring BlackBerry's express warnings that its "future success continue[s] to be significantly dependent on its ability to successfully complete its transition to its next-generation BlackBerry 10 smartphones"; that if "BlackBerry 10 smartphones[ ] do not…achieve acceptance of its customers, the Company's business and

prospects could be materially harmed"; and that "[t]here cannot be any assurance" that BlackBerry 10 would "achieve broad customer acceptance."  (Mot. at 4.)

Because the complaint's threadbare factual allegations do not support their claims, plaintiffs mischaracterize the law, which requires (a) heightened pleading for securities fraud; (b) pleading *both* subjective *and* objective falsity of accounting judgments (*see Fait v. Regions Fin. Corp.*, 655 F.3d 105 (2d Cir. 2011)); and (c) meeting the Second Circuit's well-established standards for pleading scienter.  The Court should dismiss the complaint with prejudice.

## I.     PLAINTIFFS FAIL TO MEET THE REFORM ACT'S EXACTING STANDARDS

The Reform Act's "[e]xacting pleading requirements" (*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007)) require plaintiffs to explain why challenged statements were fraudulent when made and state *with particularity* facts giving rise to a strong inference of fraudulent intent, (*ATSI Comm'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007)).  While plaintiffs pay lip service to this standard—asserting that they alleged "detailed facts" (Opp. at 2), their complaint lacks the factual particularity the Reform Act requires.

## II.    PLAINTIFFS FAIL TO ADEQUATELY ALLEGE ANY FALSE STATEMENTS

### A.     Plaintiffs Must Plausibly Allege That Defendants Did Not Believe Their Subjective Accounting Judgments at the Time They Were Made

To plead the falsity of subjective accounting judgments, plaintiffs must "plausibly allege that defendants did not believe the statements...at the time they made them."  (Mot. at 16 (quoting *Fait*, 655 F.3d at 112).)  Plaintiffs assert they "need only sufficiently plead that 'the opinion was without a basis in fact *or* the speakers were aware of facts undermining the positive statements.'"  (Opp. at 7.)  Not so.  A complaint about subjective accounting judgments must allege "that defendant's opinions were both false *and* not honestly believed when they were

made." *Fait*, 655 F.3d at 113 (citing *Va. Bankshares v. Sandberg*, 501 U.S. 1083, 1095 (1991) (subjective statements actionable if *both* "made with knowledge that the [defendants] did not hold the beliefs or opinions expressed" *and* "also mislead[ing] about the stated subject matter").

*First*, while plaintiffs argue that *Fait* "did not hold that **all** accounting decisions are inherently subjective" (Opp. at 8 n.4 (emphasis in original)), where, as here, "applicable accounting practice involves estimates of subjective values, *Fait*'s standard applies." *In re MF Global Hldgs Ltd. Sec. Litig.*, 982 F. Supp. 2d 277, 313 (S.D.N.Y. 2013).  *Second*, while arguing BlackBerry's accounting judgments were based on "objective standards" (Opp. at 11), plaintiffs admit that BlackBerry's revenue recognition was based on "estimate[s] [of] future price concessions" (*id*. at 6); its inventory accounting was based on "management belie[f]" about whether "demand...allows the Company to sell inventories above cost" (*id*. at 10); and its supplier commitment accounting was based on "current volume-based projections" (*id*. at 11). Estimates, beliefs, and projections are subjective matters governed by *Fait*.  Plaintiffs cannot "point to any objective standard...that [BlackBerry] should have but failed to use" in arriving at these estimates, beliefs, and projections.  *Fait*, 655 F.3d at 110.  As a result, plaintiffs must allege "provable facts to demonstrate that the statement of opinion [was] both objectively and subjectively false" at the time it was made.  *In re MF Global*, 982 F. Supp. 2d at 305.[1]

Finally, to mask the failure to plead contemporaneous facts, plaintiffs repeatedly refer to "the Class Period"—a period lasting months after the alleged accounting misstatements.  (*See*, *e.g.*, Opp. at 6-7.)  Allegations through September 20, 2013 are insufficient to allege falsity of statements made months earlier in March and June.  *See*, *e.g.*, *Scibelli v. Roth*, No. 98 Civ. 7228,

---

[1] As discussed below, plaintiffs fail to plead particular facts demonstrating that defendants did not believe the challenged accounting judgments.  Instead, they merely assert in conclusory and circular fashion that the revenue recognition was objectively false, so it must necessarily have been subjectively false. (*See* Opp. at 8, n.4.)

