UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/13/2017

MARVIN PEARLSTEIN, Individually and
On Behalf of All Others Similarly
Situated,

                  Plaintiff,

- against -

BLACKBERRY LIMITED, *et al.*,

                  Defendants.

------------------------------------x

13-CV-7060 (TPG)

**OPINION**

Before this court is a motion to amend, originally sought as part of plaintiff's motion for reconsideration of this court's March 13, 2015 opinion. ECF Nos. 54, 56. The court reconsiders plaintiff's motion to amend pursuant to the Second Circuit's August 24, 2016 mandate, which vacated this court's denial of plaintiff's request to amend his complaint. ECF No. 65. The court grants plaintiff leave to amend as to his Section 10(b) and Rule 10b-5 claim because the claim was not filed with undue delay and is not futile under a Federal Rule of Civil Procedure 12(b)(6) analysis. The court denies plaintiff leave to amend with respect to his SEC Item 303 claim because amendment would be futile.

**BACKGROUND**

**I.    Procedural History**

This case is a challenge to statements made by defendant in connection with the sales and returns of its Blackberry Z10 smartphone ("Z10"). On June 2, 2014, plaintiff filed the Consolidated Amended Class Action Complaint ("CAC")

1

alleging violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (2012) ("Exchange Act"), and Rule 10b-5, 17 C.F.R. § 240.10b-5(b) (2008), promulgated by the Securities and Exchange Commission ("SEC") pursuant to the Exchange Act. ECF No. 42. On March 13, 2015, the court granted defendant's motion to dismiss based on lack of sufficient allegations of material misrepresentation and scienter—both elements necessary to make out a securities fraud claim. ECF No. 54, at 26. Thereafter, in November 2015, the court denied plaintiff's motion for reconsideration and leave to amend the CAC. ECF No. 62.

The Second Circuit affirmed this court's decision granting defendant's motion to dismiss, but remanded the case for the court to reconsider plaintiff's request to amend in light of newly discovered evidence and the Supreme Court's decision in *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, 135 S. Ct. 1318 (2015).

## II.  Facts

The court assumes familiarity with the facts alleged in the CAC, and focuses on the allegations in plaintiff's proposed Second Consolidated Amended Complaint ("SCAC"). ECF No. 70, Ex. A. Like the CAC, the SCAC alleges that there are generally four instances in which defendant made statements involving material misrepresentations or omissions: Defendant's reporting of its Fiscal Year 2013 results, ECF No. 70, Ex. A, at 29-32, reporting of its Fiscal Year 2014 results, ECF No. 70, Ex. A, at 36, issuing of its press release in response to a report by Detwiler Fenton that the Z10 was experiencing high

return rates, ECF No. 70, Ex. A, at 3-10, 32-35, and issuing of its press release announcing that defendant's Board of Directors was exploring alternative strategies, ECF No. 70, Ex. A, at 34-35.

Plaintiff argues that newly discovered information obtained in 2015 supports its Section 10(b) and Rule 10b-5 claims. On June 4, 2015, James Dunham, the Chief Operating Officer of one of defendant's wireless franchisors, Wireless Zone, stated in a criminal plea hearing that he had sold some of defendant's confidential financial information to the financial research firm Detwiler Fenton. He stated that his role at the franchisor provided him access to "very specific confidential information" from the franchisee, including "specific sales information, specific return information, compensation information, information regarding activating or upgrading . . . and other cost information." ECF No. 70, Ex. C, at 20. He testified that the information he sold included "specific sales information" and "specific return information" concerning the Z10, which the Detwiler Fenton used as a basis for a report that it published in April 2013. ECF No. 70, Ex. C, at 23. Plaintiff alleges that, in light of the new information obtained through Dunham's plea hearing, and in light of the Supreme Court's decision in *Omnicare*, 135 S. Ct. 1318, defendant made material misrepresentations and omissions in violation of Section 10(b) of the Exchange Act and Rule 10b-5.

