USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/19/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARVIN PEARLSTEIN, et al.,

                           Plaintiffs,

              -against-

BLACKBERRY LIMITED, et al.,

                           Defendants.

**OPINION AND ORDER REGARDING
BLACKBERRY'S PRIVILEGE DESIGNATIONS**

**13-CV-07060 (CM)(KHP)**

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

**BACKGROUND**

This case is a putative class action alleging securities fraud brought pursuant to Section

10(b)(5) of the Securities and Exchange Act of 1934 (the "Exchange Act"). Plaintiffs contend

that BlackBerry Limited ("BlackBerry") made various material misrepresentations and omissions

concerning the 2013 launch of its Z10 smartphone in the United States which artificially inflated

its stock price for a period of time. They identify four specific documents in which the alleged

misrepresentations and omissions were made: BlackBerry's fiscal year 2013 financial results

(published on March 28, 2013), an April 12, 2013 press release refuting a negative market

research report published by Detwiler Fenton & Co. ("Detwiler") stating that Z10 return rates

were exceptionally high (the "Detwiler Report"), BlackBerry's financial results for the first

quarter of fiscal year 2014 (published on June 28, 2013), and an August 12, 2013 press release

announcing a potential sale of the company, among other strategic alternatives being

considered by BlackBerry's board. All of these documents were filed with the U.S. Securities

and Exchange Commission ("SEC") via a Form 6-K.[1] The Court assumes familiarity with other background facts and does not repeat them here. *See Pearlstein v. BlackBerry Ltd.*, No. 13-cv-7060 (CM), 2018 WL 1444401 (S.D.N.Y. Mar. 19, 2018); *Pearlstein v. BlackBerry Ltd.*, 93 F. Supp. 3d 233 (S.D.N.Y. 2015), *aff'd sub nom. Cox v. BlackBerry Ltd.*, 660 F. App'x 23 (2d Cir. 2016).

The procedural history of the case is lengthy. In brief, Defendants moved to dismiss the First Amended Complaint in March 2015, which the Court granted. (Doc. No. 54, 56, 59, 62, 63.) Plaintiffs appealed. In August 2016, the Second Circuit affirmed dismissal of the complaint but remanded on the issue of leave to amend in light of the U.S. Supreme Court's 2018 decision in *Omnicare, Inc. v Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318 (2015), which altered the standard for determining whether a statement of opinion is misleading for purposes of a securities fraud case. (Doc. No. 64.) Plaintiffs then requested permission to amend the complaint based on new information learned since filing the First Amended Complaint. Specifically, it had come to light that a former executive at Wireless Zone, a retailer that sold BlackBerry Z10s, illegally sold real-time data on Z10 returns to Detwiler and that real-time data was the basis for Detwiler's report that customers were returning Z10s at unusually high rates. The Court granted Plaintiffs' motion to amend the complaint. (Doc. No. 81.) BlackBerry then filed another motion to dismiss. In March 2018, the Court denied the motion on the ground that it was plausible BlackBerry had information about Z10 returns at Wireless Zone that contradicted its public statements made in the April 12, 2013 press release to the

_____

[1] An SEC Form 6-K is utilized by a foreign private issuer to provide communications and material information that is made public in its home country. The form promotes cross-border information sharing by allowing U.S. investors in foreign securities to have the same access to information that investors in the foreign company's home market receive.

effect that customers were satisfied with the Z10 and return rates were at or below the company's forecasts and in line with the industry. *Pearlstein*, 2018 WL 1444401, at *4. The parties then commenced discovery.

## PENDING MOTIONS

A dispute has now arisen concerning certain documents that BlackBerry is withholding from production on the grounds they are protected by attorney-client privilege and/or the work product doctrine. Plaintiffs have filed two motions challenging these designations. In the first motion, Plaintiffs seek to compel production of various communications involving Defendant Steve Zipperstein, BlackBerry's former Chief Legal Officer, or conducted at Zipperstein's direction (the "Zipperstein Documents"). All of these documents were withheld on the basis of attorney-client privilege. Most are dated April 11 and 12, 2013 and concern the April 12, 2013 press release. The Zipperstein Documents predominately consist of communications collecting and discussing Z10 return rates, drafting and commenting on the press release and discussing additional responses to the Detwiler Report, including potential legal actions. Eighty-two of the Zipperstein Documents were submitted to the Court for *in camera* review.[2] (Doc. No. 212.)

Plaintiffs contend that the Zipperstein Documents are not privileged because (1) the predominant purpose of the communications was not to request or provide legal advice, (2) the communications are subject to the crime-fraud or fiduciary exceptions to the privilege, and (3) BlackBerry waived any privilege attaching to the communications by virtue of including a legal opinion statement by Zipperstein in the April 12, 2013 press release. BlackBerry argues that the

---

[2] The other Zipperstein Documents appear on BlackBerry's privilege log as numbers 1, 9, 10, 41, 46-47, 55, 96, 97, 145-147, 151-153, 166, 171, 191, 192, 194-198, 225-238, 267, 269, 270, 274, 275, 278, 281, and 305.

Zipperstein Documents were properly withheld because their primary purpose was to obtain or provide legal advice and that none of the exceptions to privilege cited by Plaintiffs apply.

In their second motion, Plaintiffs move to compel production of additional documents listed on Defendant's privilege log, all of which were designated as attorney-client communications and some of which were also designated as attorney work product. (Doc. No. 214.) Plaintiffs complain that BlackBerry's privilege log is inadequate and vague as a whole. Plaintiffs question assertions of attorney-client privilege as to communications that do not appear to involve an attorney or where an attorney is merely copied. They contend that draft documents are not privileged and that the work product doctrine is inapplicable to certain documents. Finally, they argue that BlackBerry waived privileged (1) insofar as some of the listed communications included a non-employee public relations consultant named Aaron Curtiss and (2) with respect to information underlying a presentation given to the SEC in May 2013 in which the company urged the SEC to take action against Detwiler for its allegedly false reporting about Z10 sales and returns. They contend that some of these challenges to privilege also apply to some of the Zipperstein Documents. BlackBerry defends its assertions of privilege except as to one document that it has decided to produce (Document No. 299). It also proposes to produce several of the challenged documents in redacted form (Document Nos. 326, 327, 330, 345). Sixteen of the additional, non-Zipperstein Documents were submitted for *in camera* review.[3]

---

[3] The additional documents on BlackBerry's privilege log challenged by Plaintiffs but that were not submitted for *in camera* review include documents 154, 179, 180, 181, and 351 (non-attorney communications); 328, 329, 369, 372, 375, and 390 (attorney only cc'd on communications); 3-4, 6, 23-26, 39, 41, 46-48, 272274-275, 278, 289-290, 388, 413-415 (privilege log vague as to nature of legal advice); 57-59, 82-87, 89-95, 98-120, and 123-125 (communications concerning preparation of April 12, 2013 press release that are challenged on the same bases as other similar communications submitted for *in camera* review).

The documents submitted for *in camera* review fall under the following categories:

- Emails concerning Brightstar South Africa, a distributor of BlackBerry devices (143, 155, 159).
- Drafts of a script for BlackBerry's CEO for a Q42013 investor conference call and emails concerning same (149, 150).
- Drafts of a contract with a distributor (182, 185, 187, 300).
- An internal presentation regarding the sale of the Z10 to enterprise customers (183).
- Drafts of the April 12, 2013 press release and emails concerning the press release shared with a  public relations consultant (199, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 244, 246, 247, 248, 249, 250, 251, 252, 253, 254, 255, 256, 257, 258, 261, 262, 263, 264, 265, 268, 283).  Defendant also claims work product protection with respect to Document No. 257.
- Internal emails concerning preparation of the April 12, 2013 press release and collection of information about Z10 returns (289, 298, 302, 303, 306, 307, 308, 309, 310, 311, 314, 317, 318, 325)
- Post press-release communications about Z10 return rates in the U.S. and Canada and initial customer complaints (326, 327, 330, 339, 341, 345, 356, 357, 358, 359, 360, 390, 391, 392).
- Post press-release emails and draft of specific communication to Verizon to collect information about Z10 returns (352, 353, 354, 355, 365, 366, 367, 368, 369, 370, 371, 372, 373, 374, 375, 376, 377).  Defendant also claims work product protection with respect to these documents.
- Emails between Zipperstein and Board of Directors regarding trading activity in light of the Detwiler Report (245).
- Emails between outside counsel and Zipperstein and Zipperstein and BlackBerry management concerning a press inquiry (315, 316).
- A litigation hold memo (338).  Defendant also claims work product protection as to this document.
- Emails concerning a draft communication with a distributor (352, 353, 354, 355). Defendant also claims work product protection as to these documents.
- An email with counsel concerning a potential campaign to reach out to Z10 customers (412).
- Drafts of a press release concerning BlackBerry's release of Q42013 results (163, 178).

The Court has carefully considered the parties' arguments in their briefs and at the

December 6, 2018 oral argument.  Its rulings are set forth below.  For ease of review, its rulings

on the ninety-eight documents submitted for *in camera* review also are summarized at the Addendum to this Opinion.

**LEGAL STANDARDS**

**1.     *Burden of Demonstrating Privilege Through Privilege Log***

The party withholding a document on the basis of attorney-client privilege or the work product doctrine bears the burden of establishing facts to demonstrate applicability of the protective rule.  *In re Grand Jury Subpoena Dated Jan. 4, 1984,* 750 F.2d 223, 224–25 (2d Cir. 1984).  Federal Rule of Civil Procedure 26(b)(5) and Local Civil Rule 26.2 require the party withholding a document to prepare a privilege log.  The Local Civil Rule specifies that the party must provide complete identifying information, date, type of document, and subject matter in a privilege log at the time the party responds to discovery.  *Dey, L.P. v. Sepracor, Inc.,* No. 07-cv-2353 (JGK) (RLE), 2010 WL 5094406, at *2 (S.D.N.Y. Dec. 8, 2010) (citing Local Civ. R. 26.2(c)). "The standard for testing the adequacy of the privilege log is whether, as to each document, it sets forth specific facts that, if credited, would suffice to establish each element of the privilege that is claimed."  *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.,* 274 F.R.D. 106, 112 (S.D.N.Y. 2011); *Orbit One Commc'ns, Inc. v. Numerex Corp.,* 255 F.R.D. 98, 109 (S.D.N.Y. 2008) (a party must justify assertion of privilege by providing sufficient information by its adversary to assess any potential objections).

Where a properly prepared privilege log has been served, the withholding party's obligation to produce evidence to sustain its assertions of privilege is generally limited to those elements of the privilege or protection challenged by the adversary.  8 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2016.1 at 318 n.1 (3d ed.

2010) (citing *SEC v. Beacon Hill Asset Mgmt. LLC,* 231 F.R.D. 134, 140 (S.D.N.Y. 2004)); *ECDC Envtl., L.C. v. N.Y. Marine & Gen. Ins. Co.*, No. 96-cv-6033 (BSJ) (HBP), 1998 WL 614478, at *3-4 (S.D.N.Y. June 4, 1998). A party may, however, submit additional affidavits or evidentiary material to support its claim of privilege if challenged. *See Johnson Matthey, Inc. v. Research Corp.*, No. 01-cv-8115 (MBM) (FM), 2002 WL 31235717, at *3 (S.D.N.Y. Oct. 3, 2002) ("[W]here the information in the log is insufficient to establish a factual basis for the privilege, the proponent of the privilege bears the burden of showing its applicability, a gap which often is filled through an affidavit or deposition testimony.").

*2.      Attorney-Client Privilege*

The attorney-client privilege protects communications between client and counsel made for the purpose of obtaining or providing legal advice that were intended to be and in fact kept confidential. *In re County of Erie*, 473 F.3d 413, 418-419 (2d Cir. 2007); *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996). As the U.S. Supreme Court explained in *Upjohn Co. v. United States*, the privilege encourages full and frank communications between a client and counsel, which in turn promotes an understanding of and compliance with the law and the administration of justice. 449 U.S. 383, 389 (1981). The privilege is narrowly construed, however, because it renders relevant information undiscoverable. *Fisher v. United States*, 425 U.S. 391, 403 (1976); *In re County of Erie*, 473 F.3d at 418.

The privilege applies to a company's communications with its external and in-house lawyers. But, in light of the two hats often worn by in-house lawyers, communications between a corporation's employees and its in-house counsel though subject to the attorney-client privilege must be scrutinized carefully to determine whether the predominant purpose of the

communication was to convey business advice and information or, alternatively, to obtain or provide legal advice.  If the former, the communication is not protected by the attorney-client privilege.  *In re County of Erie*, 473 F.3d at 418, 420; *In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1036-37 (2d Cir. 1984).  When determining the predominant purpose of a communication between a company's employees and its in-house lawyers, a court must assess the communication "dynamically and in light of the advice being sought or rendered, as well as the relationship between advice that can be rendered only by consulting legal authorities and advice that can be given by a non-lawyer."  *In re County of Erie*, 473 F.3d at 420-421.  The determination "also may be informed by the overall needs and objectives that animate the client's request for advice."  *Id*. at 421.  Importantly, the fact that a lawyer may highlight collateral non-legal risks and costs relating to "expense, politics, insurance, commerce, morals and appearances" or report "what other persons are doing or thinking about the matter" in the course of rendering legal advice does not compromise the privilege so long as the predominant purpose of the communication was to render legal advice.  *Id.* at 420.

It is not just communications that are subject to the privilege.  Internal investigation notes and documents also may be privileged.  Because the "first step in the resolution of any legal problem is ascertaining the factual background and sifting through the facts with an eye to the legally relevant," *Upjohn Co.,* 449 U.S. at 390-91, factual investigations conducted or directed by an attorney fall within the attorney-client rubric.  *Id.* at 391 (employee factual responses to questionnaires from counsel in connection with internal investigation to provide legal advice protected by attorney-client privilege); *Gucci Am., Inc. v. Guess?, Inc.,* 271 F.R.D. 58, 71 (S.D.N.Y. 2010) (citations omitted) (collecting cases).

Courts also have applied the privilege to communications among non-lawyer employees of a corporation where the purpose of the communication was to provide information to counsel or aid counsel in providing legal advice. *Upjohn Co.*, 449 U.S. at 394; *People's United Bank v. PeoplesBank*, No. 08-cv-1858 (PCD), 2009 WL 10689492, at *2 (D. Conn. Dec. 28, 2009); *see also Cuno, Inc. v. Pall Corp.,* 121 F.R.D. 198, 203 (E.D.N.Y. 1988) (attorney-client privilege protects the giving of information from an employee to a superior for transmission to lawyer if made for the purpose of securing legal advice, requested by corporate superior, provided within the scope of the employees' corporate duties and confidentiality maintained).

