UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARVIN PEARLSTEIN, et al.,

       Plaintiffs,

-against-

BLACKBERRY LIMITED, et al.,

       Defendants.

<u>OPINION AND ORDER REGARDING
BLACKBERRY'S CLAWBACK DOCUMENTS</u>

13-CV-07060 (CM)(KHP)

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

  In early March 2019, counsel for Defendant BlackBerry Limited ("BlackBerry") emailed Plaintiffs' counsel demanding return of approximately 288 documents pursuant to the clawback provision of the Court's Protective Order (ECF No. 134). (ECF No. 279) BlackBerry's counsel stated that they had inadvertently produced the documents and that the documents were subject to privilege. Plaintiffs objected to the clawback request on the grounds that the documents were not privileged and/or any privilege had been waived and because it intended to use some of the documents in questions with upcoming depositions. Because the parties did not have the benefit of this Court's March 19, 2019 decision regarding BlackBerry's privilege designations (ECF No. 282) when their dispute arose, I directed Blackberry to review the Court's decision and inform Plaintiffs which of the 288 documents it believed were still appropriated designated as privileged or protected and that it still wished to claw back. (ECF No. 283) I also directed BlackBerry to provide a privilege log for the narrower set of clawed back documents that pertained to the upcoming depositions.

  Consistent with this Court's Order, on March 22, 2019, BlackBerry informed Plaintiffs

1

that it was asserting privilege over—and clawing back—163 of the 288 documents. Only 40 of these documents pertained to the upcoming depositions, and BlackBerry provided Plaintiffs with a privilege log with respect to those 40 documents. Upon review of the privilege log, Plaintiffs elected to challenge BlackBerry's assertion of privilege as to 27 of the 40 documents. This Opinion addresses the parties dispute over these 27 documents.

## Nature of the Documents

The 27 documents fall into only a three categories and comprise variations of only 10 email chains. Nineteen of the communications are between and among BlackBerry employees, BlackBerry's outside counsel, and BlackBerry's financial advisor, J.P. Morgan.[1] Six of the emails are between BlackBerry employees and BlackBerry's in-house counsel and contain draft text of an email to Verizon.[2] Finally, two of the emails are between BlackBerry employees and BlackBerry's in-house counsel in which an in-house attorney requests a meeting to discuss communications the employees were having with Verizon.[3]

## Discussion

The Court set forth the legal standards for determining whether a document is protected by the attorney-client privilege and/or work product doctrine in its prior decision and does not repeat them here. (ECF No. 288)

As to the first category of documents, Plaintiffs argue they are not privileged and that any privilege was waived by virtue of BlackBerry's financial advisors at J.P.Morgan being

---

[1] These include Documents Bates Numbered 00080447, 00080488, 00080529, 00084203, 00087094, 00087122, 00087136, 00087158, 00454916, 00494749, 00737580, 00796099, 01229234, 01595326, 01663031, 01666932, 01673200, 01676457, 01677887.
[2] These include Documents Bates Numbered 01738025, 01738028, 01738031, 01738111, 01738116, 01738121.
[3] These are Documents Bates Numbered 01738130 and 01738127.

included in the communications.  They are wrong on both counts.  Seventeen of the documents are requests by BlackBerry employees for legal review of draft talking points for a September 2012 earnings call.  As discussed in this Court's prior Opinion, BlackBerry's communications to its counsel requesting comment on draft talking points are properly withheld as privileged.  *See* (ECF 288) *Pearlstein v. BlackBerry Ltd.*, 2019 WL 1259382, at *12 (S.D.N.Y. Mar. 19, 2019).  The Court also notes that these emails are not particularly relevant insofar as they pre-date the class period and launch of the Z10.