2000 WL 122193, at * (S.D.N.Y. Jan. 31, 2000) (it is "not a reasonable inference" to assume prior knowledge based upon actual knowledge at a later date).[2]

### B. Lack of Particularized Facts Demonstrating That BlackBerry's Revenue Recognition Judgments Were Both Objectively and Subjectively False

#### 1. Vague allegations about inventory, return, and sell-through levels are not sufficient to plead that BlackBerry's revenue accounting was false

Plaintiffs argue that BlackBerry should have deferred recognizing revenue on the Z10 through June 1, 2013 (the end of the first quarter) because of "excess levels of inventory," "substantially lower sell through," and "higher than expected returns." (Opp. at 6.) While they assert that "the Complaint contains numerous facts...from this time period specifically corroborating these allegations [about inventory levels and return rates]," it does not. Plaintiffs rely solely on an insufficient cherry-picked selection of third-party articles, blog posts, and analyst reports. (*See* Opp. at 8, citing Compl. ¶¶ 71-72.)

Those reports do not demonstrate that BlackBerry's revenue recognition judgments were false. Plaintiffs claim they demonstrate "systematic price concessions" and "disappointing sales, price cutting, and high returns" for "important smartphone retailers and carriers worldwide...." (Opp. at 8.) The reports say no such things. For example, the "report" about Verizon is a *New York Post* article about discounts at *a single Verizon store in Queens*; it says nothing about "systemic price concessions" at Verizon. (Compl. ¶ 54.) Reported discounts by other carriers also say nothing about returns or inventory levels. (*See id.*) Isolated reports of discounting and analyst speculation about poor sales do not constitute particularized facts about inventory, sell

---

[2] Nor do plaintiffs tie their assertions about events "during the class period" to actual complaint allegations. Plaintiffs baldly assert that "[a]s a result of anemic sales and larger than expected returns of Z10s, BlackBerry was forced, beginning at the launch, to offer significant price concessions to retailers." (Opp. at 7.) In fact, there are no factual allegations in the complaint about (1) Z10 sales levels at the launch, (2) either expected or actual Z10 return levels, or (3) price concessions offered to retailers at the launch.

through, and returns; thus, they fail plausibly to allege that BlackBerry's revenue recognition was objectively and subjectively false. Moreover, contrary to plaintiffs' suggestion, each article refers to *retailer and carrier* discounting; nothing in those reports suggests BlackBerry was responsible for the isolated discounts described. (*See* Opp. at 4; Mot. at 13.) The unremarkable fact that BlackBerry supported a new product with "marketing spending and sale incentives" (Opp. at 5) does not mean that it was responsible for discounting at a Verizon store in Queens.

Nor should the Court credit sources such as "Emirates 24/7," "BBin," "Know Your Mobile India" and "CrackBerry.com," because plaintiffs fail to plead sufficient basis for the Court to conclude that those sources were "likely to have known the relevant facts." *In re Optionable*, 577 F. Supp. 2d 681, 690 (S.D.N.Y. 2008). Plaintiffs argue that these internet postings should be credited as "reputable business and analyst reports" (Opp. at 12), but articles are "credited only [as] other factual allegations would be—if they are sufficiently particular and detailed to indicate their reliability." *In re Optionable*, 577 F. Supp. 2d at 690.

### 2. Allegations about product novelty and market competition are insufficient to plead that BlackBerry's revenue accounting was false

Plaintiffs argue that GAAP required BlackBerry to defer recognition of revenue because of "the newness of the product," market competition, and BlackBerry's experience with launches of earlier products, but their cited authorities do not support that proposition. (Opp. at 9.) *S.E.C. v. Cotton*, for example, did not concern judgments about the reasonableness of revenue recognition, but rather such fraudulent practices as "recognizing revenue of product that had not been ordered during the quarter; improperly recognizing revenue on sales that gave distributors [full exchange rights]; entering into undisclosed side agreements with distributors that included return rights; shipping product in excess of the amount ordered or shipping product that was not

ordered at all; and recognizing revenue on a contingent sale." No. 06 Civ. 0905 (AG), 2006 WL 63821128, at *1 (C.D. Cal. Dec. 21, 2006). No similar facts are alleged here.

Plaintiffs also assert that, by recognizing revenue, "Defendants represented there was no uncertainty about the Z10." (Opp. at 9.) In fact, BlackBerry warned investors in detail about the risks and uncertainty associated with the Z10 launch, including that it was "engaged in an industry that is highly competitive"; it faced "intense competition from a number of companies"; "[t]here can be no assurance that the Company will be able to compete successfully and withstand competitive pressures"; and "[t]here cannot be any assurance that the technologies and related hardware or software products and services that the Company develops …will achieve broad customer acceptance among operators or end users." (Mot. at 3-5.)

### 3. Allegations about BlackBerry's subsequent revenue accounting are impermissible "fraud-by-hindsight"

Plaintiffs argue that BlackBerry's Q2-2014 (ending August 31, 2013) decision to defer recognizing revenue until devices sold through to end-users "was effectively an admission that the prior methodology was...improper." (Opp. at 12.) Arguing that a subsequent accounting judgment renders a previous one fraudulent is impermissible "fraud-by-hindsight." "[T]hat a financial item is accounted for differently, or in a later period, does not support an inference that a previously filed financial statement was fraudulent." *In re Fannie Mae 2008 Sec. Litig.*, 742 F. Supp. 2d 382, 409 (S.D.N.Y. 2010). Plaintiffs also ignore that when BlackBerry announced the Q2-2014 results (which plaintiffs do not challenge): (i) it explicitly reaffirmed its prior accounting judgments, thus affirmatively refuting any suggestion of an admission; (ii) its independent auditors approved the challenged accounting; and (iii) it did not then or ever restate the relevant financial statements. (Mot. at 23.) *See In re UBS AG Sec. Litig.*, No. 07 Civ. 11225,

2012 WL 4471265, at *18 (S.D.N.Y. Sept. 28, 2012) (that auditor did not require restatement undercuts allegations of recklessness).

### C. Lack of Particularized Facts Showing That Inventory and Supplier Commitment Reserves Were Both Objectively and Subjectively False

Plaintiffs do not rely on a single internal document or any percipient witness to argue that BlackBerry's inventory and supplier accounting was false. Instead, they cite the same blogs and articles. (Opp. at 11-12.) Those reports lack any specific facts about inventory levels or supplier commitments and, thus, are insufficient to plead either objective or subjective falsity. (*See* Mot. at 19.) By contrast, plaintiffs' cited cases all involved detailed facts from internal reports, statements by company employees, or other information contradicting the defendants' public statements at the time they were made. In both *Novak v. Kasaks*, 216 F.3d 300, 312 (2d Cir. 2000) and *In re Bear Stearns Cos.*, 763 F. Supp. 2d 423, 449, 460 (S.D.N.Y. 2011) (Opp. at 12), plaintiffs identified specific internal reports showing that company assets were overvalued and alleged that the defendants reviewed those same reports. And in *CLAL Fin. Batucha Inv. Mgmt., Ltd. v. Perrigo Co.*, No. 09 Civ. 2255 (TPG), 2010 WL 4177103, at *7 (S.D.N.Y. Oct. 7, 2010) (Opp. at 12), this Court determined that the defendant overvalued its auction rate securities ("ARS") portfolio because it knew that the banks managing ARS auctions had stopped propping up the market and that the issuer, Lehman Bros., had filed for bankruptcy.

Not only do plaintiffs fail to plead facts sufficient to show that accounting charges should have been taken earlier, they also fail to allege *when* those charges should have been taken. While they need not "fix the exact date and time," plaintiffs "must supply some factual basis for the allegation that the defendants had reached this conclusion [that a charge was warranted] at some point during the time period alleged." *Rothman v. Gregor*, 220 F.3d 81, 91 (2d Cir. 2000).

### D. Plaintiffs Fail to Allege a Misstatement about the Z10 Launch

Plaintiffs argue that they have alleged misstatements about "historic and current demand for [BlackBerry's] Z10" (Opp. at 4), but identify only Mr. Heins's April 12, 2013 statement that (i) "sales…are meeting expectations"; (ii) "the data we have collected …demonstrates that customers are satisfied"; and (iii) "return rate statistics…are at or below our forecasts…." (Opp. at 19.) To state a fraud claim, plaintiffs must explain how those statements were false when made; however, plaintiffs do not plead any contemporaneous facts about BlackBerry's sales levels, customer satisfaction or return rate statistics or any facts contradicting these statements.

### E. Plaintiffs Fail to Allege a Material Omission Based on Item 303

Plaintiffs fail to demonstrate that BlackBerry was subject to obligations to disclose any "known trend." Item 303 of Regulation S-K does not apply to foreign private issuers filing on Form 40-F.[3] (Mot. at 20.) Indeed, plaintiffs admit that, as an eligible Canadian issuer, BlackBerry reported under the multi-jurisdictional disclosure system, rather than under Regulation S-K.[4] (Opp. at 14.) Plaintiffs suggest Ontario law imposes similar disclosure requirements, but have not alleged a violation of Ontario law and do not cite any authority permitting a Section 10(b) claim based on Canadian securities law. (Opp. at 14-15.)[5] Nor does

---

[3] Plaintiffs note that *In re Top Tankers* involved Item 304 rather than Item 303 (Opp. at 14, n.9), but of course both are part of Regulation S-K, to which the court correctly noted "foreign private issuers are not subject...." *In re Top Tankers, Inc. Sec. Litig.*, 528 F. Supp. 2d 408, 416 (S.D.N.Y. 2007).

[4] The MJDS "permits eligible Canadian and U.S. issuers to…make continuous disclosure filings while complying primarily with their home country securities regulations, including disclosure and procedural rules." Raising Capital in the United States Under the Multijurisdictional Disclosure System, A Business Law Guide (2009) (available at http://www.torys.com/Publications/Documents/Publication %20PDFs/Raising_Capital_US_MJDS.pdf) at 1.

[5] Nor have they pleaded a "known trend." Plaintiffs argue that the trend dates from January 31, 2014 (the day the Z10 rollout commenced in the United Kingdom). (Opp. at 14, n.8.) Setting aside that there could not have been a "trend" on the very first day devices were sold anywhere in the world, the four-month period between January 31 and June 1, 2014 is not a trend. *See In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*, 202 F. Supp. 2d 8, 13 (S.D.N.Y. 2001) (three-month period not a trend); *Kapps v. Torch Offshore, Inc.*, 379 F.3d 207, 218 (5th Cir. 2004) (five-month period not a trend).

violation of Item 303 create a private right of action under Section 10(b).[6]

### F.  Corporate Optimism and Forward-Looking Statements Are Not Actionable

Statements that BlackBerry "has exceptional technology" and was in the midst of "an effective product launch" (*see* Compl. ¶¶ 51, 53) are non-actionable puffery.  (Mot. at 9-10.)  Plaintiffs assert that "[i]n context, it is clear the statements are not inactionable puffing," but fail to identify the relevant context or explain how it affects those statements' meaning.  (Opp. at 16.)  Similarly, statements that the company was "[s]uccessfully transitioning to BlackBerry 10" and saw "compelling long-term opportunities" (*see* Compl. ¶¶ 41, 53) are protected forward-looking statements.  (Mot. at 10-11.)  Plaintiffs respond that cautionary language accompanying these statements was "boilerplate."  (Opp. at 15.)  In fact, BlackBerry detailed the exact risks that plaintiffs now say were concealed.  (Mot. at 2-5, 11-12.)

## III.  PLAINTIFFS FAIL TO PLEAD FACTS RAISING A STRONG INFERENCE OF SCIENTER

In this circuit, "scienter can be established by alleging facts to show either (1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness." *ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009).  Attempting to side-step this well-established standard, plaintiffs impermissibly rely on cases from other circuits to argue pleading theories that the Second Circuit has consistently rejected.

---

[6] Plaintiffs acknowledge that cases in this district hold that Item 303 violations are not actionable under Section 10(b).  (Opp. at 13.)  The Ninth Circuit recently agreed.  *See In re NVIDIA Corp. Sec. Litig.* No. 11-17708, 2014 WL 4922264, *7 (9th Cir. Oct. 2, 2014) (Item 303 violation cannot show Section 10(b) violation).  Plaintiffs cite *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 70-71 (2d Cir. 2001), but that case neither discussed nor held that violation of Item 303 gives rise to a private cause of action under Section 10(b).  *Scholastic* in turn predates *Matrixx Initiatives, Inc. v. Siracusano*, 131 S.Ct. 1309, 1321 (2011), which makes clear there is no affirmative disclosure obligation under Section 10(b).  Moreover, unlike here, *Scholastic* alleged specific facts, based on internal company reports, demonstrating an 18-month long trend of decreased sales and how the company knew of that trend.

### A. Plaintiffs Fail to Plead Fraudulent Motive

To identify the required "concrete benefits" from the alleged misstatements, it is not sufficient "to allege goals that are possessed by virtually all corporate insiders, such as the desire to...sustain the appearance of corporate profitability...or the desire to maintain a high stock price in order to increase executive compensation." *S. Cherry St. LLC v. Hennessee Grp. Ltd.*, 573 F.3d 98, 108-09 (2d Cir. 2009). Yet plaintiffs simply repeat their generic allegations that the individual defendants were motivated to commit fraud to "retain their high-level positions longer and personally reap lucrative, concrete monetary benefits" (Opp. at 22), relying on cases from other circuits decided under pleading standards inapplicable here.[7] (Citing *Pirraglia v. Novell, Inc.*, 339 F.3d 1182 (10th Cir. 2003); *In re Cabletron Sys.*, 311 F.3d 11, 39 (1st Cir. 2002); and *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 83 (1st Cir. 2002).) "Plaintiffs' reliance on [First Circuit case law]...is misplaced" and "of little aid here because the First Circuit, contrary to controlling Second Circuit authority, deems self-interested motivation of defendants in the form of saving their salaries or jobs evidence of scienter." *In re Omnicom Grp., Inc. Sec. Litig.*, No. 02 Civ. 4483 (RCC), 2005 WL 735937, at *12 (S.D.N.Y. Mar. 30, 2005).

Plaintiffs' motive theory also ignores the absence of insider stock sales. (Mot. at 21.) Plaintiffs respond that *Tellabs* "rejected [the] contention" that absence of sales undermines scienter. (Opp. at 23 n.14.) Not so. *Tellabs* acknowledged that the absence of insider stock sales undermined a motive theory, but held that, where scienter is otherwise sufficiently pled, "the absence of a motive allegation is not fatal." *Tellabs*, 551 U.S. at 325.

---

[7] Plaintiffs' inapposite cases involved far more detailed scienter allegations than plaintiffs muster here. In *Pirraglia*, a company accountant described "instances in which revenue was recognized by senior management over the objections of his department." 339 F.3d at 1192. In *Cabletron*, defendants engaged in unusual insider trading activity and one "directed some of the fraudulent warehousing activities" at issue. 311 F.3d at 39.

-10-

### B. Plaintiffs Fail to Plead Strong Circumstantial Evidence of Conscious Misbehavior or Recklessness

"To plead recklessness through circumstantial evidence," plaintiffs must show "conduct which is highly unreasonable" and "an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *ECA*, 553 F.3d at 202-03. Plaintiffs fail to plead facts suggesting conscious misbehavior or recklessness, again relying on theories rejected in this Circuit.

*First*, citing out of circuit cases, plaintiffs assert that the purported "'temporal proximity' between Defendants' misstatements and the revelation of the truth" supports a finding of scienter. (Opp. at 20.) However, "temporal proximity alone does *not* raise a circumstantial inference of fraud." *Fant v. Perelman*, No. 97 Civ. 8435 (LAP), 1999 WL 199078, at *13 (S.D.N.Y. Apr. 9, 1999). *Second*, plaintiffs' citation to "core operations" is also misplaced. (Opp. at 17.) Indeed, plaintiffs' own authorities recognize that "core operations allegations" are "not independently sufficient to raise a strong inference of scienter." *Bd. of Trs. of Ft. Lauderdale Empl. Ret. Sys. v. Mechel OAO*, 811 F. Supp. 2d 853, 872 (S.D.N.Y. 2011). *Third*, plaintiffs argue that the "size of the charge...bolster[s] the inference" that the defendants acted recklessly. (Opp. at 21.) But "allegations regarding the magnitude of the fraud...cannot serve as an independent basis for scienter."[8] *In re ShengdaTech, Inc. Sec. Litig.*, No. 11 Civ. 1918 (LGS), 2014 WL 3928606, at *9 (S.D.N.Y. Aug. 12, 2014). *Fourth*, plaintiffs argue that "BlackBerry had access to data—and did access data—from its 'retail and carrier partners' that revealed information such as return rate statistics and customer satisfaction." (Opp. at 19.) But plaintiffs

---

[8] *Scholastic* and *Rothman* do not support finding scienter here. (*See* Opp. at 21.) *Scholastic* involved "detailed allegations as to what the defendants knew on a daily, weekly, and monthly basis" "while at the same time making public statements that painted a different picture." *Scholastic*, 252 F.3d at 76-77. In *Rothman*, plaintiffs alleged specific facts concerning internal forecasts and data contradicting public statements. *Rothman*, 220 F.3d at 90-94.

neither (1) allege anything about the content of this purported data, nor (2) show how it contradicted BlackBerry's public statements. Lacking both of these, they fail to "specifically allege[] defendants' knowledge of facts or access to information contradicting their public statements." *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001). *Finally*, while plaintiffs claim these allegations suffice if considered "holistically" (Opp. at 23), because "none of [the] allegations show[] even a weak inference of scienter, there is no logical way…that the combined effect…would form a *strong* inference of scienter."[9] *Malin v. XL Cap., Ltd.*, 312 F. App'x 400, 402 (2d Cir. 2009) (summary order).

## IV. PLAINTIFFS FAIL TO ALLEGE LOSS CAUSATION

Plaintiffs argue that a "precipitous" drop in stock price is sufficient to plead loss causation. (Opp. at 24.) However, "that the value of a stock declined following…'bad news' does not, by itself, demonstrate loss causation." *In re Bristol Myers Squibb Co. Sec. Litig.*, 586 F. Supp. 2d 148, 163 (S.D.N.Y. 2008). BlackBerry's September 20, 2013 announcement was not a corrective disclosure, as it did not reveal any earlier statements were false. (Mot. at 24.) Nor was the announcement the materialization of a previously concealed risk (Opp. at 24-25); in fact, BlackBerry had expressly disclosed the relevant risks. (Mot. at 24-25.)

## V. PLAINTIFFS FAIL TO PLEAD CONTROL PERSON LIABILITY

Without a valid primary Section 10(b) claim, the Section 20(a) claim fails, as well.

## CONCLUSION

Defendants respectfully request that the Complaint be dismissed with prejudice.

---

[9] Plaintiffs argue that BlackBerry's pre-announcement is irrelevant because it was only a week early. In fact, BlackBerry preannounced for Q2-2014 (ending August 31) on September 20, 2013—twenty days before the deadline. *See* S.E.C. Release No. 33-8644 (quarterly filing deadline forty days after quarter end). In *Nokia*, "the allegation that Defendants behaved recklessly...[was] weakened by the early disclosure…*ten days* before the deadline." *In re Nokia Oyj Sec. Litig.*, 423 F. Supp. 2d 364, 407 (S.D.N.Y. 2006) (emphasis added).

Dated: October 10, 2014  /s/   Dan Marmalefsky
New York, New York

        MORRISON & FOERSTER LLP

        Dan Marmalefsky (admitted *pro hac vice*)
        707 Wilshire Boulevard
        Los Angeles, California 90017
        (213) 892-5200

        Jordan Eth (admitted *pro hac vice*)
        425 Market Street
        San Francisco, California 94105
        (415) 268-7000

        Joel C. Haims
        James J. Beha II
        250 West 55th Street
        New York, New York 10019
        (212) 468-8000

        *Attorneys for Defendants*