## DISCUSSION

Leave to amend should be granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). It is granted liberally, and a court may deny leave to amend in

only a narrow set of circumstances including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). In opposing plaintiff's motion to amend, defendant argues mainly on two grounds: (1) that plaintiff exhibited undue delay and (2) that, in any event, amendment would be futile. ECF No. 74, at 2-5. The court disagrees. Because neither undue delay nor futility exist here with respect to the Section 10(b) and Rule 10b-5 claim, the court finds that leave to amend is proper. With respect to plaintiff's motion to amend for the SEC Item 303 claim, however, the court denies leave to amend and finds that amendment would be futile.

### I. Undue Delay

First, the court considers whether the motion to amend should be denied based on plaintiff's undue delay. Defendant argues that this court should deny leave to amend because plaintiff did not seek leave to amend until April 2015—several months after he became aware of the information underlying the amendment, and after the court had entered its initial judgment in March 2015. ECF No. 74, at 2-3. However, "[m]ere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (quoting *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d

4

Cir. 1981)); *see also Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 452-53 (S.D.N.Y. 2016). Alleging that the plaintiff *could have* moved to amend earlier because he had knowledge of facts underlying the proposed amendment is insufficient to demonstrate undue delay. Defendant has not demonstrated that plaintiff was acting in bad faith or that defendant would be unduly prejudiced by the court granting leave to amend. Thus, the court will not deny plaintiff's motion to amend based on undue delay.

## II. Futility

Second, the court considers whether the amended complaint would be futile. In considering whether a complaint is futile, courts conduct an inquiry comparable to the analysis governing motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). If the amendment would not withstand a motion to dismiss, leave to amend should be denied. *Id.*

In order to overcome the Rule 12(b)(6) standard, a complaint must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, the complaint must contain facts stating a claim to relief that is not only conceivable, but plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 570. In deciding the motion, the court must accept all well-pleaded allegations contained in the complaint as true, drawing all reasonable inferences in favor of the plaintiff. *Twombly*, 550 U.S. at 555-56.

In cases concerning securities fraud, plaintiffs are subject to a heightened standard of pleading under Federal Rule of Civil Procedure 9(b)—they must "state with particularity the circumstances constituting fraud or mistake." Further, plaintiffs in securities fraud cases must satisfy the pleading standard under the Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737, 747 (1995), which provides that plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." In the Second Circuit, this means that the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

### A. Section 10(b) Claims

Plaintiff argues that defendant violated Section 10(b) of the Exchange Act as well as Rule 10b-5. Section 10(b) and Rule 10b-5 prohibit manipulative or deceptive practices in the sale of securities. To state a cause of action under Section 10(b) and Rule 10b-5, a plaintiff must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008).

### 1. Misrepresentation or Omission by the Defendant

In determining whether a statement is materially misleading, a court must engage in a fact-specific inquiry to determine whether a reasonable investor would attach importance to the facts in making their investment decisions. *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32, 240 (1988). Before the Supreme Court's decision in *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, 135 S. Ct. 1318 (2015), the Second Circuit's standard for determining whether a statement of opinion was misleading was governed by *Fait v. Regions Financial Corporation*, 655 F.3d 105 (2d Cir. 2011). Under the *Fait* standard, a statement of opinion could only be misleading when it was "both objectively false and disbelieved by the defendant at the time it was expressed." *Id.* at 110.

*Omnicare* altered this standard, finding that statements of opinion can be misleading even when a defendant believes a statement at the time it was made. *See Omnicare*, 135 S. Ct. at 1328. For example, if an issuer publicly opines about its state of legal compliance but neglects to disclose that it had not consulted any lawyers before forming that opinion, the issuer's statement of opinion—even if genuinely believed—may be materially misleading under *Omnicare*. *Id.* at 1328–29. In other words, if a statement of opinion "omits material facts about the issuer's inquiry into or knowledge concerning a statement of opinion, and if those facts conflict with what a reasonable investor would take from the statement itself," it may be misleading for purposes of Section 10(b) and Rule 10b-5 claims. *Id.* at 1329. The court must look at the

statement in context and determine whether a reasonable investor would find it misleading.

In light of Dunham's statements in his plea hearing that he sold sales and return information to Detwiler Fenton, ECF No. 70, Ex. C., at 23, it is plausible that defendant's public statements regarding the Z10's sales and return rates, as well as its statements against the report published by Detwiler Fenton, contradicted data that defendant had received from one of its large franchisors. If this was the case, failing to disclose the adverse sales and return data could plausibly be misleading to a reasonable investor. Thus, considering the new standard set out in *Omnicare*, 135 S. Ct. at 1329, these claims would survive a motion to dismiss and are not futile.

### 2. Scienter

The requisite state of mind for a Section 10(b) and Rule 10b-5 action is intent to "deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976)). An inference of scienter can be established by showing either that defendants had the motive to commit fraud or that there is circumstantial evidence of recklessness. *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 108-09 (2d Cir. 2009); *ECA & Local 134 IBEW Joint Pension Tr. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009). To make a showing of recklessness, a plaintiff must allege that defendant had "knowledge of facts or access to information contradicting their public statements" or that

they "failed to review or check information that they had a duty to monitor." *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000).

Based on plaintiff's new allegations—*e.g.*, sales data coming from Dunham's criminal proceeding—it is plausible that the defendant had knowledge of information contradicting its public statements with respect to its financial results as well as its statements in opposition to the Detwiler Fenton report. The plaintiff has made out a claim that would survive a motion to dismiss under Rule 12(b)(6).

### 3. Loss and Loss Causation

Loss causation is the "causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff." *Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 197 (2d Cir. 2003). To establish loss causation, a plaintiff must show that "the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005).

The court did not reach loss causation in its previous opinion, ECF No. 64, because it granted defendant's motion to dismiss based on lack of material misrepresentation and scienter. Plaintiff argues that defendant's misrepresentations and omissions artificially inflated defendant's stock prices, causing significant losses for defendant's stockholders once sales and return numbers were realized. ECF No. 70, Ex. A, at 78. Specifically, plaintiff alleges that when defendant announced in a September 2014 press release that it was

planning on reducing operating expenditures by 50%, defendant's stock price declined significantly. ECF No. 70, Ex. A, at 63-65.

Based on Dunham's criminal proceedings—specifically, his statements that he had sold confidential sales and returns information to Detwiler Fenton—it is plausible that the information that Dunham sold to Detwiler Fenton regarding a high rate of returns of the Z10 was also known by the defendant. ECF No. 70, Ex. C, at 20. In turn, it is plausible that defendant was artificially inflating its financial results, including its sales and returns numbers, and failing to disclose this adverse data. Because this new evidence may establish that defendant was artificially inflating its financial results and concealing adverse data from investors, leading to greater losses after its September 2014 press release, there is a plausible claim for loss and loss causation.

### B. SEC Item 303 Claim

Plaintiff argues that defendant failed to comply with SEC Item 303, which requires a company to describe any known trends that it would reasonably expect to have a material unfavorable impact on its net sales or revenues. 17 C.F.R. § 229.303 (2017). But as the court stated in its March 2015 opinion, ECF No. 54, at 20, defendant is a Canadian entity—SEC Item 303 does not apply to it. Plaintiff does not allege any new facts that change this outcome. Thus, this claim is futile, and the court denies plaintiff's motion to amend on this claim.

## CONCLUSION

For the reasons given above, the court concludes that plaintiff's motion to amend the complaint with respect to the SEC Item 303 claim is denied, but that the motion to amend the complaint with respect to plaintiff's Section 10(b) and Rule 10b-5 claim is granted. This Opinion resolves Docket Number 68.

SO ORDERED

Dated: New York, New York
September 13, 2017

Thomas P. Griesa
U.S. District Judge