**3.      *Work Product Doctrine***

Pursuant to Rule 26(b)(3) of the Federal Rules of Civil Procedure, documents and tangible things prepared by a party or its representative in anticipation of litigation are protected under the work product doctrine. *See* Fed. R. Civ. P. 26(b)(3)(A); *Welland v. Trainer,* No. 00-cv-0738 (JSM), 2001 WL 1154666, at *2 (S.D.N.Y. Oct. 1, 2001) (if document "was prepared 'because of existing or expected litigation" it is eligible for work product protection) (quoting *United States v. Adlman,* 134 F.3d 1194, 1202 (2d Cir. 1998)); *see also Hickman v. Taylor,* 329 U.S. 495 (1947) (establishing and articulating application of the work product doctrine). The key factor in determining applicability of this doctrine is whether the documents or things were prepared "with an eye toward" or "in anticipation of" or "because of the prospect of litigation." *Hickman*, 329 U.S. at 510-511; *Schaeffler v. United States*, 806 F.3d 34, 43 (2d Cir. 2015); *Adlman*, 134 F.3d at 1202. "[T]he doctrine is not satisfied merely by a showing that the material was prepared at the behest of a lawyer or was provided to a lawyer. Rather the materials must result from the conduct of 'investigative or analytical tasks to aid

counsel in preparing for litigation.'" *In re Symbol Techs., Inc. Sec. Litig.*, No. 05-cv-3923 (DRH) (AKT), 2017 WL 1233842 (E.D.N.Y. Mar. 31, 2017) (quoting *Wultz v. Bank of China Ltd.,* 304 F.R.D. 384, 393-94 (S.D.N.Y. 2015)).  Thus, a court must determine if the materials would have been prepared in essentially similar form irrespective of the litigation.  *Id.*, at *8 (citing *Adlman*, 134 F.3d at 1202); *Clarke v. J.P. Morgan Chase & Co.*, No. 08-cv-2400 (CM) (DF), 2009 WL 970940, at *7 (S.D.N.Y. Apr. 10, 2009).  But, unlike the rule for invoking attorney-client privilege, the predominant purpose of the work product need not be to assist with litigation to be protected; rather, the work product need only have been prepared or obtained because of the prospect of litigation.  *Adlman*, 134 F.3d at 1202; *In re Symbol Techs., Inc. Sec. Litig.*, 2017 WL 1233842, at *8.

Work product comes in two forms.  Opinion work product consists of the mental impressions, conclusions, opinions and legal theories of an attorney or other representative of a party and is given heightened protection.  Fact work product consists of factual material, including the results of a factual investigation.  This latter type of work product is subject to disclosure upon a showing of substantial need and an inability to obtain the equivalent without undue hardship.  *Upjohn Co.,* 449 U.S. at 400; *Hickman*, 329 U.S. at 511; *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183-84 (2d Cir. 2007); *Adlman*, 134 F.3d at 1204.

Courts in the Second Circuit have held that "[a] substantial need exists 'where the information sought is "essential" to the party's defense, is "crucial" to the determination of whether the defendant could be held liable for the acts alleged, or carries great probative value on contested issues.'" *Gucci Am.*, 271 F.R.D. at 74–75 (quoting *Nat'l Cong. for Puerto Rican Rights v. City of New York*, 194 F.R.D. 105, 110 (S.D.N.Y. 2000)).  The documents must "have a

unique value apart from those already in the movant's possession." *FTC v. Boehringer Ingelheim Pharm., Inc.*, 778 F.3d 142, 155–56 (D.C. Cir. 2015). Disclosure is warranted only when the moving party makes a strong showing of the relevance and importance of the fact work product and that "it is likely to be significantly more difficult, time-consuming or expensive to obtain the information from another source." *In re Aggrenox Antitrust Litig.*, No. 14-md-2516 (SRU), 2017 WL 5885664 (D. Conn. Nov. 29, 2017) (internal citations omitted).

### 4.    *Exceptions to Privilege and Work Product Protection*

Courts recognize several exceptions to privilege and work product protection which Plaintiffs say apply here. First, a party may waive privilege or work product protection by voluntarily disclosing otherwise protected information to a third party or injecting protected material into a litigation. The party asserting privilege has the burden of establishing that there has been no waiver. *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 427 (S.D.N.Y. 2013). Second, courts will not recognize the attorney-client privilege or work product protection if doing so would serve to hide a crime under the so-called crime-fraud exception. The burden of demonstrating applicability of the crime-fraud exception falls on the party seeking disclosure. *In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir. 1995). Third, in some circumstances, courts find that a party who stands in a fiduciary capacity vis-à-vis its adversary may not shield its attorney-client communications from disclosure if the communications relate to fiduciary matters. The party seeking documents under the fiduciary exception bears the burden of demonstrating good cause for disclosure. *In re Omnicom Group, Inc. Sec. Litig.*, 233 F.R.D. 400, 412 (S.D.N.Y. 2006). Each of these exceptions is discussed in more detail below.

### A.    Waiver

#### 1.    Circumstances Giving Rise to Waiver

Slightly different rules govern waiver of attorney-client privilege and work product

protection.  In the case of the attorney-client privilege, "if the holder of the privilege voluntarily

discloses or consents to disclosure of any significant part of the matter or communication over

which the privilege is claimed," the privilege is waived.  *Fullerton v. Prudential Ins. Co.*, 194

F.R.D. 100, 102 (S.D.N.Y. 2000) (quoting *United States v. Int'l Bhd. of Teamsters,* 961 F. Supp.

665, 673 (S.D.N.Y.1997)); *see also Gruss v. Zwirn*, No. 09-cv-6441 (PGG) (MHD), 2013 WL

3481350, at *11 (S.D.N.Y. July 10, 2013) (citing *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235

(2d Cir. 1993)); *In re Visa Check/MasterMoney Antitrust Litig.,* 190 F.R.D. 309, 314 (E.D.N.Y.

2000).  As relevant here, the waiver rule does not apply if the disclosure of attorney-client

communications is made to a public relations consultant hired by the lawyer for the purpose of

assisting the lawyer in rendering legal advice or to achieve a legal goal.  For example, in *In re*

*Grand Jury Subpoenas Dated March 24, 2003*, lawyers hired a public relations firm to assist

them in generating favorable publicity during a high profile grand jury investigation in order to

lessen pressure on the prosecutors to secure an indictment against their client.  *See* 265 F.

Supp. 2d 321, 323–24 (S.D.N.Y. 2003).  The Court found the privilege had not been waived

because the purpose of the disclosure was to help the lawyers achieve a legal goal—avoidance

of indictment.  *Id.*  However, the public relations exception recognized in *In re Grand Jury*

*Subpoenas Dated March 24, 2003* is narrowly construed.  *Id.* at 329–30; *see Ravenell v. Avis*

*Budget Group, Inc.,* No. 08-cv-2113 (SLT), 2012 WL 1150450, at *3 (E.D.N.Y. Apr. 5, 2012) ("The

reach of [*In re Grand Jury Subpoenas Dated March 24, 2003* is] limited by its context: the Court

couched its finding in the narrow scenario of public relations consultants assisting lawyers during a high profile grand jury investigation."); *In re Chevron Corp.,* 749 F. Supp. 2d 170, 184 n.64 (S.D.N.Y. 2010), *aff'd sub nom. Lago Agrio Plaintiffs v. Chevron Corp.*, 409 F. App'x 393 (2d Cir. 2010) (interpreting *In re Grand Jury Subpoenas Dated March 24, 2003* as having a "very narrow holding" and applicable only in "cases such as . . . high profile grand jury investigation[s]"). That is, when a public relations consultant has performed nothing other than standard public relations services, the normal rule applies and disclosure of privileged communications to the consultant will result in a waiver. *See Haugh v. Schroder Inv. Mgmt. N. Am. Inc.,* No. 02-cv-7955 (DLC), 2003 WL 21998674, at *3 (S.D.N.Y. Aug. 25, 2003) (communications not privileged because Plaintiff did not show that the public relations specialist performed anything other than standard public relations services or that communications were necessary to the provision of legal advice); *Calvin Klein Trademark Trust v. Wachner,* 198 F.R.D. 53, 55 (S.D.N.Y. 2000) (exception to waiver rule inapplicable to public relations communications that "simply serve[ ] to assist counsel in assessing the probable public reaction to various strategic alternatives, as opposed to enabling counsel to understand aspects of the client's own communications that could not otherwise be appreciated in the rendering of legal advice").

Unlike the attorney-client privilege, work product protection is not waived merely because the material is disclosed to a third party. *See, e.g., Adlman,* 134 F.3d at 1200 n. 4 (work product may be shown to others "simply because there [is] some good reason to show it" without waiving the protection). Protection is waived only when work product is disclosed to a third party in a manner that is inconsistent with the purpose of the protection. *See In re*

*Steinhardt Partners, L.P.*, 9 F.3d at 235; *In re Symbol Techs., Inc. Sec. Litig.*, 2017 WL 1233842, at

*9 (disclosure that substantially increases the opportunities for potential adversaries to obtain

the information results in a waiver of work product protection); *In re Visa Check/MasterMoney*

*Antitrust Litig.,* 190 F.R.D. at 314 (purpose of work product doctrine is "to keep counsel's work

from his opponent in the litigation so that it will not be used against him").

So, what is the purpose of the work product doctrine? The U.S. Supreme Court in

*Hickman v. Taylor* explained that the doctrine exists to promote our adversarial system of

jurisprudence and permit attorneys to work "with a certain degree of privacy free from

unnecessary intrusion by opposing parties and their counsel." 329 U.S. at 510-511; *see also*

*AT&T*, 642 F.2d at 1299 (work product doctrine exists to "promote the adversary system by

safeguarding the fruits of an attorney's trial preparation from the discovery attempts of an

opponent."). Disclosure of work product to a privately retained public relations consultant

would not typically result in a waiver of protection because it is unlikely the material disclosed

will end up in the hands of an adversary and such disclosures are typically subject to

confidentiality agreements.

There are other ways attorney-client privilege and work product protection can be

waived. A party cannot assert reliance on counsel as a defense or selectively proffering

protected information in litigation without waiving privilege. Fairness requires waiver in these

circumstances so a party's adversary and fully explore the validity of the defense of advice of

counsel and prepare cross examination. *In re County of Erie*, 546 F.3d 222, 228-29 (2d Cir.

2008); *In re Grand Jury Proceedings*, 219 F.3d 175, 191 (2d Cir. 2000); *In re Lehman Bros.*

*Holdings, Inc.*, No. 10-cv-6200 (RMB) (FM), 2011 WL 2651812, at *2 (S.D.N.Y. June 22, 2011); *In re Omnicom Group, Inc. Sec. Litig.*, 233 F.R.D. at 413-14.

> ###    2.    *Scope of Waiver*

When a waiver of attorney-client privilege or work product protection has occurred, the court then must address the scope of the waiver.  The scope of waiver of attorney-client privilege is determined based on the "fairness doctrine" as described by the Second Circuit in *In re von Bulow.*  828 F.2d 94, 101 (2d Cir. 1987).  The doctrine is designed "to prevent prejudice to a party and distortion of the judicial process that may be caused by the privilege-holder's selective disclosure during litigation of otherwise privileged information."  *Id.; see United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) ("[T]he attorney-client privilege cannot at once be used as a shield and a sword. A defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes.") (citations omitted).  When there has been a selective disclosure of attorney-client communications in the litigation, courts typically find the party has waived privilege as to all documents pertaining to the subject disclosed.  *In re Symbol Techs., Inc. Sec. Litig.*, 2017 WL 1233842, at *16-18 (ordering disclosure of nine memoranda on confidential witnesses' statements because five other memoranda were disclosed for withholding party's strategic benefit) (citations omitted); *Tribune Co. v. Purcigliotti*, No. 93-cv-7222 (LAP) (THK), 1997 WL 10924, at *5 (S.D.N.Y. Jan. 10, 1997), *modified*, 1998 WL 175933 (S.D.N.Y. Apr. 14, 1998) ("[W]here there is partial disclosure in the context of the litigation for the benefit of the privilege holder, there may be a complete subject matter waiver as to all communications on the subject."); *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 470-71 (S.D.N.Y. 1996) (finding

waiver, as "[t]his disclosure to the [Securities and Exchange] Commission was not 'extrajudicial' in the sense meant by the Second Circuit in *von Bulow*").

When a privileged communication is disclosed outside of a litigation or extrajudicially, the scope of the waiver typically is limited to those matters actually revealed. *In re Grand Jury Proceedings*, 219 F.3d at 186-187; *In re von Bulow,* 828 F.2d at 103. Thus, in the *von Bulow* case, where privileged communications were revealed to the public in a book and not in a litigation, the court found waiver only with respect to the particular communications or portions of communications disclosed. 828 F.2d at 101-03.

When disclosure of work product or privileged information is made to a governmental agency Federal Rule of Evidence 502(a) applies. Under that rule, waiver is generally limited to the precise communication or information disclosed to the governmental agency. Fed. R. Evid. 502(a); Fed. R. Evid. 502 Advisory Committee's Note (revised 11/28/2007). But, the waiver will extend to all undisclosed communications and information if (1) the disclosure to the governmental agency was voluntary or intentional, (2) the disclosed and undisclosed information concerns the same subject matter, and (3) in fairness ought to be considered together. Fed. R. Evid. 502(a); *In re Symbol Techs., Inc. Sec. Litig.*, 2017 WL 1233842, at *9 (citations omitted); *Mitre Sports Int'l Ltd. v. Home Box Office, Inc.*, 304 F.R.D. 369, 371 (S.D.N.Y. 2015). In other words, the principles underlying the fairness doctrine have been incorporated to some extent into Rule 502(a) and, depending on the facts and circumstances, disclosure of privileged information or work product to a governmental agency may result in a broader subject matter waiver of undisclosed attorney-client communications and fact work product pertaining to the subject matter of the disclosure. *In re Symbol Techs., Inc. Sec. Litig.*, 2017 WL

1233842, at *10; *see also Gruss*, 2013 WL 3481350 (ordering production of interview notes and summaries because portions of them were voluntarily and selectively disclosed to the SEC in a PowerPoint presentation; confidentiality agreement with SEC did not restrict SEC's use of the disclosed information); *In re Weatherford Int'l Sec. Litig.*, 2013 WL 6628964 (S.D.N.Y. Dec. 16, 2013) (court ordered production of materials actually disclosed to the SEC and factual work product contained in underlying attorney interview notes; opinion work product protected from disclosure); *Favors v. Cuomo*, 285 F.R.D. 187, 200 (E.D.N.Y. 2012) ("[C]ourts generally permit discovery of work product based on implied or subject-matter waiver only where the privileged communications have been put at issue or when the defendant seeks to exploit the doctrine for a purpose inconsistent with the privilege."); *SEC v. Vitesse Semiconductor Corp.*, No. 10-cv-9239 (JSR), 2011 WL 2899082, at *3 (S.D.N.Y. July 14, 2011) (a report given to SEC containing detailed summaries of interviews and near-verbatim recitations of interview notes taken by counsel waived privileged and required production of factual portions of attorney interview notes); *In re Initial Pub. Offering Sec. Litig.*, 249 F.R.D. 457, 460, 466 (S.D.N.Y. 2008) ("[v]oluntary disclosure of attorney work product, regardless of the existence of a confidentiality agreement, will waive work product privilege absent special circumstances.").

In all cases, courts must evaluate the factual circumstances of a disclosure to determine whether the disclosing party waived privilege or work product protection and the extent or scope of any waiver.

### B.      Crime-Fraud Exception

Another exception to protection is the so-called crime-fraud exception. Communications "in furtherance of contemplated or ongoing criminal or fraudulent conduct" fall under the

exception.  *In re Richard Roe, Inc.*, 68 F.3d at 40.  The party seeking disclosure of protected

information via the crime-fraud exception has the burden of demonstrating that there is

probable cause to believe that (1) a crime or fraud has been attempted or committed; and (2)

the privileged communications and work product were in furtherance thereof.  *Id.*  There must

be "substantial reason to believe that the party resisting disclosure engaged in or attempted to

commit a fraud and used communications with its attorney to do so."  *In re Omnicom Group,*

*Inc. Sec. Litig.*, No. 02-cv-4483 (WHP) (MHD), 2007 WL 2376170, at *11 (S.D.N.Y. Aug. 10, 2007);

*see also United States v. Zolin*, 491 U.S. 554, 572 (1989); *Amusement Indus., Inc. v. Stern*, 293

F.R.D. 420, 426-27 (S.D.N.Y. 2013).  This standard, while "fairly robust," does not require proof

by a preponderance of the evidence.  *In re Omnicom Group, Inc. Sec. Litig.*, 2007 WL 2376170,

at *11.  Rather, it requires that the court be "persuaded of at least a substantial possibility of . .

. fraud."  *Id.*, at *11 n.13.

Plaintiffs argue that the crime-fraud exception applies to several documents on

BlackBerry's privilege log, including the Zipperstein Documents.  However, having reviewed

nearly 100 documents *in camera*, nothing in them persuades this Court that there is a

substantial possibility that a fraud was committed or that Defendants used the communications

with counsel to commit a crime or fraud.  Nor have Plaintiffs provided other facts to persuade

this Court of a substantial possibility of fraud.  *In re Richard Roe, Inc.*, 68 F.3d at 40; *Amusement*

*Indus., Inc. v. Stern*, 293 F.R.D. at 426-27; *In re Omnicom Group, Inc. Sec. Litig.*, 2007 WL

2376170, at *11.  Therefore, the crime-fraud exception does not apply to any of the

documents, and the Court will not further address this exception in the Analysis section below.

## C.     The Fiduciary Exception/Real Client Doctrine

The last exception to privilege Plaintiffs raise is the fiduciary exception or real client doctrine.  This exception derives from trust law and applies to communications between a fiduciary and her counsel pertaining to the conduct of fiduciary duties*.  In re Omnicom Group, Inc. Sec. Litig.*, 233 F.R.D. at 410.  The theory underlying the exception is that an attorney advising a fiduciary as to her fiduciary obligations to a trust is in actuality focused on the beneficiary of the trust.  In other words, the real client served by the legal advice is the beneficiary (not the fiduciary) and, hence, the privilege flows to the beneficiary.   Given the rationale for the exception, when the communications concern legal advice given to the fiduciary in his personal capacity (that is, when the fiduciary is the real client), the exception does not apply.  *See, e.g., In re Long Island Lighting Co.,* 129 F.3d 268, 271 (2d Cir. 1997); *In re Omnicom Group, Inc. Sec. Litig.*, 233 F.R.D. at 410; *Lawrence v. Cohn,* No. 90-cv-2396 (CSH) (MHD), 2002 WL 109530, at *5 n.2 (S.D.N.Y. Jan. 25, 2002); *Hudson v. Gen. Dynamics,* 73 F. Supp. 2d 201, 202-03 (D. Conn. 1999); *Martin v. Valley Nat'l Bank of Arizona,* 140 F.R.D. 291, 325 (S.D.N.Y. 1991).

Plaintiffs argue generally that the fiduciary exception should apply to advice given by an in-house lawyer to a company because company shareholders are the ultimate beneficiary of the advice.  In the context of this case, they assert that when Zipperstein and other in-house lawyers provided legal advice to BlackBerry, they were advising company executives on their fiduciary obligations to the company.  From there Plaintiffs argue that they as shareholders were the ultimate beneficiaries of any advice such that no privilege can be asserted against them—that they were the real clients.  There are obvious problems with Plaintiffs' argument.

First, none of the Plaintiffs were in fact shareholders at the time of the privileged communications that are the subject of this motion.  Second, they represent a putative class of individuals who represent only a portion of BlackBerry's shareholders, many of whom may not have been shareholders at the time of the privileged communications that are the subject of this motion.  Indeed, Plaintiffs' claims in this securities fraud action are that Defendants made fraudulent misrepresentations and omissions in securities filings that induced them to buy shares in BlackBerry at an inflated share price.  The misconduct, by its very nature, benefitted shareholders who sold their stock at the inflated share price and harmed individuals who became shareholders when they bought stock at the inflated price.  The advice concerned actions directed at the market, and the actions harmed individual investors, not the company as a whole.  In other words, the rationale for the fiduciary exception to the attorney-client privilege (a/k/a the real client doctrine) does not fit the facts of this case or indeed most securities fraud cases.

The Second Circuit has never recognized the fiduciary exception to the attorney-client privilege in the context of a securities fraud case like this one.  District courts within this circuit have taken varying approaches.  Some courts have applied the exception to securities fraud cases regardless of whether the plaintiffs were shareholders at the time of the privileged communication being sought in discovery by the plaintiffs.  However, these courts have held that the plaintiffs must demonstrate good cause for disclosure.  *See In re Pfizer Inc. Sec. Litig.*, No. 90-cv-1260 (SS), 1993 WL 561125, at *11-14 (S.D.N.Y. Dec. 23, 1993) (fiduciary exception applicable in securities fraud case but plaintiffs could not show good cause warranting disclosure); *In re Int'l Bus. Machs. Corp. Sec. Litig.*, No. 92-cv-9076 (GLG), 1993 WL 760214, at *6

(S.D.N.Y. Nov. 30, 1993) (fiduciary exception applicable in securities fraud case; plaintiffs showed good cause for disclosure); *In re Bairnco Corp. Sec. Litig.*, 148 F.R.D. 91, 97-99 (S.D.N.Y. 1993) (same).  Other courts have found that the fiduciary exception can apply in securities fraud cases but that (1) the plaintiffs must have been shareholders at the time of the privileged communication to take advantage of the exception and (2) must show good cause for disclosure.  *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. at 475 (declining to extend fiduciary exception to prospective shareholders because they were not in a fiduciary relationship at the time of the allegedly fraudulent conduct); *Quintel Corp. v. Citibank, N.A.*, 567 F. Supp. 1357, 1363-1364 (S.D.N.Y. 1983) (same). One court in this District has rejected application of the fiduciary exception as inapplicable to claims of securities fraud.  *In re Omnicom Group, Inc. Sec. Litig.,* 233 F.R.D. at 411-412.  The court in that case noted in particular that the claims in a securities fraud case focus on injury to members of investing public who had not yet purchased stock, not injury to the company and its shareholders. *Id.*  Therefore, it reasoned that the rationale for the exception does not apply in the context of a securities fraud claim.  The court also noted that the exception should not apply when a substantial portion of the putative class was not a shareholder at the time of the privileged communication, as this would allow non-beneficiaries access to privileged advice given to the company. *Id.*

This Court need not resolve whether the exception should apply to securities fraud cases generally, because even if it did, plaintiffs have not demonstrated good cause for it to apply in this case.  As noted above, those courts in this District that have applied the exception have held that plaintiffs must demonstrate good cause to gain access to a privileged communication.  The factors relevant to a good cause finding including:  (1) the number of

shareholder plaintiffs and percentage of stock they represent; (2) the bona fides of the shareholder plaintiffs; (3) whether the claim raised is obviously colorable; (4) the apparent necessity or desirability of the shareholders having the information and the information's availability from other sources; (5) the nature of the shareholders' claim; (6) whether the privileged communication relates to past or prospective actions; (7) whether the privileged communication is advice concerning the litigation itself; (8) the extent to which the privileged communication is identified versus the extent to which the shareholders are blindly fishing; and (9) the risk of revelation of trade secrets or other information in whose confidentiality the corporation has an interest for independent reasons. *In re Omnicom Group, Inc. Sec. Litig.*, 233 F.R.D. at 411 n.8; *In re Pfizer Inc. Sec. Litig.*, 1993 WL 561125, at *11 n.8.

First, none of the Plaintiffs were owners of BlackBerry stock at the time of the attorney-client communications that are the subject of the instant motions. The communications all pre-date May 13, 2013, the earliest date when any of the Plaintiffs purchased company stock. (Exs. O-Q, at Resp. to ROG #1). Hence, as noted above, none of the Plaintiffs were owed a fiduciary duty at the time of the communications. Moreover, Plaintiffs held only a tiny fraction of BlackBerry shares outstanding during the class period, and Plaintiffs have not shown that the putative class held a substantial portion of BlackBerry's stock at the time the privileged communications at issue took place. (*See* Doc. No. 10 at 7-8, 13-14; Doc. No 13-1.) *See RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, No. 94-cv-5587 (PKL) (RLE), 2003 WL 41996, at *5 (Jan. 6, 2003); *In re Int'l Bus. Machs. Corp. Sec. Litig.*, 1993 WL 760214, at *5. Second, this Court questions the bona fides of Plaintiffs' argument that they should be viewed as the ultimate beneficiaries of the legal advice to the company given that they are in an adversarial position to

the company and this suit is for personal money damages stemming from personal investment losses, not for damages incurred by the company. *Id.* Moreover, the class they seek to represent does not constitute all shareholders of the company. Third, although Plaintiffs' claims survived a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the basis for the Court's ruling on that motion was that it was plausible that Defendants' public statements in response to the Detwiler Report contradicted contemporaneous data they allegedly had from Wireless Zone showing above-average return rates for the Z10. *Pearlstein*, 2018 WL 1444401, at *3. None of the documents submitted to this Court *in camera*, however, support the allegation that BlackBerry was aware of above-average return rates at Wireless Zone, and Plaintiffs have not otherwise offered factual support for their contention that BlackBerry omitted facts known to it about high rates of return at Wireless Zone as of the date of the April 12 press release. The Rule 12(b) plausibility standard does not apply to discovery motions, and this Court certainly is not required to ignore information reviewed by it in the *in-camera* documents that undermine the plausibility of Plaintiffs' material omissions theory. Thus, Plaintiffs do not satisfy the third "clearly colorable" factor of the good cause test. *In re Omnicom Group, Inc. Sec. Litig.*, 233 F.R.D. at 412. Next, Plaintiffs already have received and will receive information about Z10 sales and return rates during the relevant period, so the information about what BlackBerry knew about sales and return rates as of April 12, 2013 is available from other sources. Thus, the fourth factor is not met. Finally, the other good cause factors are neutral or do not, on balance, warrant application of the fiduciary exception here. Accordingly, this Court will not apply the exception to any of the attorney-client communications at issue in the present motions.

The majority of courts to have addressed the issue have found that the fiduciary exception is not applicable to work product. In reaching this conclusion, these courts have observed that there is no mutuality of interest between shareholder plaintiffs and a company once litigation against the company is anticipated. *See, e.g., In re Int'l Sys. and Controls Corp. Sec. Litig.,* 693 F.2d 1235, 1239 (5th Cir. 1982); *Tatum v. R.J. Reynolds Tobacco Co.,* 247 F.R.D. 488, 501 (M.D.N.C. 2008); *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.,* No. MDL 969, 1994 WL 6883, at *4 n.3 (E.D. Pa. 1994). Some courts also note that "work product belongs to the litigator not the litigant fiduciary, and [that] it is the lawyer's impressions, strategies, and theories" the work product doctrine protects. *Gill v. Bausch & Lomb Supplemental Ret. Income Plan I*, 284 F.R.D. 84 (W.D.N.Y. 2012); *City of New York v. A-1 Jewelry & Pawn, Inc.*, No. 06-cv-2233 (JBW), 2007 WL 9710558 (E.D.N.Y. Dec. 10, 2007); *Lugosch v. Congel*, 219 F.R.D. 220 (N.D.N.Y. 2003); *see also Henry v. Champlain Enters., Inc.,* 212 F.R.D. 73, 88 (N.D.N.Y. 2003) (citing *Strougo v. BEA Assoc.,* 199 F.R.D. 515, 524 (S.D.N.Y. 2001)); *Mui v. Union of Needletrades, Indus. and Textile Employees, AFL-CIO,* No. 97-cv-7270 (HB) (KNF), 1998 WL 915901, at *3–4 (S.D.N.Y. Dec. 30, 1998) (disclosing work product would reveal defense of a lawsuit). *But see Osage Nation and/or Tribe of Indians of Oklahoma v. United States,* 66 Fed. Cl. 244, 250–52 (2005) (the few courts that have applied the exception to work product reason that a trustee's fiduciary obligations to keep the beneficiary informed trumps the work product doctrine).

This Court agrees with the majority of courts that the rationale underlying the fiduciary exception to the attorney-client privilege does not support its application to work product. Thus, this Court declines to extend the exception to work product.

## ANALYSIS

### 1.     *Adequacy of BlackBerry's Privilege Log*

Plaintiffs argue that BlackBerry's privilege log is inadequate.  However, this Court finds that the log complies with the Local Rule and this Court's prior directions.  The Log is on an excel spreadsheet that lists the document control number; a document class; if the document is an email chain, the date of the document and the date of the parent email; author; recipient; individuals copied and blind copied (if applicable); an indicator as to whether any of the persons who authored, sent, or received the document is an attorney; the general subject of the document; a general description of the document; and the privilege asserted.  This information was sufficient to permit Plaintiffs to identify documents on its list for potential challenge and the basis for the privilege.[4]  Accordingly, this Court finds that Plaintiffs' complaint about the adequacy of BlackBerry's log is without merit.

### 2.     *The In Camera Documents*

The Court next addresses each challenged category of documents listed as privileged or work product by BlackBerry.

#### A.     Emails concerning Brightstar South Africa, a distributor of BlackBerry devices (143, 155, 159)

Document 143 is an email chain that begins with certain employees requesting legal advice from in-house lawyers Tim Bolaji and Tony Miller concerning a contract with one of BlackBerry's distributors, Brightstar.  Miller responds to the initial request, adds in-house

---

[4] In connection with this Court's *in camera review* of documents, BlackBerry provided additional factual information concerning each document and parent emails to provide context (when applicable) in further support of its privilege designations.

lawyer Kayleigh Mounteney to the email chain, and requests legal input about rights under the contract. The remainder of the email chain includes discussions of the in-house attorneys' advice by business personnel, in some cases copying in-house counsel. Documents 155 and 159 similarly contain advice from Bolaji and Miller concerning the same distributor contract and the company's rights under it and discussions among business personnel about that advice. In-house counsel is copied on some communications within the email chains.

Plaintiffs argue that the communications are not between a client and its attorney and do not concern legal advice. This is incorrect based on this Court's review of the communications. *In re County of Erie*, 473 F.3d at 418, 419; *Constr. Prods. Research, Inc.*, 73 F.3d at 473. Plaintiffs also request that the emails be produced in redacted format to the extent any portion does not contain privileged communications. Having reviewed the documents, the Court finds that redaction is not appropriate or feasible given the flow of the communications and discussion of legal advice throughout the email chains. In sum, BlackBerry has met its burden to demonstrate applicability of the privilege, so Plaintiff's motion to compel production of these documents is denied.

**B.      Drafts of a script for BlackBerry's CEO for a Q42013 investor conference call and emails concerning same (149, 150)**

Document 149 is a draft script for an investor conference call that includes comments from BlackBerry in-house attorney Phil Kurtz in response to a request for legal review of the draft script. The final script has been produced to Plaintiffs. The draft is protected by the attorney-client privilege because it constitutes a communication concerning legal advice. The Court also finds that redaction is not appropriate or feasible for this document. *Gen. Elec. Co. v. United States*, No. 14-cv-0190 (JAM), 2015 WL 5443479, at *1 (D. Conn. Sept. 15, 2015);

*Softview Computer Prods. Corp. v. Haworth, Inc.*, No. 97-cv-8815 (KMW) (HBP), 2000 WL 351411, at *15 (S.D.N.Y. Mar. 31, 2000).

Document 150 is an email chain starting with the Vice President of Investor Relations sending the draft script to, among others, Zipperstein and Kurtz (who are cc'd), and expressly asking in-house counsel for legal review and to coordinate a review with external counsel as appropriate. The chain continues with detailed input from Zipperstein on a host of topics addressed in the script and providing necessary legal clarifications on the topics. Therefore, this document is protected by the attorney-client privilege.

Plaintiffs do not explain the basis for their contention that BlackBerry has waived privilege with respect to Document 150. BlackBerry has demonstrated that the email was not shared with a third party, and there is no other basis for finding waiver. The Court also notes there is no factual information in Document 150 about Z10 return rates at Wireless Zone or that contradict information in the April 12 press release or disclosed to the SEC.

### C. Drafts of a contract with a distributor (182, 185, 187, 300)

Documents 182, 185, 187 and 300 are drafts of a contract between BlackBerry and a distributor. All contain notes from a business manager to the company's in-house counsel requesting legal review of the contract and providing information to give context in connection with the legal review. BlackBerry has produced a cover email supporting its claim of privilege and reflecting the request for legal review. It also has produced the final version of the contract. BlackBerry has met its burden of demonstrating that these documents are privileged. *In re Grand Jury Subpoena Duces Tecum*, 731 F.2d at 1037; *Beacon Hill Asset Mgmt. LLC*, 231 F.R.D. at 145; *Softview Computer Prods. Corp.*, 2000 WL 351411, at *15; *Sequa Corp. v. Gelmin*,

No. 91-cv-8675 (CSH), 1994 WL 538124, at *3 (S.D.N.Y. Oct. 3, 1994).  Plaintiffs do not explain

the basis for their contention that BlackBerry has waived privilege with respect to documents

182, 185 or 187.  Nor can this Court discern a basis for finding waiver.  BlackBerry has

demonstrated that none of these drafts were shared with a third party.  None of the drafts

contain information about Z10 return rates or the Detwiler Report.  Accordingly, the Court finds

that BlackBerry has met its burden of demonstrating applicability of the privilege and denies

Plaintiffs' motion to compel production of these documents. Because redaction of portions of

these drafts that did not become public is burdensome, the Court will not require production of

the drafts in redacted format.  *See* Fed. R. Civ. P. 26(b)(2)(C)(i).

**D.** **Internal presentation regarding the sale of the Z10 to enterprise customers (183)**

Document 183 is a confidential internal presentation about the sale of Z10 devices to

enterprise customers.  It consists of three slides.  The third slide describes legal advice the

company is seeking and highlights potential legal risks.  This slide is protected by the attorney-

client privilege.  *In re County of Erie*, 473 F.3d at 418, 419; *Constr. Prods. Research, Inc.*, 73 F.3d

at 473.  The first two slides contain purely business information and are not privileged.  This

presentation must be produced in redacted format with the third slide redacted.

**E.** **Drafts of the April 12, 2013 press release and emails concerning the press release shared with a public relations consultant (199, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 244, 246, 247, 248, 249, 250, 251, 252, 253, 254, 255, 256, 257, 258, 261, 262, 263, 264, 265, 268, 283)**

All the documents in this category were created on April 11-13, 2013 in connection with

BlackBerry issuing a rebuttal to the Detwiler Report.  They include drafts of the April 12, 2013

press release, emails sharing factual information about Z10 sales and returns, comments on the

draft press release, setting-up calls to discuss the press release, discussing the timing of the publication of the press release and subsequent news reports concerning it.

By way of additional background, Detwiler had reported that "key retail partners have seen a significant increase in Z10 returns to the point where, in several cases, returns are now exceeding sales, a phenomenon we have never seen before" ("Detwiler Report"). (Doc. No. 84, Second Amended Complaint, ¶¶ 83-85.) BlackBerry's press release, issued late in the afternoon on April 12, 2013 after quickly gathering information about Z10 return rates from several large distributors, quoted BlackBerry's then President and CEO saying, "[s]ales of the BlackBerry® Z10 are meeting expectations and the data we have collected from our retail and carrier partners demonstrates that customers are satisfied with their devices," and "[r]eturn rate statistics show that we are at or below our forecasts and right in line with the industry." The press release quoted Zipperstein saying, "[t]hese materially false and misleading comments about device return rates in the United States harm BlackBerry and our shareholders, and we call upon the appropriate authorities in Canada and the United States to conduct an immediate investigation." It also quotes Zipperstein stating, "Everyone is entitled to their opinion about the merits of the many competing products in the smartphone industry, but when false statements of material fact are deliberately purveyed for the purpose of influencing the markets a red line has been crossed." BlackBerry asked a public relations consultant, Aaron Curtiss, to draft the press release and included Curtiss in communications regarding changes to the draft.

Having reviewed the documents *in camera*, this Court concludes that the drafts exchanged and communications relating to the press release were not for the predominant

purpose of seeking or conveying legal advice. There is no dispute that the company was aggressively marketing its Z10 device and hoping that the Z10 would allow the company to remain competitive in the smartphone market. BlackBerry was carefully monitoring its sales and return rates as a result. It also was carefully monitoring market reports about the Z10 launch, as negative reporting would or could harm sales and stock price. Indeed, BlackBerry's stock price began to decline upon publication of the Detwiler Report. BlackBerry's management understandably needed to investigate the report and respond to it promptly as a business matter to mitigate any harm from it. That is exactly what occurred. The predominant purpose of the majority of communications in this category clearly was to quickly gather factual information from vendors about return rates to ascertain whether there was any truth to the Detwiler Report and to prepare a response to it for its shareholders and the market to dispel any false information about the Z10 launch in the U.S. Although BlackBerry has stated that Zipperstein directed the fact investigation for purposes of providing legal advice on the press release and potential legal actions against Detwiler, the Court finds the majority of the communications to have been predominantly for business purposes.

There are five documents in this category that specifically request legal review of the legal disclaimer language on the press release and/or concern legal advice regarding compliance with insider trading rules or legal action against Detwiler (Document Nos. 256, 257, 258, 263, 283). These documents are protected by the attorney-client privilege. But, to the extent BlackBerry included Curtiss in the communications, it has waived any privilege. Curtiss, a public relations consultant, was not needed to assist Zipperstein in evaluating whether Detwiler had violated securities laws or the strength of a potential lawsuit by BlackBerry against

Detwiler.  Nor was Curtiss needed to help Zipperstein advise the company on legal disclaimer language in the press release.  It is clear from the communications this Court has reviewed that Curtiss was engaged for his expertise in preparing press releases and advising on the best way to respond to the Detwiler Report from a market perspective.  This was not a situation like *In re Grand Jury Subpoenas Dated March 24, 2003* where the lawyer engaged a public relations consultant after his client already was under criminal investigation and the consultant advised on how best to utilize press to achieve the legal goal of avoiding indictment.  *See* 265 F. Supp. 2d at 323-24, 329.  It is a stretch to view the purpose of BlackBerry's press release to be to predominantly for a legal purpose.  The short press release containing only a general refutation of the Detwiler Report could not be expected to catalyze a regulatory investigation or to be for a legal purpose.  Indeed, BlackBerry acknowledges in the press release that it needed to and would be making a formal request to regulatory agencies to commence an investigation.  And, as of April 12, BlackBerry was not even in the position to provide complete information about Z10 sales and returns to the SEC to justify a request to investigate Detwiler.  Other documents submitted *in camera* reflect a continuing investigation of facts in advance of a meeting with the SEC.  For these reasons, this Court concludes that Curtiss performed nothing other than standard public relations services.  Thus, BlackBerry waived privilege by including Curtiss in these communications.  *See Haugh,* 2003 WL 21998674, at *3; *Calvin Klein Trademark Trust,* 198 F.R.D. at 55.

   *In re Copper Market Antitrust Litigation*, cited by BlackBerry in support of its privilege designations, is distinguishable.  In that case, a corporation retained a "crisis management" firm in connection with ongoing litigation against the company.  200 F.R.D. 213, 215 (S.D.N.Y. Apr.

30, 2001).  Here, BlackBerry was not facing any litigation threat or in the midst of litigation.

Also, in *In re Copper Market* the court accepted the contention that the public relations firm

served as the "functional equivalent" of a corporate employee and was responsible for "seeking

and receiving legal advice from the corporation's counsel."  *Id.* at 216.  There is nothing in any

of the communications or the declarations provided by BlackBerry in connection with the

present motions supporting a conclusion that Curtiss was the functional equivalent of an

employee.  Other cases cited by BlackBerry are distinguishable for these reasons as well.  *See*

*Spin Master Ltd. v. Bureau Veritas Consumer Prods. Serv., Inc.*, No. 08-cv-923A (Sr), 2016 WL

690819, at *7 (W.D.N.Y. Feb. 22, 2016) (the independent consultant was an employee at the

time of the communication, unlike here*); Fine v. ESPN, Inc.*, No. 12-cv-0836 (LEK) (DEP), 2015

WL 3447690, at *11 (N.D.N.Y. May 28, 2015) (finding that none of the communications with

public relations consultant had to do with legal advice and thus were not privileged); *McNamee*

*v. Clemens*, No. 09-cv-1647 (SJ), 2013 WL 6572899, at *1 (E.D.N.Y. Sept. 18, 2013) (no privilege

attached to communications with public relations consultant hired to manage a typical public

relations campaign with the goal of "brand[ing] [plaintiff] a liar," not to assist defendants'

counsel in the provision of legal advice).

      BlackBerry has asserted work product protection over Document 257.  This document is

a near final draft of the April 12 press release.  Documents 283 and 338 on BlackBerry's

privilege log make clear that BlackBerry did anticipate legal actions as of April 12.  Provision of

work product to Curtiss does not waive protection, as there is no basis for finding that

disclosure to Curtiss was inconsistent with the principles underlying work product protection.

However, the Court finds that Document 257 would have been prepared in essentially similar

form irrespective of any anticipated litigation. *See In re Symbol Techs., Inc. Sec. Litig.*, 2017 WL 1233842, at *8. For this reason, the Court finds that it is not protected work product. Accordingly, Plaintiffs' motion to compel production of documents in this category is granted.

**F.    Internal emails concerning preparation of the April 12, 2013 press release and collection of information about Z10 returns (289, 298, 302, 303, 306, 307, 308, 309, 310, 311, 314, 317, 318, 325)**

The documents in this category are also all dated April 11-13, 2013. They consist of internal emails between and among BlackBerry's in-house counsel and BlackBerry employees collecting and sharing information about return rates for the Z10 for purposes of crafting a response to the Detwiler Report. Some of the communications identify employees who might have documents and data regarding return rates who should receive a litigation hold (Documents 306, 317, 318). BlackBerry has explained that following the release of the Detwiler Report on April 11, 2013, Zipperstein asked BlackBerry executive John Powell to gather data and information to assist him in providing legal advice regarding BlackBerry's response to the Detwiler Report. Zipperstein asked Powell and his team to work with two lawyers on his staff, Mary Huser and Jordan Vaeth, on data collection and document preservation. Powell designated Sarah Tatsis from his team to work with the company's lawyers and gather information. The designees then began gathering fact information about Z10 sales and return rates from various vendors and communicating about the same. All the communications were designated privileged and confidential.

Although it is true that a fact investigation conducted at the direction of an attorney for purposes of rendering legal advice is protected by the attorney-client privilege, *First Chicago Int'l v. United Exch. Co.*, 125 F.R.D. 55, 56-58 (S.D.N.Y. 1989), the purpose of the fact

investigation must be to aid the provision of legal advice.  As discussed above, it is clear to this Court that the fact investigation into Z10 sales and return rates prior to issuance of the press release would have been conducted regardless of any legal advice and, thus, communications pre-dating the press release were predominantly for business purposes.  That is, for purely business purposes the company needed to learn whether Z10s were being returned at high rates and, if not, publicly correct any misstatements in the Detwiler Report given the strategic importance of the Z10 launch to the company.  For this reason, these documents (Documents 289, 298, 302, 303, 307, 308, 309, 310, 311, 314 and 325) are not protected by the attorney-client privilege.

On the other hand, the documents that identify people who need to receive a litigation hold clearly were prepared predominantly for legal purposes so that the company's in-house counsel could advise on legal document hold obligations.  Thus, these documents (Documents 306, 317, and 318) are protected by the attorney-client privilege.

Additionally, to the extent Documents 289, 298, 302, 303, 307, 308, 309, 310, 311, 314 or 325 contain any analysis by Zipperstein regarding Detwiler's liability or communications between BlackBerry and its in-house counsel regarding potential claims against Detwiler, such communications may be redacted from the documents so long as factual information about return rates and sales is disclosed.  The Court finds unavailing Plaintiffs' argument that, in light of the U.S. Supreme Court's decision in *Omnicare*, BlackBerry's decision to include a legal opinion in the April 12 press release waived all attorney-client communications concerning responding to the Detwiler Report.

In *Omnicare*, pension funds that bought Omnicare stock in an initial public offering alleged that two statements in a registration statement about the company's legal compliance were materially false and misleading in violation of Section 11 of the Securities Act of 1933, 15 U.S.C. § 77a *et seq.* The statements were:

- "We believe our contract arrangements with other healthcare providers, our pharmaceutical suppliers and our pharmacy practices are in compliance with applicable federal and state laws."
- "We believe that our contracts with pharmaceutical manufacturers are legally and economically valid arrangements that bring value to the healthcare system and the patients that we serve."

*Id.* at 1323. Plaintiffs contended that none of Ominicare's officers and directors had reasonable grounds for making such statements because the company had been warned by lawyers that its contractual arrangements with suppliers and providers could be deemed to violate anti-kickback laws. The Court held that omission of material facts about the company's inquiry into the validity of its contracts or knowledge of contrary legal views might cause a reasonable investor to be misled by the legal opinion statements in the registration statement. *Id.* at 1327-29. Because neither the trial court nor the circuit court considered the Plaintiffs' material omissions theory under the right standard, the Court remanded for a determination as to whether the Plaintiffs had stated a viable omissions claim under the securities law. *Id.* at 1332-33.

The Court directed the trial court on remand to determine whether the omitted fact – that an attorney had warned Omnicare that a particular contract "carried a heightened risk of legal exposure under anti-kickback laws" – was a fact that a reasonable investor would consider important. *Id.* at 1333. If so, it directed the trial court to then determine whether the omission rendered the legal compliance opinion statements misleading. *Id.* It instructed the trial court

to consider the status and expertise of the attorney who had warned Omnicare of a heightened risk of legal exposure and other legal information pertinent to the legal opinion statements included in Omnicare's registration.  *Id.*  The Court's instructions implicitly contemplated disclosure of other legal opinions given to the company for purposes of evaluating Plaintiffs' claim that the legal compliance opinion statements in Omnicare's registration were misleading.

*Omnicare* does not address attorney-client privilege.  Nor is the broad interpretation of *Omnicare* that Plaintiffs advocate appropriate.  *Omnicare* suggests (unsurprisingly) that undisclosed facts that may be material to an investor's understanding of statements in a securities filing but that were allegedly fraudulently omitted from the filing are relevant and discoverable.  It does not hold that all attorney-client communications concerning a securities filing are waived.  Nor does it hold that all attorney-client communications concerning a securities filing that has been identified as containing a material misrepresentation or omission are waived.  At best it suggests that communications specific to a particular subject allegedly omitted or misrepresented within a securities filing may be subject to disclosure and, if the communications happen to be privileged, those communications may be subject to a finding of waiver.

In this case, the factual statements about Z10 returns embedded in Zipperstein's legal opinions quoted in the press release are what Plaintiffs claim were materially misleading because they omitted facts allegedly known about high return rates at Wireless Zone.  Plaintiffs' theory of their case rests on their belief that BlackBerry and Zipperstein knew about high return rates at Wireless Zone and hid this information from the investing public when issuing the April 12 press release.  And, because BlackBerry chose to make a public statement that Z10 sales

were in line with expectations and return rates not unusually high – a statement filed with the SEC – it subjected that statement to scrutiny and itself to exposure under the securities laws if the statement was false or materially misleading.  Therefore, documents reflecting or suggesting knowledge of high return rates at Wireless Zone (and other retailers) prior to issuing the April 12 press release are relevant and discoverable, even if this information is contained in communications that might otherwise be deemed privileged.  BlackBerry cannot insulate itself from disclosing factual information gathered about Z10 sales and returns prior to issuance of the press release merely because its Chief Legal Officer directed the gathering of that information or because he used that information in opining that Detwiler could or should be subject to investigation and liability for its false reporting.  *Id.*; Wendy Gerwick Couture, *Citing Counsel's Opinion About the Merits of Legal Proceedings in SEC Filings*, 46 No. 2 Sec. Reg. L.J. 117, 128-29 (2018); *cf*. R. Alexander Swider, Note, *Toeing the Line: The Delicate Balance Attorneys Must Maintain When Responding to Auditor Inquiry Request Letters*, 50 Ind. L. Rev. 969, 973-74, 983-88 (2017); Aaron J. Rigby, *The Attorney-Auditor Relationship: Responding to Audit Inquiries, the Disclosure of Loss Contingencies and the Work-Product Privilege*, 35 No. 3 Sec. Reg. L.J. ART 1 (2007); Marc I. Steinberg, *The Corporate/Securities Attorney as a "Moving Target" – Client Fraud Dilemmas*, 46 Washburn L.J. 1, 21 (2006); *American Bar Association Statement of Policy Regarding Lawyers' Responses to Auditors' Requests for Information*, 31 Bus. Law. 1709 (1976) ("[T]he mere disclosure by the lawyer to the outside auditor, with due client consent, of the substance of communications between the lawyer and client may significantly impair the client's ability in other contexts to maintain the confidentiality of such communications.").

On the other hand, legal research memos and attorney communications opining about potential claims against Detwiler and the strength of those claims, the legal basis for requesting that regulatory authorities investigate Detwiler, and likelihood of a regulatory investigation, are not critical to Plaintiffs' material omissions theory. Detwiler's legal exposure is a side issue. The same is true with respect to communications conducted solely for purposes of document preservation in connection with anticipated legal claims against Detwiler (*i.e.*, Document Nos. 306, 317, 318). Nothing in the press release justifies a finding of waiver as to these communications under applicable law. *See Loguidice v. McTiernan*, No. 14-cv-1323 (TJM) (CFH), 2016 WL 4487779 (N.D.N.Y. Aug. 25, 2016); *see also In re Bairnco Corp. Sec. Litig.*, 148 F.R.D. 91 (because the public disclosures were based on the beliefs of management and counsel, the communication between counsel and the client, including the underlying facts and information passed from counsel, were relevant to scienter and had to be produced under a waiver theory).

G.   **Post press-release communications discussing Z10 return and initial customer complaints (326, 327, 330, 339, 341, 345, 356, 357, 358, 359, 360, 390, 391, 392)**

All of the documents in this category post-date the April 12, 2013 press release. They discuss return rates in the U.S. and Canada and complaints made by customers about the Z10 when returning it. BlackBerry claims attorney-client privilege as to all of the documents in this category. In support of its privilege assertion, BlackBerry has produced documents indicating that its in-house lawyers directed the search for information about sales and return rates for purposes of putting together a presentation to the SEC to urge it to investigate Detwiler and evaluating whether to institute its own lawsuit against Detwiler. The documents indicate that Zipperstein desired additional facts so he could advise the company on whether to actually move forward with a presentation to the SEC and whether to institute litigation against

Detwiler.  Thus, BlackBerry has demonstrated that collection of additional information after issuing the press release was for the predominant purpose of providing legal advice in anticipation of litigation and in pursuit of what could be characterized as a legal goal – causing the SEC to investigate Detwiler.  The Court also finds that, unlike the communications directly related and prior to the press release, the communications here would not have been conducted in the normal course or in the manner conducted and were for the predominant purpose of gathering information for in-house counsel to provide legal advice.  Thus, the Court finds that the attorney-client privilege attaches to these documents.  This is not the end of the analysis, however.

Plaintiffs argue that because BlackBerry shared information about Z10 returns with the SEC, it has waived any claim of privilege, at least with respect to factual information about Z10 sales and returns.  This Court agrees.  Although Rule 502(a) generally limits disclosure to information actually disclosed to a governmental agency, the exception to this rule has been met here.  First, the disclosure of information to the SEC about Z10 sales and returns was voluntary and intentional.  Second, any undisclosed communications and information concerning Z10 sales and return rates clearly relates to the same subject of the disclosures to the SEC.  Third, in fairness, the disclosed and any undisclosed factual information regarding Z10 sales and return rates ought to be considered together.  The emails discussing customer complaints also are relevant to the company's sales and returns projections to the extent shared with the SEC.  Thus, these documents must be produced under the exception to Rule 502.

On the other hand, the company may (to the extent applicable) redact opinion work product and may redact any legal opinions as to Detwiler's legal exposure and the likely success of any legal actions being contemplated or taken against Detwiler. Mere advocacy by BlackBerry's counsel to the SEC that it should investigate Detwiler based on BlackBerry's view that Detwiler engaged in market manipulation does not result in a waiver of internal attorney advice on this subject or fall under the exception to Rule 502. *In re Weatherford Int'l Sec. Litig.*, 2013 WL 6628964; *Gruss*, 2013 WL 3481350; *Vitesse Semiconductor Corp.,* 2011 WL 2899082, at *3.

H. **Post press-release emails concerning draft communication to Verizon to collect information about Z10 returns (352, 353, 354, 355, 365, 366, 367, 368, 369, 370, 371, 372, 373, 374, 375, 376, 377)**

The documents in this category all concern a draft email to Verizon to collect additional information about Z10 returns. The documents contain specific facts about activations and returns at Verizon in the weeks prior to April 11, 2013. BlackBerry's in-house counsel Jordan Vaeth participated in the email communications.

BlackBerry claims attorney-client privilege as to all of the documents in this category and work product protection as to Document Nos. 365, 366, 367, 368, 369, 370, 371, 372, 373, 374, 375, 376, and 377. BlackBerry has produced a litigation hold memo dated April 16, 2018, indicating that it was contemplating litigation against Detwiler. It also has produced an email from April 12, 2013 indicating that the company was actively considering legal action against Detwiler. Finally, it has produced documents indicating that its in-house legal department was directing the search for information about sales and return rates for purposes of putting together a presentation to the SEC to urge it to investigate Detwiler and potentially bringing a

suit against Detwiler.  BlackBerry further explains that "[g]iven the legal issues concerning the false Detwiler Report, this draft communication with a Verizon executive was presented for review to legal counsel before being finalized."  All of this supplemental information supports the company's assertion of privilege and work product protection.

Because the Company shared factual information with the SEC about Z10 sales and returns, the Court finds that in fairness, undisclosed factual information on this subject also must be disclosed.  *See discussion above.*  However, the Court finds that opinion work product and attorney-client privilege protect the emails and portions of emails in which BlackBerry and its counsel edit the text of the email to Verizon.  Unlike the portions of the emails collecting and sharing actual data on Z10 sales and returns, the emails and portions of emails in which a draft question to Verizon is edited does not include facts about return rates that in fairness ought to be considered with facts that were shared with the SEC.  Rather, these emails and portions of emails are edits to a communication to a customer to ensure a diplomatic interchange and obtain requested information and to ensure appropriate information is collected in light of potential legal action contemplated by BlackBerry.  Furthermore, the Court is satisfied that the predominant purpose of the communications on the draft text was legal – to collect information from a distributor at counsel's request so he could advise BlackBerry about its legal presentation to the SEC.  The emails also are not in a form that otherwise would be used absent anticipated litigation.  Therefore, the advice and comments on the draft language within the emails are protected attorney-client communications and work product that may be redacted.

I.     **An email between Zipperstein and Board of Directors regarding trading activity in light of Detwiler Report (245)**

Document 245 is an email chain between and among in-house counsel (Zipperstein) and members of BlackBerry's Board of Directors regarding legal options for BlackBerry's response to the Detwiler Report.  Various directors discuss their views as to legal actions, and Zipperstein responds and explains steps he is taking to finalize recommendations as to legal next steps. While some of the content includes business actions and strategies, the overall context of the communication is predominantly legal in nature.  Redaction is neither feasible nor appropriate here.

For reasons discussed above, the mere fact that Zipperstein stated the company's legal position vis-à-vis Detwiler in the April 12 press release does not constitute a waiver of underlying advice about actions against Detwiler.  And, the document itself does not contain factual information contradicting any statements in the April 12 press release.  No third party was included in the communication.  It appears the communication was intended to be maintained as confidential.  There is no other basis for finding waiver.  Thus, BlackBerry has met its burden to demonstrate that this document is privileged.

J.     **Emails between outside counsel and Zipperstein and BlackBerry in-counsel and management concerning a press inquiry (315, 316**)

In these documents, BlackBerry's outside counsel advises BlackBerry about a news story that will be aired in the wake of the Detwiler Report and a question posed by the reporter that BlackBerry's outside counsel refused to answer.  The communications are in the nature of a

"heads up" and do not concern or provide legal advice. Therefore, they are not protected by the attorney-client privilege and must be produced.

### K. A litigation hold memo (338)

Document 338 is a litigation hold memo that BlackBerry's legal department sent to employees on April 16, 2013 after issuance of the Detwiler Report. The document itself contains a description of legal actions being taken and considered. The document also contains a description of what BlackBerry's legal department deemed to be potentially relevant information and an explanation of the company's legal obligations to preserve documents and the employee's role in fulfilling those obligations.

There are few cases in this Circuit discussing applicability of the attorney-client privilege and work product doctrine to litigation hold notices. Courts in other Circuits have noted that both protections may shield such notices from disclosure. *EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc.*, No. 12-cv-0463, 2018 WL 3342931 (M.D. Tenn. Mar. 29, 2018) (recognizing that litigation hold notice could be protected by the attorney-client privilege or work product doctrine; ordering production of redacted documents concerning the circumstances of the company's preservation efforts in light of spoliation concerns); *Márquez-Marin v. Lynch*, No. 16-cv-1706 (JAW), 2018 WL 1358214, at *12 (D.P.R. Mar. 15, 2018); *Cohen v. Trump*, No. 13-cv-2519 (GPC) (WVG), 2015 WL 3617124, at *7 (S.D. Cal. June 9, 2015) (litigation hold notice was privileged but discovery regarding the circumstances surrounding the issuance of the notice was not privileged). On the other hand, in cases where the notice has been sent to large groups of employees and merely described document retention practices or instructions for preservation, courts have rejected claims of attorney-client and work product

protection. *Bagley v. Yale Univ.*, 318 F.R.D. 234 (D. Conn. 2016) (in context of spoliation allegations, attorney-client privilege did not attach to litigation hold notice sent in response to legal complaint lodged by employee and work product doctrine not implicated); *United States ex rel. Barko v. Halliburton Co.*, 74 F. Supp. 3d 183 (D.D.C. 2014) (in qui tam litigation, litigation hold documents reflecting receipt of a subpoena from the government because they were sent by the company's chief executive, not the legal department, to large groups of employees, and did not contain legal advice or work product).

Thus, a litigation hold, just like any other communication with counsel, may constitute or contain legal advice and work product. There is no reason why a litigation hold memo should be *per se* excluded from protection. Rather, the content and circumstances of its issuance, as well as the context of the litigation, will determine applicability of any privilege or work product protection.

In this case, the hold notice was not issued in response to a lawsuit. Rather, it was prepared by the legal department to collect and preserve information it deemed relevant to affirmative legal actions it was taking or anticipated. It is a document that would not have been prepared for any purpose other than anticipated litigation. Likewise, its description of potentially relevant information and selected distributees constitutes work product. The affirmative litigation hold at issue here includes parameters prepared by and conceived of entirely by BlackBerry's counsel. It reflects counsel's mental processes about factual information needed for its assessment and advice about legal actions against Detwiler and relief available to the company. Similarly, to the extent the document contains a description of legal obligations, it contains legal advice. The Court also notes that Document 338 does not

appear to have been broadly distributed and is labeled "Privileged & Confidential," indicating that confidentiality was expected. For all these reasons, the Court finds that this document is protected both by the attorney-client privilege and work product doctrine. It also finds there is no basis for finding waiver. Thus, Plaintiffs' motion to compel is denied as to this document.

L.   **An email with counsel concerning a potential campaign to reach out to Z10 customers (412)**

Document 412 is an email chain that starts with a businessperson posing various legal compliance- and risk-related questions about a proposed customer communication strategy to BlackBerry in-house counsel James Markson and Stephen Whitney. One of the in-house attorneys responds with specific requests for information he needs in order to provide the requested legal advice. The communication is then forwarded without comment to two other business personnel. This communication is clearly for the predominant purpose of seeking legal advice and is thus privileged.

This communication is not relevant to the subject matter disclosed to the SEC or to the factual accuracy of statements about Z10 return rates in the April 12 press release. The communication was not shared with any third party and appears to have been treated as an internal privileged and confidential communication. In other words, there is no basis for finding waiver.

However, the top email in the chain, which is merely a forwarding transmittal, is not privileged. Therefore, the bottom two emails in the chain can be redacted but the portion of the email chain that is merely a forwarding transmittal must be produced.

**M.** **Drafts of a press release concerning BlackBerry's release of Q42013 results (163, 178)**

Documents 163 and 178 are drafts of a March 28, 2013 press release sent to the company's in-house counsel for legal review prior to filing with the SEC. BlackBerry has produced cover emails demonstrating the purpose of the exchange of the draft. Draft documents sent to counsel for legal review are often found to constitute an attorney-client communication so long as the draft and communications concerning it were intended to be and maintained as confidential. *In re Grand Jury Subpoena Duces Tecum*, 731 F.2d at 1037; *Beacon Hill Asset Mgmt. LLC*, 231 F.R.D. at 145; *Softview Computer Prods. Corp.*, 2000 WL 351411, at *15; *Sequa Corp.*, 1994 WL 538124, at *3. This is true even where the document in its final form is intended to be disseminated publicly, as was the case here. *In re Grand Jury Subpoena Duces Tecum*, 731 F.2d at 1037; *Sequa Corp.*, 1994 WL 538124, at *3. The drafts here were maintained as confidential and constitute attorney-client communications. Thus, the Court finds Documents 163 and 178 are protected by the attorney-client privilege.

Plaintiffs argue that portions of the drafts that ultimately became public are not privileged and seek production of redacted versions. The Court denies this request on the basis that doing so would be redundant – Plaintiffs already have the publicly disclosed portions of the drafts in the final text of the press release. *See* Fed. R. Civ. P. 26(b)(2)(C)(i).

Plaintiffs also argue that there has been a waiver of protection with respect to Document 163. However, this Court discerns no basis for finding waiver. BlackBerry did not share this draft with a third party. BlackBerry has provided discovery of the facts conveyed in the published version of the document. To the extent the press release itself is one of the alleged misstatements upon which Plaintiffs base their case, it is unclear what information in

the draft is necessary or relevant to exploring the accuracy of the alleged misstatements.  And, as noted above, *Omnicare* did not render all legal communications about all statements in challenged securities filings discoverable.  BlackBerry has satisfied its burden of demonstrating applicability of privilege to this document.

## CONCLUSION

For the reasons set forth above, Plaintiffs' motions are GRANTED in part and DENIED in part.  The parties are directed to the Addendum for a summary of the Court's ruling as to each of the documents submitted for *in camera* review.

**SO ORDERED.**

Dated:   March 19, 2019
             New York, New York


_____
KATHARINE H. PARKER
United States Magistrate Judge

| Number | DocDate | Author | Recipient | CC | Subject | PrivilegeAsserted | GeneralDescription | RULING | NOTES |
|---|---|---|---|---|---|---|---|---|---|
| 143 | 3/21/2013 | Stephanie Joiner | John Powell | | RE: Privileged and confidential: Brightstar South Africa | Attorney-Client Privilege | Email chain requesting and reflecting legal advice of counsel regarding distributor agreement. | AC | |
| 149 | 3/24/2013 | Phil Kurtz* | Paul Carpino; Edel Ebbs; Heidi Davidson; James Yersh; Adam Emery; Rebecca Freiburger | Kany Doski; Steve Zipperstein* | | Attorney-Client Privilege | Draft script for CEO reflecting legal advice of counsel. | AC | |
| 150 | 3/24/2013 | Paul Carpino | Paul Carpino (This is a mistake-- the email was sent to Steve Zipperstein*) | Brian Bidulka; Edel Ebbs | Re: Confidential - 12th Draft of script | Attorney-Client Privilege | Email chain requesting and reflecting legal advice of counsel regarding draft script for CEO. | AC | |
| 155 | 3/26/2013 | Carlo Chiarello | Kristian Tear | | RE: Privileged and Confidential:  B* MFN question | Attorney-Client Privilege | Email chain forwarding and discussing legal advice of counsel (Tim Bolaji*) regarding contractual terms with distributor. | AC | |
| 159 | 3/26/2013 | Carlo Chiarello | Kristian Tear | | RE: Privileged and Confidential:  B* MFN question | Attorney-Client Privilege | Email chain forwarding and discussing legal advice of counsel (Tim Bolaji*) regarding contractual terms with distributor. | AC | |
| 163 | 3/27/2013 | James Yersh | Edel Ebbs; Thorsten Heins; Brian Bidulka; Paul Carpino; Heidi Davidson; Phil Kurtz*; Steve Zipperstein* | Tanya Sweeney; Kany Doski; Jessica Greco; Vincent Santos | | Attorney-Client Privilege | Draft press release reflecting legal advice of counsel. | AC | |
| 178 | 3/28/2013 | Heidi Davidson | Steve Zipperstein*; Brian Bidulka; Edel Ebbs; Paul Carpino; Phil Kurtz* | | | Attorney-Client Privilege | Draft press release sent for legal advice of counsel. | AC | |
| 182 | 3/28/2013 | Lauren Doherty | Nigel Vanderlinden; John Powell; John Kinney; Kevin Stone; Geraldo Barron | Lauren Doherty; Ronald Chang | | Attorney-Client Privilege | Draft carrier agreement reflecting legal advice of counsel. | AC | |
| 183 | 3/28/2013 | Michael Chan | Carlo Chiarello | Rick Robinson; Matthias Glanz; Mike McAndrews; John Hartwick | | Attorney-Client Privilege | Presentation reflecting legal advice of counsel regarding contractual provisions. | AC in part | Redact 3rd slide. |
| 185 | 3/28/2013 | Geraldo Barron | Lauren Doherty; Nigel Vanderlinden | Ronald Chang; John Powell; John Kinney; Kevin Stone; Geraldo Barron | | Attorney-Client Privilege | Draft carrier agreement reflecting legal advice of counsel. | AC | |
| 187 | 4/9/2013 | John Kinney | John Powell; John Rundle | | | Attorney-Client Privilege | Draft carrier agreement reflecting legal advice of counsel. | AC | |

| Number | DocDate | Author | Recipient | CC | Subject | PrivilegeAsserted | GeneralDescription | RULING | NOTES |
|---|---|---|---|---|---|---|---|---|---|
| 199 | 4/11/2013 | Steve Zipperstein* | Heidi Davidson; Aaron Curtiss | | FW: Privileged and confidential, return rates | Attorney-Client Privilege | Email from in-house counsel (Steve Zipperstein*) to BlackBerry employee and consultant working at the direction of in-house counsel regarding BlackBerry's response to the Detwiler Report. | NP | In alternative, privilege waived. |
| 201 | 4/11/2013 | Steve Zipperstein* | Heidi Davidson; Aaron Curtiss | | RE: Privileged and confidential, return rates | Attorney-Client Privilege | Email chain among in-house counsel (Steve Zipperstein*) and BlackBerry employee and consultant working at the direction of in-house counsel regarding BlackBerry's response to the Detwiler Report. | NP | In alternative, privilege waived. |
| 202 | 4/11/2013 | Heidi Davidson | Steve Zipperstein*; Aaron Curtiss | | Re: Privileged and confidential, return rates | Attorney-Client Privilege | Email chain among in-house counsel (Steve Zipperstein*) and BlackBerry employee and consultant working at the direction of in-house counsel regarding BlackBerry's response to the Detwiler Report. | NP | In alternative, privilege waived. |
| 203 | 4/11/2013 | Steve Zipperstein* | Heidi Davidson; Aaron Curtiss | | Re: Privileged and confidential, return rates | Attorney-Client Privilege | Email chain among in-house counsel (Steve Zipperstein*) and BlackBerry employee and consultant working at the direction of in-house counsel regarding BlackBerry's response to the Detwiler Report. | NP | In alternative, privilege waived. |
| 204 | 4/11/2013 | Aaron Curtiss | Steve Zipperstein*; Heidi Davidson | | Re: Privileged and confidential, return rates | Attorney-Client Privilege | Email chain among in-house counsel (Steve Zipperstein*) and BlackBerry employee and consultant working at the direction of in-house counsel regarding BlackBerry's response to the Detwiler Report. | NP | In alternative, privilege waived. |
| 205 | 4/11/2013 | Heidi Davidson | Steve Zipperstein*; Aaron Curtiss | | Re: Privileged and confidential, return rates | Attorney-Client Privilege | Email chain among in-house counsel (Steve Zipperstein*) and BlackBerry employee and consultant working at the direction of in-house counsel regarding BlackBerry's response to the Detwiler Report. | NP | In alternative, privilege waived. |

| Number | DocDate | Author | Recipient | CC | Subject | PrivilegeAsserted | GeneralDescription | RULING | NOTES |
|---|---|---|---|---|---|---|---|---|---|
| 206 | 4/11/2013 | Steve Zipperstein* | Heidi Davidson; Aaron Curtiss | | Re: Privileged and confidential, return rates | Attorney-Client Privilege | Email chain among in-house counsel (Steve Zipperstein*) and BlackBerry employee and consultant working at the direction of in-house counsel regarding BlackBerry's response to the Detwiler Report. | NP | In alternative, privilege waived. |
| 207 | 4/11/2013 | Steve Zipperstein* | Heidi Davidson | | Re: Privileged and confidential, return rates | Attorney-Client Privilege | Email chain among in-house counsel (Steve Zipperstein*) and BlackBerry employee and consultant working at the direction of in-house counsel regarding BlackBerry's response to the Detwiler Report. | NP | In alternative, privilege waived. |
| 208 | 4/11/2013 | Aaron Curtiss | Heidi Davidson; Steve Zipperstein* | | ACP: BBRY Response Release DRAFT 1 | Attorney-Client Privilege | Email from BlackBerry consultant working at the direction of in-house counsel to in-house counsel (Steve Zipperstein*) and BlackBerry employee regarding BlackBerry's response to the Detwiler Report. | NP | In alternative, privilege waived. |
| 209 | 4/11/2013 | Aaron Curtiss | Steve Zipperstein* | | | Attorney-Client Privilege | Document prepared by BlackBerry consultant working at the direction of in-house counsel regarding BlackBerry's response to the Detwiler Report. | NP | In alternative, privilege waived. |
| 210 | 4/11/2013 | Heidi Davidson | Aaron Curtiss; Steve Zipperstein* | | Re: ACP: BBRY Response Release DRAFT 1 | Attorney-Client Privilege | Email chain among in-house counsel (Steve Zipperstein*) and BlackBerry employee and consultant working at the direction of in-house counsel regarding BlackBerry's response to the Detwiler Report. | NP | In alternative, privilege waived. |

| Number | DocDate | Author | Recipient | CC | Subject | PrivilegeAsserted | GeneralDescription | RULING | NOTES |
|---|---|---|---|---|---|---|---|---|---|
| 211 | 4/11/2013 | Heidi Davidson | Aaron Curtiss; Thorsten Heins; Steve Zipperstein*; Frank Boulbin; Kristian Tear; John Powell; Edel Ebbs; Brian Bidulka; Paul Carpino | | Press Release Update | Attorney-Client Privilege | Email from BlackBerry employee to in-house counsel (Steve Zipperstein*) and BlackBerry employees and consultant working at the direction of in-house counsel regarding BlackBerry's response to the Detwiler Report. | NP | In alternative, privilege waived. |
| 212 | 4/11/2013 | Aaron Curtiss | Heidi Davidson; Steve Zipperstein* | | Re: ACP: BBRY Response Release DRAFT 1 | Attorney-Client Privilege | Email chain among in-house counsel (Steve Zipperstein*) and BlackBerry employee and consultant working at the direction of in-house counsel regarding BlackBerry's response to the Detwiler Report. | NP | In alternative, privilege waived. |
| 244 | 4/12/2013 | Heidi Davidson | Aaron Curtiss; Steve Zipperstein* | | Re: ACP: BBRY Response Release DRAFT 1 | Attorney-Client Privilege | Email chain among in-house counsel (Steve Zipperstein*) and BlackBerry employee and consultant working at the direction of in-house counsel regarding BlackBerry's response to the Detwiler Report. | NP | In alternative, privilege waived. |
| 245 | 4/12/2013 | Roger Martin | Richard J. Lynch; Steve Zipperstein*; Barbara Stymiest; Mike Lazaridis; David Kerr; John Wetmore; Claudia Kotchka; John Richardson; Tim Dattels; Bert Nordberg; Prem Watsa | Thorsten Heins | Re: Trading Activity -- Privileged and Confidential | Attorney-Client Privilege | Email chain among in-house counsel (Steve Zipperstein*) and Board of Directors regarding legal options for BlackBerry's response to the Detwiler Report. | AC | |
| 246 | 4/12/2013 | Edel Ebbs | Heidi Davidson; Aaron Curtiss; Thorsten Heins; Steve Zipperstein*; Frank Boulben; Kristian Tear; John Powell; Brian Bidulka; Paul Carpino | | Re: Press Release Update | Attorney-Client Privilege | Email chain among in-house counsel (Steve Zipperstein*) and BlackBerry employees and consultant working at the direction of in-house counsel regarding BlackBerry's response to the Detwiler Report. | NP | In alternative, privilege waived. |

| Number | DocDate | Author | Recipient | CC | Subject | PrivilegeAsserted | GeneralDescription | RULING | NOTES |
|---|---|---|---|---|---|---|---|---|---|
| 247 | 4/12/2013 | Heidi Davidson | Edel Ebbs; Aaron Curtiss; Thorsten Heins; Steve Zipperstein*; Frank Boulben; Kristian Tear; John Powell; Brian Bidulka; Paul Carpino | | Re: Press Release Update | Attorney-Client Privilege | Email chain among in-house counsel (Steve Zipperstein*) and BlackBerry employees and consultant working at the direction of in-house counsel regarding BlackBerry's response to the Detwiler Report. | NP | In alternative, privilege waived. |
| 248 | 4/12/2013 | Kristian Tear | Heidi Davidson; Aaron Curtiss; Thorsten Heins; Steve Zipperstein*; Frank Boulben; Kristian Tear; John Powell; Brian Bidulka; Paul Carpino | | Re: Press Release Update | Attorney-Client Privilege | Email chain among in-house counsel (Steve Zipperstein*) and BlackBerry employees and consultant working at the direction of in-house counsel regarding BlackBerry's response to the Detwiler Report. | NP | In alternative, privilege waived. |
| 249 | 4/12/2013 | Edel Ebbs | Heidi Davidson; Aaron Curtiss; Thorsten Heins; Steve Zipperstein*; Frank Boulben; Kristian Tear; John Powell; Brian Bidulka; Paul Carpino | | Re: Press Release Update | Attorney-Client Privilege | Email chain among in-house counsel (Steve Zipperstein*) and BlackBerry employees and consultant working at the direction of in-house counsel regarding BlackBerry's response to the Detwiler Report. | NP | In alternative, privilege waived. |
| 250 | 4/12/2013 | Heidi Davidson | Edel Ebbs; Aaron Curtiss; Thorsten Heins; Steve Zipperstein*; Frank Boulben; Kristian Tear; John Powell; Brian Bidulka; Paul Carpino | | Re: Press Release Update | Attorney-Client Privilege | Email chain among in-house counsel (Steve Zipperstein*) and BlackBerry employees and consultant working at the direction of in-house counsel regarding BlackBerry's response to the Detwiler Report. | NP | In alternative, privilege waived. |
| 251 | 4/12/2013 | Heidi Davidson | Edel Ebbs; Aaron Curtiss; Thorsten Heins; Steve Zipperstein*; Frank Boulben; Kristian Tear; John Powell; Brian Bidulka; Paul Carpino | | Re: Press Release Update | Attorney-Client Privilege | Email chain among in-house counsel (Steve Zipperstein*) and BlackBerry employees and consultant working at the direction of in-house counsel regarding BlackBerry's response to the Detwiler Report. | NP | In alternative, privilege waived. |

| Number | DocDate | Author | Recipient | CC | Subject | PrivilegeAsserted | GeneralDescription | RULING | NOTES |
|---|---|---|---|---|---|---|---|---|---|
| 252 | 4/12/2013 | John Powell | Heidi Davidson; Aaron Curtiss; Thorsten Heins; Steve Zipperstein*; Frank Boulben; Kristian Tear; Edel Ebbs; Brian Bidulka; Paul Carpino | | RE: Press Release Update | Attorney-Client Privilege | Email chain among in-house counsel (Steve Zipperstein*) and BlackBerry employees and consultant working at the direction of in-house counsel regarding BlackBerry's response to the Detwiler Report. | NP | In alternative, privilege waived. |
| 253 | 4/12/2013 | Heidi Davidson | John Powell; Aaron Curtiss; Thorsten Heins; Steve Zipperstein*; Frank Boulben; Kristian Tear; Edel Ebbs; Brian Bidulka; Paul Carpino | | RE: Press Release Update | Attorney-Client Privilege | Email chain among in-house counsel (Steve Zipperstein*) and BlackBerry employees and consultant working at the direction of in-house counsel regarding BlackBerry's response to the Detwiler Report. | NP | In alternative, privilege waived. |
| 254 | 4/12/2013 | Steve Zipperstein* | John Powell; Heidi Davidson; Aaron Curtiss; Thorsten Heins; Frank Boulben; Kristian Tear; Edel Ebbs; Brian Bidulka; Paul Carpino | | RE: Press Release Update | Attorney-Client Privilege | Email chain among in-house counsel (Steve Zipperstein*) and BlackBerry employees and consultant working at the direction of in-house counsel regarding BlackBerry's response to the Detwiler Report. | NP | In alternative, privilege waived. |
| 255 | 4/12/2013 | Heidi Davidson | John Powell; Aaron Curtiss; Thorsten Heins; Steve Zipperstein*; Frank Boulben; Kristian Tear; Edel Ebbs; Brian Bidulka; Paul Carpino | | RE: Press Release Update | Attorney-Client Privilege | Email chain among in-house counsel (Steve Zipperstein*) and BlackBerry employees and consultant working at the direction of in-house counsel regarding BlackBerry's response to the Detwiler Report. | NP | In alternative, privilege waived. |
| 256 | 4/12/2013 | Heidi Davidson | Steve Zipperstein*; Brian Bidulka; Frank Boulben; Edel Ebbs; Paul Carpino; Thorsten Heins; Kristian Tear; John Powell | Aaron Curtiss | Attorney client privilege - Return rate v2.docx | Attorney-Client Privilege | Email between in-house counsel (Steve Zipperstein*) and BlackBerry employees and consultant working at the direction of in-house counsel regarding BlackBerry's response to the Detwiler Report. | AC | Privilege waived |
| 257 | 4/12/2013 | Heidi Davidson | Heidi Davidson; Brian Bidulka; Frank Boulben; Edel Ebbs; Paul Carpino; Thorsten Heins; Kristian Tear; John Powell | | | Attorney-Client Privilege; Work Product | Draft press release prepared by in-house counsel (Steve Zipperstein* and Phil Kurtz*), outside counsel, and BlackBerry employees and consultant working at the direction of in-house counsel regarding the Detwiler Report, and in anticipation of potential legal proceedings involving the Detwiler Report. | AC/WP | Privilege waived |

| Number | DocDate | Author | Recipient | CC | Subject | PrivilegeAsserted | GeneralDescription | RULING | NOTES |
|---|---|---|---|---|---|---|---|---|---|
| 258 | 4/12/2013 | Steve Zipperstein* | Heidi Davidson; Brian Bidulka; Frank Boulben; Edel Ebbs; Paul Carpino; Thorsten Heins; Kristian Tear; John Powell | Aaron Curtiss | RE: Attorney client privilege - Return rate v2.docx | Attorney-Client Privilege | Email chain among in-house counsel (Steve Zipperstein*) and BlackBerry employees and consultant working at the direction of in-house counsel regarding BlackBerry's response to the Detwiler Report. | AC | Privilege waived |
| 261 | 4/12/2013 | Thorsten Heins | Thorsten Heins; Steve Zipperstein*; Brian Bidulka; Frank Boulben; Edel Ebbs; Paul Carpino; Kristian Tear; John Powell | Aaron Curtiss | Re: Attorney client privilege - Return rate v2.docx | Attorney-Client Privilege | Email chain among in-house counsel (Steve Zipperstein*) and BlackBerry employees and consultant working at the direction of in-house counsel regarding BlackBerry's response to the Detwiler Report. | NP | In alternative, privilege waived. |
| 262 | 4/12/2013 | Heidi Davidson | Thorsten Heins; Steve Zipperstein*; Brian Bidulka; Frank Boulben; Edel Ebbs; Paul Carpino; Kristian Tear; John Powell | Aaron Curtiss | RE: Attorney client privilege - Return rate v2.docx | Attorney-Client Privilege | Email chain among in-house counsel (Steve Zipperstein*) and BlackBerry employees and consultant working at the direction of in-house counsel regarding BlackBerry's response to the Detwiler Report. | NP | In alternative, privilege waived. |
| 263 | 4/12/2013 | Steve Zipperstein* | Heidi Davidson; Thorsten Heins; Brian Bidulka; Frank Boulben; Edel Ebbs; Paul Carpino; Kristian Tear; John Powell | Aaron Curtiss | RE: Attorney client privilege - Return rate v2.docx | Attorney-Client Privilege | Email chain among in-house counsel (Steve Zipperstein*) and BlackBerry employees and consultant working at the direction of in-house counsel regarding BlackBerry's response to the Detwiler Report. | AC | Privilege waived |
| 264 | 4/12/2013 | Paul Carpino | Heidi Davidson; Thorsten Heins; Steve Zipperstein*; Brian Bidulka; Frank Boulben; Edel Ebbs; Kristian Tear; John Powell | Aaron Curtiss | Re: Attorney client privilege - Return rate v2.docx | Attorney-Client Privilege | Email chain among in-house counsel (Steve Zipperstein*) and BlackBerry employees and consultant working at the direction of in-house counsel regarding BlackBerry's response to the Detwiler Report. | NP | In alternative, privilege waived. |
| 265 | 4/12/2013 | Edel Ebbs | Paul Carpino; Heidi Davidson; Thorsten Heins; Steve Zipperstein*; Brian Bidulka; Frank Boulben; Kristian Tear; John Powell | Aaron Curtiss | Re: Attorney client privilege - Return rate v2.docx | Attorney-Client Privilege | Email chain among in-house counsel (Steve Zipperstein*) and BlackBerry employees and consultant working at the direction of in-house counsel regarding BlackBerry's response to the Detwiler Report. | NP | In alternative, privilege waived. |
| 268 | 4/12/2013 | Heidi Davidson | Steve Zipperstein*; Thorsten Heins; Brian Bidulka; Frank Boulben; Edel Ebbs; Paul Carpino; Kristian Tear; John Powell | Aaron Curtiss | RE: Attorney client privilege - Return rate v2.docx | Attorney-Client Privilege | Email chain among in-house counsel (Steve Zipperstein*) and BlackBerry employees and consultant working at the direction of in-house counsel regarding BlackBerry's response to the Detwiler Report. | NP | In alternative, privilege waived. |
| 283 | 4/12/2013 | Steve Zipperstein* | Thorsten Heins; Paul Carpino; Heidi Davidson; Aaron Curtiss | Brian Bidulka; Edel Ebbs | FW: Next steps - Privileged and Confidential | Attorney-Client Privilege | Email from in-house counsel (Steve Zipperstein*) to BlackBerry employees regarding Detwiler Fenton's regulatory violations. | AC | Privilege waived |

| Number | DocDate | Author | Recipient | CC | Subject | PrivilegeAsserted | GeneralDescription | RULING | NOTES |
|---|---|---|---|---|---|---|---|---|---|
| 289 | 4/12/2013 | John Powell | Heidi Davidson | Jordan Vaeth* | RE: Detwiler Statement | Attorney-Client Privilege | Email chain among in-house counsel (Steve Zipperstein* and Jordan Vaeth*) and BlackBerry employees regarding Detwiler's April 12 public statement. | NP | In alternative, privilege waived. |
| 298 | 4/12/2013 | Kristian Tear | John Powell | | Re: Privileged and Confidential: Z10 returns | Attorney-Client Privilege | Email chain among in-house counsel (Steve Zipperstein*, Mary Huser*, and Jordan Vaeth*) and BlackBerry employees discussing work performed at the direction of in-house counsel to assist counsel regarding legal options for BlackBerry's response to the Detwiler Report. | NP | In alternative, privilege waived. |
| 299 | 4/12/2013 | John Kinney | John Powell; Nigel Vanderlinden; Ronald Chang | Lauren Doherty; John Rundle | RE: Discuss AT&T Supplement Agreement for Z10 | Attorney-Client Privilege | Email chain among in-house counsel and BlackBerry employees regarding draft agreement with carrier regarding Z10. | NP | |
| 300 | 4/3/2013 | Sutphin, Bill | Sarah Tatsis; John Powell | | | Attorney-Client Privilege | Draft agreement with carrier regarding Z10 to be considered by in-house counsel and BlackBerry employees. | AC | |
| 302 | 4/12/2013 | John Powell | Sarah Tatsis | | Re: Privileged and Confidential: Z10 returns | Attorney-Client Privilege | Email chain among in-house counsel (Jordan Vaeth*) and BlackBerry employees discussing work performed at the direction of in-house counsel regarding legal options for BlackBerry's response to the Detwiler Report. | NP | In alternative, privilege waived. |
| 303 | 4/12/2013 | John Powell | Sarah Tatsis | Jordan Vaeth* | Fw: Privileged and Confidential: Z10 returns | Attorney-Client Privilege | Email chain among in-house counsel (Steve Zipperstein* and Jordan Vaeth*) and BlackBerry employees discussing work performed at the direction of in-house counsel to assist counsel regarding legal options for BlackBerry's response to the Detwiler Report. | NP | In alternative, privilege waived. |
| 306 | 4/12/2013 | Adrienne Lee | Sarah Tatsis | | RE: List of names | Attorney-Client Privilege | Email chain among BlackBerry employees discussing work performed at the direction of in-house counsel to assist in-house counsel with document and data preservation regarding BlackBerry's response to the Detwiler Report. | AC | |
| 307 | 4/12/2013 | Anders Stjarne | Sarah Tatsis | | RE: Privileged and Confidential | Attorney-Client Privilege | Email chain among BlackBerry employees discussing work performed at the direction of in-house counsel for BlackBerry's response to the Detwiler Report. | NP | In alternative, privilege waived. |

| Number | DocDate | Author | Recipient | CC | Subject | PrivilegeAsserted | GeneralDescription | RULING | NOTES |
|---|---|---|---|---|---|---|---|---|---|
| 308 | 4/12/2013 | Eric Mittig | Sarah Tatsis | | Re: Privileged and Confidential | Attorney-Client Privilege | Email chain among BlackBerry employees discussing work performed at the direction of in-house counsel for BlackBerry's response to the Detwiler Report. | NP | In alternative, privilege waived. |
| 309 | 4/12/2013 | Anders Stjarne | Sarah Tatsis | | RE: Privileged and Confidential | Attorney-Client Privilege | Email chain among BlackBerry employees discussing work performed at the direction of in-house counsel for BlackBerry's response to the Detwiler Report. | NP | In alternative, privilege waived. |
| 310 | 4/12/2013 | Sarah Tatsis | Anders Stjarne | | RE: Privileged and Confidential | Attorney-Client Privilege | Email chain among BlackBerry employees discussing work performed at the direction of in-house counsel for BlackBerry's response to the Detwiler Report. | NP | In alternative, privilege waived. |
| 311 | 4/12/2013 | Sarah Tatsis | Sarah Tatsis | | RE: Privileged and Confidential | Attorney-Client Privilege | Email from BlackBerry employee discussing work performed at the direction of in-house counsel for BlackBerry's response to the Detwiler Report. | NP | In alternative, privilege waived. |
| 313 | 4/12/2013 | Sarah Tatsis | Anders Stjarne | | Privileged and Confidential | Attorney-Client Privilege | Email between BlackBerry employees discussing work performed at the direction of in-house counsel for BlackBerry's response to the Detwiler Report. | AC | |
| 314 | 4/12/2013 | Sarah Tatsis | Eric Mittig | | Privileged and Confidential | Attorney-Client Privilege | Email between BlackBerry employees discussing work performed at the direction of in-house counsel for BlackBerry's response to the Detwiler Report. | NP | In alternative, privilege waived. |
| 315 | 4/12/2013 | Heidi Davidson | Adam Emery | | FW: CTV News Story | Attorney-Client Privilege | Email chain among in-house counsel (Steve Zipperstein*, Mary Huser*, and Phil Kurtz*), outside counsel (Barry Sookman), and BlackBerry employees discussing BlackBerry's response to the Detwiler Report. | NP | |
| 316 | 4/12/2013 | Heidi Davidson | Adam Emery | | Fw: CTV News Story | Attorney-Client Privilege | Email chain among in-house counsel (Steve Zipperstein*, Mary Huser*, and Phil Kurtz*), outside counsel (Barry Sookman), and BlackBerry employees discussing BlackBerry's response to the Detwiler Report. | NP | |
| 317 | 4/12/2013 | Adrienne Lee | Sarah Tatsis | | List of names | Attorney-Client Privilege | Email chain among BlackBerry employees discussing work performed at the direction of in-house counsel to assist in-house counsel with document and data preservation regarding BlackBerry's response to the Detwiler Report. | AC | |

| Number | DocDate | Author | Recipient | CC | Subject | PrivilegeAsserted | GeneralDescription | RULING | NOTES |
|---|---|---|---|---|---|---|---|---|---|
| 318 | 4/12/2013 | Sarah Tatsis | Adrienne Lee | | Re: List of names | Attorney-Client Privilege | Email chain among BlackBerry employees discussing work performed at the direction of in-house counsel to assist in-house counsel with document and data preservation regarding BlackBerry's response to the Detwiler Report. | AC | |
| 325 | 4/12/2013 | Anders Stjarne | Sarah Tatsis | | RE: Privileged and Confidential | Attorney-Client Privilege | Email chain among in-house counsel (Jordan Vaeth*) and BlackBerry employees discussing work performed at the direction of in-house counsel for BlackBerry's response to the Detwiler Report. | NP | In alternative, privilege waived. |
| 326 | 4/13/2013 | John Powell | Sebastien Marineau; Andrew Bocking; Sarah Tatsis | Jordan Vaeth* | Privileged and Confidential - Device 'slowing' | Attorney-Client Privilege | Email chain among in-house counsel (Jordan Vaeth*) and BlackBerry employees discussing work performed at the direction of in-house counsel for BlackBerry's response to the Detwiler Report. | AC | Waived in part; Produce in redacted format |
| 327 | 4/13/2013 | Sebastien Marineau | John Powell; Andrew Bocking; Sarah Tatsis | Jordan Vaeth* | Re: Privileged and Confidential - Device 'slowing' | Attorney-Client Privilege | Email chain among in-house counsel (Jordan Vaeth*) and BlackBerry employees discussing work performed at the direction of in-house counsel for BlackBerry's response to the Detwiler Report. | AC | Waived in part; Produce in redacted format |
| 330 | 4/13/2013 | Sarah Tatsis | Andrew Bocking; Sebastien Marineau; John Powell | Jordan Vaeth* | Re: Privileged and Confidential - Device 'slowing' | Attorney-Client Privilege | Email chain among in-house counsel (Jordan Vaeth*) and BlackBerry employees discussing work performed at the direction of in-house counsel for BlackBerry's response to the Detwiler Report. | AC | Waived in part; Produce in redacted format |

| Number | DocDate | Author | Recipient | CC | Subject | PrivilegeAsserted | GeneralDescription | RULING | NOTES |
|---|---|---|---|---|---|---|---|---|---|
| 338 | 4/15/2013 | LegalHold | John Powell | | IMMEDIATE ACTION REQUIRED: Detwiler Fenton - LEGAL HOLD NOTICE - Privileged & Confidential | Attorney-Client Privilege; Work Product | Email from LegalHold to BlackBerry employee regarding document and data preservation in connection with BlackBerry's response to the Detwiler Report, and in anticipation of potential legal proceedings involving the Detwiler Report. | AC/WP | |
| 339 | 4/15/2013 | John Powell | James Novak; Andrew Bocking; Sebastien Marineau; Richard Piasentin; Rick Costanzo | Jordan Vaeth*; Sarah Tatsis | Privileged and confidential : For discussion with Marni or to edit/send | Attorney-Client Privilege | Email chain among in-house counsel (Jordan Vaeth*) and BlackBerry employees discussing work performed at the direction of in-house counsel for BlackBerry's response to the Detwiler Report. | AC | Waived in part; Produce in redacted format |
| 341 | 4/15/2013 | John Powell | Kristian Tear | Sarah Tatsis; Jordan Vaeth*; Alice Couto | Privileged and confidential : For discussion with Marni or to edit/send | Attorney-Client Privilege | Email between in-house counsel (Jordan Vaeth*) and BlackBerry employees discussing points for discussion with Verizon's COO. | AC | Waived in part; Produce in redacted format |
| 345 | 4/15/2013 | Sarah Tatsis | Andrew Bocking; Sebastien Marineau; John Powell | Jordan Vaeth* | RE: Privileged and Confidential - Device 'slowing' | Attorney-Client Privilege | Email chain among in-house counsel (Jordan Vaeth*) and BlackBerry employees discussing work performed at the direction of in-house counsel regarding BlackBerry's response to the Detwiler Report. | AC | Waived in part; Produce in redacted format |
| 352 | 4/16/2013 | John Kinney | Sarah Tatsis; John Powell | Jordan Vaeth* | FINAL FINAL: Privileged and Confidential | Attorney-Client Privilege; Work Product | Email between in-house counsel (Jordan Vaeth*) and BlackBerry employees regarding work performed at the direction of in-house counsel in response to the Detwiler Report, and in anticipation of potential legal proceedings involving the Detwiler Report. | AC/WP | |
| 353 | 4/16/2013 | Sarah Tatsis | John Powell | John Kinney; Jordan Vaeth* | Privileged and Confidential - Draft | Attorney-Client Privilege; Work Product | Email between in-house counsel (Jordan Vaeth*) and BlackBerry employees regarding communication to carrier regarding work performed at the direction of in-house counsel in response to the Detwiler Report, and in anticipation of potential legal proceedings involving the Detwiler Report. | AC/WP | |
| 354 | 4/16/2013 | John Powell | Sarah Tatsis; John Kinney | Adrienne Lee; Michelle Smith | Draft | Attorney-Client Privilege; Work Product | Email between BlackBerry employees reflecting work done at the direction of counsel discussing points for discussion with Verizon, and in anticipation of potential legal proceedings involving the Detwiler Report. | AC/WP | |

| Number | DocDate | Author | Recipient | CC | Subject | PrivilegeAsserted | GeneralDescription | RULING | NOTES |
|---|---|---|---|---|---|---|---|---|---|
| 355 | 4/16/2013 | John Powell | Sarah Tatsis; John Kinney | Adrienne Lee; Michelle Smith; Jordan Vaeth* | Privileged and Confidential - Draft | Attorney-Client Privilege; Work Product | Email between in-house counsel (Jordan Vaeth*) and BlackBerry employees discussing points for discussion with Verizon, and in anticipation of potential legal proceedings involving the Detwiler Report. | AC/WP | |
| 356 | 4/16/2013 | Sarah Tatsis | Anders Stjarne; Eric Mittig; John Kinney | | Returns from Canada | Attorney-Client Privilege | Email between BlackBerry employees discussing work performed at the direction of in-house counsel to assist in-house counsel for BlackBerry's response to the Detwiler Report. | AC | Waived; Produce in redacted format |
| 357 | 4/16/2013 | Steven Simkevitz | Karuna Samat; John Kinney; Sarah Tatsis; Anders Stjarne; Eric Mittig | | Re: Returns from Canada | Attorney-Client Privilege | Email chain between BlackBerry employees discussing work performed at the direction of in-house counsel to assist in-house counsel for BlackBerry's response to the Detwiler Report. | AC | Waived; Produce in redacted format |
| 358 | 4/16/2013 | Karuna Samat | John Kinney; Sarah Tatsis; Anders Stjarne; Eric Mittig; Steven Simkevitz | | Re: Returns from Canada | Attorney-Client Privilege | Email chain between BlackBerry employees discussing work performed at the direction of in-house counsel to assist in-house counsel for BlackBerry's response to the Detwiler Report. | AC | Waived; Produce in redacted format |
| 359 | 4/16/2013 | John Kinney | Sarah Tatsis; Anders Stjarne; Eric Mittig; Steven Simkevitz; Karuna Samat | | Re: Returns from Canada | Attorney-Client Privilege | Email chain between BlackBerry employees discussing work performed at the direction of in-house counsel to assist in-house counsel for BlackBerry's response to the Detwiler Report. | AC | Waived; Produce in redacted format |
| 360 | 4/16/2013 | Eric Mittig | Steven Simkevitz; Karuna Samat; John Kinney; Sarah Tatsis; Anders Stjarne | | RE: Returns from Canada | Attorney-Client Privilege | Email chain between BlackBerry employees discussing work performed at the direction of in-house counsel to assist in-house counsel for BlackBerry's response to the Detwiler Report. | AC | Waived; Produce in redacted format |
| 365 | 4/16/2013 | Sarah Tatsis | John Kinney | Jordan Vaeth*; Adrienne Lee; Michelle Smith; John Powell | RE: Privileged and Confidential - Draft | Attorney-Client Privilege; Work Product | Email chain among in-house counsel (Jordan Vaeth*) and BlackBerry employees regarding draft communication to carrier and work performed at the direction of in-house counsel in response to the Detwiler Report, and in anticipation of potential legal proceedings involving the Detwiler Report. | AC/ WP | Waived in part; Produce in redacted format |

| Number | DocDate | Author | Recipient | CC | Subject | PrivilegeAsserted | GeneralDescription | RULING | NOTES |
|---|---|---|---|---|---|---|---|---|---|
| 366 | 4/16/2013 | John Kinney | Sarah Tatsis | Jordan Vaeth*; Adrienne Lee; Michelle Smith; John Powell | RE: Privileged and Confidential - Draft | Attorney-Client Privilege; Work Product | Email chain among in-house counsel (Jordan Vaeth*) and BlackBerry employees regarding draft communication to carrier and work performed at the direction of in-house counsel in response to the Detwiler Report, and in anticipation of potential legal proceedings involving the Detwiler Report. | AC/WP | Waived in part; produce in redacted format |
| 367 | 4/16/2013 | John Powell | John Kinney; Sarah Tatsis | Jordan Vaeth*; Adrienne Lee; Michelle Smith | RE: Privileged and Confidential - Draft | Attorney-Client Privilege; Work Product | Email chain among in-house counsel (Jordan Vaeth*) and BlackBerry employees regarding draft communication to carrier and work performed at the direction of in-house counsel in response to the Detwiler Report, and in anticipation of potential legal proceedings involving the Detwiler Report. | AC/WP | Waived in part; produce in redacted format |
| 368 | 4/16/2013 | John Kinney | John Powell; Sarah Tatsis | Jordan Vaeth*; Adrienne Lee; Michelle Smith | RE: Privileged and Confidential - Draft | Attorney-Client Privilege; Work Product | Email chain among in-house counsel (Jordan Vaeth*) and BlackBerry employees regarding draft communication to carrier and work performed at the direction of in-house counsel in response to the Detwiler Report, and in anticipation of potential legal proceedings involving the Detwiler Report. | AC/WP | Waived in part; produce in redacted format |
| 369 | 4/16/2013 | Sarah Tatsis | John Powell | Jordan Vaeth* | RE: Privileged and Confidential - Draft | Attorney-Client Privilege; Work Product | Email chain among in-house counsel (Jordan Vaeth*) and BlackBerry employees regarding draft communication to carrier and work performed at the direction of in-house counsel in response to the Detwiler Report, and in anticipation of potential legal proceedings involving the Detwiler Report. | AC/WP | Waived in part; produce in redacted format |
| 370 | 4/16/2013 | John Kinney | John Powell; Sarah Tatsis | Jordan Vaeth*; Adrienne Lee; Michelle Smith | RE: Privileged and Confidential - Draft | Attorney-Client Privilege; Work Product | Email chain among in-house counsel (Jordan Vaeth*) and BlackBerry employees regarding draft communication to carrier and work performed at the direction of in-house counsel in response to the Detwiler Report, and in anticipation of potential legal proceedings involving the Detwiler Report. | AC/WP | Waived in part; produce in redacted format |

| Number | DocDate | Author | Recipient | CC | Subject | PrivilegeAsserted | GeneralDescription | RULING | NOTES |
|---|---|---|---|---|---|---|---|---|---|
| 371 | 4/16/2013 | Sarah Tatsis | John Powell; John Kinney | Jordan Vaeth* | RE: Privileged and Confidential - Draft | Attorney-Client Privilege; Work Product | Email chain among in-house counsel (Jordan Vaeth*) and BlackBerry employees regarding draft communication to carrier and work performed at the direction of in-house counsel in response to the Detwiler Report, and in anticipation of potential legal proceedings involving the Detwiler Report. | AC/WP | Waived in part; produce in redacted format |
| 372 | 4/16/2013 | John Kinney | Sarah Tatsis | Jordan Vaeth*; Adrienne Lee; Michelle Smith; John Powell | RE: Privileged and Confidential - Draft | Attorney-Client Privilege; Work Product | Email between in-house counsel (Jordan Vaeth*) and BlackBerry employees regarding draft communication to carrier and work performed at the direction of in-house counsel in response to the Detwiler Report, and in anticipation of potential legal proceedings involving the Detwiler Report. | AC/WP | Waived in part; produce in redacted format |
| 373 | 4/16/2013 | John Powell | Sarah Tatsis; John Kinney | Jordan Vaeth* | Re: Privileged and Confidential - Draft | Attorney-Client Privilege; Work Product | Email chain among in-house counsel (Jordan Vaeth*) and BlackBerry employees regarding draft communication to carrier and work performed at the direction of in-house counsel in response to the Detwiler Report, and in anticipation of potential legal proceedings involving the Detwiler Report. | AC/WP | Waived in part; produce in redacted format |
| 374 | 4/16/2013 | John Powell | John Kinney; Sarah Tatsis | Jordan Vaeth*; Adrienne Lee; Michelle Smith | Re: Privileged and Confidential - Draft | Attorney-Client Privilege; Work Product | Email chain among in-house counsel (Jordan Vaeth*) and BlackBerry employees regarding draft communication to carrier and work performed at the direction of in-house counsel in response to the Detwiler Report, and in anticipation of potential legal proceedings involving the Detwiler Report. | AC/WP | Waived in part; produce in redacted format |

| Number | DocDate | Author | Recipient | CC | Subject | PrivilegeAsserted | GeneralDescription | RULING | NOTES |
|---|---|---|---|---|---|---|---|---|---|
| 375 | 4/16/2013 | John Kinney | John Powell; Sarah Tatsis | Jordan Vaeth*; Adrienne Lee; Michelle Smith | RE: Privileged and Confidential - Draft | Attorney-Client Privilege; Work Product | Email chain among in-house counsel (Jordan Vaeth*) and BlackBerry employees regarding draft communication to carrier and work performed at the direction of in-house counsel in response to the Detwiler Report, and in anticipation of potential legal proceedings involving the Detwiler Report. | AC/WP | Waived in part; produce in redacted format |
| 376 | 4/16/2013 | John Powell | John Kinney; Sarah Tatsis | Jordan Vaeth*; Adrienne Lee; Michelle Smith | Re: Privileged and Confidential - Draft | Attorney-Client Privilege; Work Product | Email chain among in-house counsel (Jordan Vaeth*) and BlackBerry employees regarding draft communication to carrier and work performed at the direction of in-house counsel in response to the Detwiler Report, and in anticipation of potential legal proceedings involving the Detwiler Report. | AC/WP | Waived in part; produce in redacted format |
| 377 | 4/16/2013 | John Kinney | Sarah Tatsis | | RE: Draft | Attorney-Client Privilege; Work Product | Email chain among BlackBerry employees regarding draft communication to carrier regarding work performed at the direction of in-house counsel in response to the Detwiler Report, and in anticipation of potential legal proceedings involving the Detwiler Report. | AC/WP | Waived in part; produce in redacted format |
| 390 | 4/25/2013 | John Powell | Kristian Tear | Sarah Tatsis; Jordan Vaeth* | Privileged and confidential -- Summary of Returns Information for Z10 | Attorney-Client Privilege | Email chain among in-house counsel (Jordan Vaeth*) and BlackBerry employees regarding work performed at the direction of in house counsel for BlackBerry's response to the Detwiler Report. | AC | Waived |
| 391 | 4/25/2013 | Kristian Tear | John Powell | Sarah Tatsis; Jordan Vaeth* | Re: Privileged and confidential - Summary of Returns Information for Z10 | Attorney-Client Privilege | Email chain among in-house counsel (Jordan Vaeth*) and BlackBerry employees regarding work performed at the direction of in house counsel for BlackBerry's response to the Detwiler Report. | AC | Waived |
| 392 | 4/25/2013 | Sarah Tatsis | John Powell | Jordan Vaeth*; Mike Heisz | Privileged and confidential -- Summary of Returns Information for Z10 | Attorney-Client Privilege | Email between in-house counsel (Jordan Vaeth*) and BlackBerry employees regarding work performed at the direction of in house counsel for BlackBerry's response to the Detwiler Report. | AC | Waived |

| Number | DocDate | Author | Recipient | CC | Subject | PrivilegeAsserted | GeneralDescription | RULING | NOTES |
|---|---|---|---|---|---|---|---|---|---|
| 412 | 5/7/2013 | John Powell | Sarah Tatsis; Mike Heisz | | FW: Urgent review required | Attorney-Client Privilege | Email chain among in house counsel (James Markson* and Stepheny Whitney) and BlackBerry employees providing legal advice regarding potential communications with customers. | AC in part | Emails at bottom of chain to be redacted; top email to be produced. |