      Although this Court recognized in its earlier opinion that including a third party in an otherwise privileged communication generally results in a waiver of privilege, there are exceptions.  "An agent, such as a financial advisor, may have communications with an attorney that 'are covered by the attorney-client privilege if the financial advisor's role is limited to helping a lawyer give effective advice by explaining financial concepts to the lawyer.'"  *Urban Box Office Network, Inc. v. Interfase Managers, L.P.*, 01-cv-8854, 2006 WL 1004472, *3 (S.D.N.Y. April 17, 2006) (quoting *Export– Import Bank of the United States v. Asia Pulp & Paper Co., Ltd.,* 232 F.R.D. 103, 113 (S.D.N.Y.2005) (citing *United States v. Kovel,* 296 F.2d 918, 922 (2d Cir.1961)).  In contrast to this Court's holding that by including a public relations consultant on certain communications BlackBerry had waived privilege, including its financial advisors at JP Morgan did not waive privilege as to the communications at issue.  To start, there can be no dispute that JP Morgan was BlackBerry's agent.  Additionally, there can be no dispute that all communications between JP Morgan and BlackBerry and BlackBerry's counsel were intended to remain strictly confidential.  Indeed, JP Morgan and BlackBerry entered into a non-disclosure agreement, which this Court has examined, requiring JP Morgan to maintain confidentiality of

all information it received from BlackBerry. In contrast, the public relations consultant included in some of BlackBerry's communications with its in-house counsel was not retained via a formal agreement and had no contractual confidentiality obligations to BlackBerrry. Also unlike the Public relations consultant whose advice was not needed by the attorneys to provide effective legal advice, JP Morgan was included in the communications to provide BlackBerry's outside counsel with information about certain strategic and transactional matters about which it had expertise so that BlackBerry's counsel could give effective legal advice about what could be said publicly about those matters. It is clear from review of the documents *in camera* that it was legal, not business advice being requested or conveyed in the communications. In similar circumstances, courts have found including a financial advisor in the communication did not result in a waiver of privilege. *Urban Box Office Network, Inc.*, 2006 WL 1004472, at *4 (S.D.N.Y. Apr. 18, 2006) (communication with counsel that included plaintiff's financial advisor did not result in waiver because the communication provided the benefit of legal insight); *Calvin Klein Trademark Trust v. Wachner*, 124 F. Supp. 2d 207, 209 (S.D.N.Y. 2000)(no waiver when investment banking firm included in communications with counsel concerning plaintiff company's possible sale, finding that the financial advisor's role in helping to draft documents was necessary for responsible counsel to render legal advice); *General Electric Co. v. United States*, 2015 WL 5443479, at *1, *2 (D. Conn. Sept. 15, 2015) (holding that "draft board meeting minutes, presentations, and spreadsheets" were privileged and explaining that "information communicated to an attorney in connection with obtaining or rendering legal advice is properly subject to a claim of privilege, even if the information standing alone would not otherwise be subject to a claim of privilege.").

The two other communications that included JP Morgan were requests from JP Morgan to BlackBerry's outside counsel to review a July 2013 presentation concerning potential strategic alternatives that JP Morgan was preparing to present to BlackBerry's board of directors.  This communication, in which JP Morgan, as BlackBerry's agent, was seeking legal advice for BlackBerry, is clearly privileged.  *See Urban Box Office*, 2006 WL 1004472, at *7, *9.

The cases cited by Plaintiffs are distinguishable.  *See United States v. Ackert*, 169 F3d 136 (2d Cir. 1999) (case did not involve communications between and among a company, its outside counsel and financial advisor regarding legal advice; instead it involved a communication between a company's in-house lawyer and an investment banker who had made a pitch to the company so lawyer could gather information about the proposed deal and render legal advice to the company); *Export-Import Bank of the United States v. Asia Pulp & Paper Co., Ltd.,* 232 F.R.D. 103 (S.D.N.Y. 2005) (advice sought was financial, not legal).

As to the second category of documents, this Court already held that the draft email to Verizon to collect additional information about Z10 returns was protected.  2019 WL 1259382, at *17-18.  And, again, Plaintiffs have been provided with the final text of the email that was sent.

As to the third category of documents, the documents also are privileged in part.  BlackBerry has redacted a request from its in-house counsel who was advising the company on the collection of information in order to provide legal advice.  As this Court discussed in its prior opinion,  BlackBerry's in-house lawyers directed the search for information about sales and return rates for purposes of putting together a presentation to the SEC to urge it to investigate the Detwiler Fenton firm and evaluating whether to institute its own lawsuit against Detwiler

Fenton.  Counsel needed facts to advise the company on whether to actually move forward with a presentation to the SEC and whether to institute litigation.  The meeting requested by the company's in-house counsel was for the same purpose and is no less privileged than the draft communication counsel advised on.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs' motion to compel production of these 27 clawed back documents is DENIED.

**SO ORDERED.**

Dated:   March 29, 2019
         New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge