USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __08/02/2019__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARVIN PEARLSTEIN, et al.,

                                    Plaintiffs,

                -against-

BLACKBERRY LIMITED, et al.,

                                    Defendants.

**REPORT & RECOMMENDATION REGARDING
BLACKBERRY'S MOTION FOR PARTIAL
JUDGEMENT ON THE PLEADINGS**

**13-CV-07060 (CM)(KHP)**

**TO:  THE HONORABLE COLLEEN MCMAHON, CHIEF UNITED STATES DISTRICT JUDGE**

**FROM:  KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

         Defendants move for judgment on the pleadings against Individual Plaintiffs Yong M.

Cho and Batuhan Ulug.  (Doc. No. 245.)  The basis for the motion is that Cho and Ulug did not

appeal the Court's March 13, 2015 decision granting Defendants' motion to dismiss and its

November 13, 2015 decision denying Plaintiffs' motion for reconsideration and request for

leave to amend, rendering these decisions a final judgment against Cho and Ulug.  For the

following reasons, this Court respectfully recommends that Defendants' motion be GRANTED.

**BACKGROUND**

         This case is a putative class action alleging securities fraud brought pursuant to Section

10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5 of its implementing

regulations.  Plaintiffs contend that BlackBerry Limited ("BlackBerry") made various material

misrepresentations and omissions concerning the 2013 launch of its Z10 smartphone in the

United States and that the misrepresentations and omissions artificially inflated BlackBerry's

stock price for a period of time.  They identify four specific documents in which the alleged

misrepresentations and omissions were made:  BlackBerry's fiscal year 2013 financial results

(published on March 28, 2013); an April 12, 2013 press release refuting a negative market

research report published by Detwiler Fenton & Co., which stated that Z10 return rates were

exceptionally high; BlackBerry's financial results for the first quarter of fiscal year 2014

(published on June 28, 2013); and an August 12, 2013 press release announcing a potential sale

of the company, among other strategic alternatives being considered by BlackBerry's board.  All

of these documents were filed with the U.S. Securities and Exchange Commission via Forms 6-

K.[1]  The Court assumes familiarity with other background facts and does not repeat them here.

*See Pearlstein v. BlackBerry Ltd.*, No. 13-cv-7060 (CM), 2018 WL 1444401 (S.D.N.Y. Mar. 19,

2018); *Pearlstein v. BlackBerry Ltd*., 93 F. Supp. 3d 233 (S.D.N.Y. 2015), *aff'd in part and vacated*

*in part sub nom. Cox v. BlackBerry Ltd.,* 660 F. App'x 23 (2d Cir. 2016).

After the commencement of this litigation in October 2013, various plaintiffs, including

Todd Cox, Mary Dinzik, Yong M. Cho, and Batuhan Ulug (collectively, "Plaintiffs"), applied to

serve as lead plaintiffs for the putative class (Doc. Nos. 8, 9, 11).[2]  *See* Private Securities

Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a)(3) (governing the appointment of the

plaintiff "most capable of adequately representing the interests of class members" as a

representative of a putative class in a securities class action).  The Hon. Thomas P. Griesa

appointed Cox and Dinzik to serve as Lead Plaintiffs (hereinafter, "Lead Plaintiffs").  (Doc. No.

36.)  Cho and Ulug joined as parties in Lead Plaintiffs' First Amended Complaint ("FAC"), which

---

[1] SEC Form 6-K is utilized by a foreign private issuer to provide communications and material information that is made public in its home country.  The form promotes cross-border information sharing by allowing U.S. investors in foreign securities to have the same access to information that investors in the foreign company's home market receive.

[2] Cho and Ulug applied as part of the "BlackBerry Limited Investor Group," which included three other shareholders.  *See* Doc. No. 9.  Those other three shareholders did not join this action as individual plaintiffs.

was lodged against BlackBerry, Thorsten Heins (BlackBerry's former Chief Executive Officer), and Brian Bidulka (BlackBerry's former Chief Financial Officer) (collectively, "Original Defendants"). (Doc. No. 42.)  The Original Defendants moved to dismiss the First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).  Judge Griesa granted Original Defendants' motion on March 13, 2015.  *Pearlstein*, 93 F. Supp. 3d 233.  He found that Original Defendants' statements in the four documents were not actionable false or misleading representations, that Defendants' accounting practices were not false or misleading, and that Plaintiffs had failed to allege scienter.  *Id.* at 240-46.  Plaintiffs moved for reconsideration on March 31, 2015.  (Doc. No. 56.)  Although Cho and Ulug were not mentioned in the body of the motion for reconsideration, Cho and Ulug's counsel, David A. P. Brower, signed the motion and its attendant brief as "Counsel for Additional Plaintiffs Yong M. Cho and Batuhan Ulug and the Class." [3]  (*Id.*; Doc. No. 57.)  In Plaintiffs' reply brief, Plaintiffs requested leave to amend and attached a Proposed Second Amended Complaint as an exhibit.  (Doc. No. 59.)  Mr. Brower signed the reply brief in the same manner as he signed the moving brief.  (*Id.*)  Judge Griesa denied Plaintiffs' motion for reconsideration and further denied Plaintiffs' request for leave to amend.  (Doc. No. 62.)

Lead Plaintiffs filed a notice of appeal in December 2015.  (Doc. No. 63.)  The caption on the notice read, "Marvin Pearlstein, individually and on behalf of all others similarly situated." The body of the notice of appeal stated, in relevant part, "Lead Plaintiffs Todd Cox and Mary Dinzik hereby give notice, on behalf of themselves and all others similarly situated, that they appeal."  (*Id.*)  Additional Plaintiffs Cho and Ulug were not named, individually or as the

---

[3] Mr. Brower is also additional counsel for Lead Plaintiffs and the class.

"Additional Plaintiffs," in either the caption of the notice of appeal or in its body.  Mr. Brower signed the notice of appeal as "Additional Counsel for Lead Plaintiffs and the Class."  (*Id.*)

In August 2016, the United States Court of Appeals for the Second Circuit affirmed dismissal of the complaint but remanded on the issue of leave to amend in light of the United States Supreme Court's decision in *Omnicare, Inc. v Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318 (2015), which altered the standard for determining whether a statement of opinion is misleading for purposes of a securities fraud case.  *Cox v. Blackberry Ltd.*, 660 F. App'x 23.  Plaintiffs, including Cho and Ulug, then requested permission to amend the complaint.  (Doc. No. 68.)  Mr. Brower signed the motion to amend as "Counsel for Additional Plaintiffs Yong M. Cho, Batuhan Ulug, and the Class."  Judge Griesa granted Plaintiffs' motion to amend the complaint over Defendants' objection.  (Doc. No. 81.)  In September 2017, Lead Plaintiffs filed their Second Amended Complaint ("SAC"), which repleaded the securities fraud claims and added Steve Zipperstein (BlackBerry's former Chief Legal Office) as an Individual Defendant.  Cho and Ulug joined as Additional Plaintiffs.  (Doc. No. 84.)  Brower signed the SAC as "Counsel for Additional Plaintiffs Yong M. Cho and Batuhan Ulug and the Class."  Defendants then moved to dismiss the SAC on the grounds that (1) Judge Griesa's previous decision and the Second Circuit's affirmance of the dismissal were law of the case as to the FAC's claims, (2) the SAC failed to plead a material misstatement or omission, (3) the SAC failed to plead violations of Generally Accepted Accounting Principles, (4) the SAC failed to plead facts supporting an inference of scienter, and (5) the SAC failed to plead control person liability.  (Doc. No. 96.)  Defendants moved to dismiss the claims against Zipperstein for lack of timeliness and failure to state a claim under Rule 10b-5.  (Doc. No. 100.)  The Hon. Colleen McMahon denied

Defendants' motion to dismiss the SAC, finding that Plaintiffs had made a plausible showing that Defendants had made material misstatements and omissions based on the theory of liability accepted by *Omnicare* and new evidence going to scienter—information obtained from the criminal plea of an officer of a retailer who sold information about BlackBerry Z10 return rates to a market research firm that could plausibly support Plaintiffs' contention that Defendants' public statements regarding the Z10's sales and return rates, as well as its statements against the Detwiler report, were knowing misstatements.  (Doc. No. 115.)  *See BlackBerry*, 2018 WL 1444401, at *2-4.  Defendants then filed an answer to the SAC denying all material allegations of wrongdoing.  At a status conference, Defendants requested leave to amend their answer to add affirmative defenses that the claims asserted by Cho and Ulug were barred on the grounds of collateral estoppel, *res judicata*, and law of the case.  (*See* Doc. No. 164.). This Court granted that motion (Doc. No. 164) and later set a briefing schedule for the instant motion for partial judgment on the pleadings against Cho and Ulug.

## LEGAL STANDARDS

Dismissal under Federal Rule of Civil Procedure 12(c) "'is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings.'"  *Virgin Grp. Holdings Ltd. v. Energy Parametrics & Commc'ns, Inc.*, No. 10 Civ. 08752 (BSJ) (THK), 2011 WL 4448943, at *1 (S.D.N.Y. Sept. 26, 2011) (quoting *Sellers v. M.C. Floor Crofters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988)).  The standard for assessing a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion to dismiss the complaint for failure to state a claim upon which relief can be granted.  *Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004) (citations omitted).  Under Rule 12(c), "a movant is

entitled to judgment on the pleadings only if [it] establishes that no material issue of fact remains to be resolved and that [it] is entitled to judgment as a matter of law."  *Verragio, Ltd. v. AE Jewelers, Inc.*, No. 15 CIV. 6500 (CM), 2017 WL 4125368, at *4 (S.D.N.Y. Aug. 23, 2017) (alterations in original) (quoting *Mack v. Comm'r*, No. 12 Civ. 186, 2013 WL 5425730, at *6 (S.D.N.Y. Sept. 27, 2013)).

"On a 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'"  *L-7 Designs, Inc. v. Old Navy, LLC,* 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)).  The Court also may review any document incorporated by reference in a pleading.  *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004).  Finally, the Court may consider a document not specifically incorporated by reference but on which the complaint relies and which is integral to it.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *UMB Bank, Nat'l Ass'n v. Airplanes Ltd*., 260 F. Supp. 3d 384, 392–93 (S.D.N.Y. 2017)**.**

## ANALYSIS

The Court first addresses the notice of appeal filed on December 11, 2015 and whether Additional Plaintiffs Cho and Ulug appealed or may benefit from Lead Plaintiffs' partial success in their appeal.  The Court then addresses whether Cho and Ulug's claims against Defendant Zipperstein, who was first named as a Defendant in the SAC, are barred by *res judicata* or the law of the case doctrine.

**1.**	***Notices of Appeal and the Federal Rules of Appellate Procedure***

There is no dispute that Judge Griesa's dismissal of Plaintiffs' claims under Rule 12(b)(6) and denial of their right to amend their complaint constituted a judgment on the merits, resolving both the factual disputes as well as the parties' rights. *See Berrios v. New York City Hous. Auth.,* 564 F.3d 130, 134 (2d Cir. 2009) (citing *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 399 n.3 *abrogated in part on other grounds by Rivet v. Regions Bank of La., 5*22 U.S. 470 (1998)); *Basso v. Jacoby,* 166 F.3d 1199 (2d Cir. 1998) ("The dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits.'" (citation omitted)). This was the reason these decisions were appealable as of right under Rule 3 and the basis for Lead Plaintiffs' appeal. (*See* Doc. No. 55.) The parties dispute whether the judgments are final and binding as to Plaintiffs Cho and Ulug in light of Lead Plaintiffs' partial success on appeal.

Cho and Ulug argue that they were represented by Lead Plaintiffs in the appeal and did not need to be separately named in the notice of appeal to be deemed to have appealed. The Federal Rules of Appellate Procedure say otherwise. The appearance of a party-appellant in either the caption or body of a notice of appeal is required by Federal Rule of Appellate Procedure 3(a)(1) and a jurisdictional requirement for appellate review. *See Torres v. Oakland Scavenger Co.,* 487 U.S. 312 (1988); *United States v. Robinson*, 361 U.S. 220 (1960); *M.E.S., Inc. v. Snell,* 712 F.3d 666, 668 (2d Cir. 2013) (citing *Gusler v. City of Long Beach*, 700 F.3d 646, 648 (2d Cir.2012)).

Federal Rule of Appellate Procedure 3 (hereinafter, "Rule 3") governs how notices of appeal must be filed. It provides that "[a]n appeal permitted by law as of right from a district court to a court of appeals may be taken only by filing a notice of appeal." Fed. R. App. P.

3(a)(1).  Rule 3(c) sets forth the mandatory contents of a notice of appeal.  It states in pertinent part that the notice of appeal must "specify the party or parties taking the appeal by naming each one in the caption or body of the notice."  Fed. R. App. P. 3(c)(1).  Rule 3 contains an exception for class actions, however.  It states that "whether or not the class has been certified, the notice of appeal is sufficient if it names one person qualified to bring the appeal as a representative of the class."  Fed. R. App. P. 3(c)(4).

Prior to the 1993 amendment, Rule 3's requirements as to how an appellant must be identified in a notice of appeal were more stringent.  *Compare* Fed. R. App. P. 3 (1986) *with* Fed. R. App. P. 3 (1993).  This stringency led to a conflict in the federal Circuit Courts over whether a failure to file a notice of appeal in strict compliance with the specificity requirements of Rule 3(c) presented a jurisdictional bar to appeal.  The Supreme Court resolved the conflict in *Torres v. Oakland Scavenger Co.,* holding that a failure to comply with Rule 3(c)'s specificity requirements was indeed a jurisdictional bar to appeal.  487 U.S. 312 (1988).  The petitioner, Torres, was one of sixteen plaintiffs who intervened in an employment discrimination action to object to a settlement.  The intervenor complaint purported to be brought on behalf of the intervenors and a putative class of other similarly situated individuals.  The district court dismissed the intervenor complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  The court of appeals reversed and remanded the case for further proceedings.  The notice of appeal and the order from the court of appeals reversing and remanding omitted Torres' name.  On remand, defendant Oakland Scavenger moved for partial summary judgment on the ground that the prior judgment of dismissal was final as to Torres because he failed to appeal.  The district court granted Oakland Scavenger's motion, and the

court of appeals affirmed.  The Supreme Court also affirmed, finding that Torres had failed to

appeal according to Rule 3(c)'s strict specificity requirements and that this failure created a

jurisdictional bar to the appeal.  The Supreme Court rejected Torres' argument that he should

be deemed to have been included in the appeal by virtue of the named intervenor plaintiffs

adding "et al." to the caption of the notice of appeal.  The Supreme Court held that this was not

sufficiently specific to identify him as a plaintiff-appellant and give notice that he also intended

to appeal.  *Id.* at 317-318; *see* Fed. R. App. P. 3 advisory committee's notes to 1993

amendment.

*Torres* spawned substantial litigation "regarding whether a notice of appeal that

contains some indication of the appellants' identities but does not [expressly] name the

appellants is sufficiently specific."  Fed. R. App. P. 3 advisory committee's notes to 1993

amendment.  In response, Rule 3 was amended in 1993 to provide that "[i]n a class action,

whether or not the class has been certified, the notice of appeal is sufficient if it names one

person qualified to bring the appeal as a representative of the class."  Fed. R. App. P. 3(c)(3).

The Advisory Committee's Notes to the 1993 Amendment stated that "naming each member of

a class as an appellant may be extraordinarily burdensome or even impossible," as such, "the

amendment provides that in class actions, whether or not the class has been certified, it is

sufficient for the notice to name one person qualified to bring the appeal as a representative of

the class."  Fed. R. App. P. 3 advisory committee's notes to 1993 amendment; *see also Billino v.

Citibank, N.A.*, 123 F.3d 723, 726 (2d Cir. 1997) (noting that the 1993 amendment was intended

"to alleviate the inadvertent loss of the right to appeal . . . through the use of the name of a

representative plaintiff in a class action.").  The 1993 amendment did not change the

requirements of Rule 3(c)(1)(A) that the notice of appeal must "specify the party or parties taking the appeal by naming each one in the caption or body of the notice."  However, it added that "an attorney representing more than one party may describe those parties with such terms as 'all plaintiffs,' . . . [or] "the plaintiffs A, B, et al."  *Compare* Fed. R. App. P. 3 (1986) *with* Fed. R. App. P. 3 (1993).  It also delineated and added language to Rule 3(c)(4), which states "[a]n appeal must not be dismissed for informality of form or title of the notice of appeal*, or for failure to name a party whose intent to appeal is otherwise clear from the notice.*"  Fed. R. App. P. 3(c)(4) (emphasis added to new language).

Since *Torres* and the 1993 amendment to Rule 3, the Second Circuit has recognized that although the requirements of Rule 3 are to be construed liberally, the "complete *failure* to name the party taking the appeal[,] creates a fatal [jurisdictional] defect." *Billino*, 123 F.3d at 726 (emphasis in original); *accord BrandAid Mktg. Corp. v. Biss*, No. 08-0941-CV, 2009 WL 742077, at *1 (2d Cir. Mar. 23, 2009).  The test to determine whether an appellant has given sufficiently specific notice pursuant to Rule 3(c) is whether "it is otherwise *clear from the notice* that the party intended to appeal." Fed. R. App. P. 3 advisory committee's notes to 1993 amendment (emphasis added); *accord Billino*, 123 F.3d at 725-26.  Rule 3(c)(4) emphasizes that a notice is to be construed liberally, as it provides, "[a]n appeal must not be dismissed for informality of form or title of the notice of appeal, or for failure to name a party whose intent to appeal is otherwise clear from the notice."  Fed. R. App. P. 3(c)(4); *see In re Barnet,* 737 F.3d 238, 245 (2d Cir. 2013) ("Rule 3(c)(4) . . . codifies [the Supreme Court's] instruction to 'construe Rule 3 liberally' and to overlook technical variances" (quoting *Smith v. Barry*, 502 U.S. 244, 248–49 (1998))).

10

To the extent Cho and Ulug argue that their intent to appeal was clear because their counsel, Mr. Brower, signed the notice of appeal, their argument is unavailing.  Mr. Brower signed the notice of appeal as "Additional Counsel for Lead Plaintiffs and the Class."  He did not indicate that he was acting as counsel for Cho and Ulug in the appeal, and Cho and Ulug's names do not appear in the caption or the body of Lead Plaintiffs' notice of appeal.  Notably, in other filings, Mr. Brower has expressly indicated in his signature block that he was acting as counsel for the class and Cho and Ulug.  (*See* Doc. No. 49 ("Counsel for Additional Plaintiffs Yong M. Cho and Batuhan Ulug and the Class.").)

To the extent Cho and Ulug rely on Rule 3(c)(3) and Rule 3(c)(4)'a liberal construction mandate for the proposition that they did not need to be explicitly named in the notice of appeal because Lead Plaintiffs appealed on behalf of the putative class of which they are a part and from which they have not opted out, their argument is similarly unavailing.  The Second Circuit recognized in *Cohen v. UBS Fin. Serves., Inc.* that individual, non-lead plaintiffs are treated differently from unnamed putative class members for purposes of appeal.  *See* 799 F.3d 174, 177 n.3 (2d Cir. 2015).  *Cohen* was a class and collective action for alleged violations of the Fair Labor Standards Act ("FLSA") and California state law.  *Id.* at 175-77.  Cohen initiated the action in the Central District of California, but the case was transferred to the Southern District of New York.  *Id.* at 176.  (*Cohen v. UBS Fin. Servs., Inc.,* 12-cv-2147, Complaint, Doc. No. 1.) Other individuals, who also were employed in California, then opted into the action, and the complaint was amended to add them as additional named plaintiffs asserting both federal and state law claims on behalf of themselves individually and unnamed members of the putative class and collective.  (*Cohen v. UBS Fin. Servs., Inc.,* 12-cv-2147, Third Amended Complaint, Doc.

No. 59.)   Defendant UBS moved to compel arbitration on the basis that all of the named

plaintiffs had signed mandatory arbitration agreements that governed the claims.  The district

court granted UBS's motion to compel arbitration and stayed the action pending arbitration.

*Cohen v. UBS Fin. Servs., Inc.*, No. 12 CIV. 2147 BSJ JLC, 2012 WL 6041634, at *2-6 (S.D.N.Y. Dec.

4, 2012).  The parties agreed to dismiss the case with prejudice and stipulated that the plaintiffs

would not pursue arbitration.  This stipulation rendered the court's decision compelling

arbitration final for purposes of appeal, and Cohen then appealed the order compelling

arbitration.

Cohen's notice of appeal identified the appellants as "Eliot Cohen, et al." as "Plaintiffs"

in the caption and the body of the notice of appeal stated that the appeal was brought by "Eliot

Cohen, plaintiff in the above-captioned action . . . , on behalf of himself and all others similarly

situated." (*Cohen v. UBS Fin. Servs., Inc.,* 12-cv-2147, Notice of Appeal, Doc. No. 119.)   None of

the other individual named plaintiffs were named in the caption or the body of the notice of

appeal.  The Second Circuit affirmed the district court's decision to compel arbitration.  It also

stated in a footnote that "[w]e reject Cohen's assertion that the other *named* plaintiffs below

joined his appeal."  *Cohen*, 799 F.3d at 177 n.3 (emphasis added).  It went on to say that the

notice complied with Rule 3(c)(3)'s requirement that he was appealing on his own behalf and

on behalf of other unnamed putative class members, but that it was insufficient, even given

Rule 3(c)(4), to "clearly express any other *named* plaintiff's intent to join the appeal."  *Id*.

(emphasis in original).  In other words, the Court explicitly distinguished unnamed members of

a putative class and other *named* plaintiffs for purposes of determining who was included in the

notice of appeal, indicating that individual named plaintiffs may not rely on a class

12

representative to bring an appeal merely because they view themselves as members of the putative class and collective. Like in *Cohen*, the notice of appeal here indicated only that it was brought by Lead Plaintiffs and "all others similarly situated" without expressly identifying the other named Additional Plaintiffs Cho and Ulug. Further, the Court of Appeals named Lead Plaintiffs Cox and Diznik in the caption and body of its summary order remanding the case and did not otherwise mention Cho or Ulug. Thus, there is no basis to conclude that the Second Circuit viewed Cho and Ulug as being appellants or otherwise included in the appeal, particularly given its *Cohen* decision.[4]  660 F. App'x 23.

Cho and Ulug attempt to distinguish *Cohen* on its facts, arguing that it is inapposite because it is in an employment and arbitration case, rather than a securities action covered by the PSLRA. This argument does not persuade this Court. This case and *Cohen* both were brought as putative class actions with representative plaintiffs and other named plaintiffs. (*Compare* Doc. No. 42 *with Cohen v. UBS Fin. Servs., Inc.,* 12-cv-2147, Third Amended Complaint, Doc. No. 59.). Both involved notices of appeal that failed to include additional named plaintiffs and merely included a representative plaintiff appealing on behalf of themselves and all others similarly situated. (*Compare* Doc. No. 63 *with Cohen v. UBS Fin. Servs., Inc.,* 12-cv-2147, Notice of Appeal, Doc. No. 119.) The Second Circuit in *Cohen* did not

---

[4] Additional Plaintiffs argue that they and their counsel appeared on other documents related to the appeal, something that should suffice for purposes of Rule 3's specificity requirements pursuant to Rule 3(c)(4). *See* Pls.' Opp'n at 9 n.6. This is incorrect because, as noted above, Rule 3 expressly provides that "[a]n appeal permitted by law as of right from a district court to a court of appeals may be taken *only by filing a notice of appeal*" and lays out the specific requirements for filing the notice. Fed. R. App. P. 3 (a)(1) (emphasis added). Parties must comply with Rule 3 in order to appeal because it is jurisdictional. *See, e.g., BrandAid*, 2009 WL 742077 at *1; *Billino*, 123 F. 3d at 725. Additional Plaintiffs Cho and Ulug have not complied with Rule 3's requirements and, thus, the presence of their names or their counsel's name on ancillary documents does not ameliorate the fatal defect in the notice of appeal.

rely on any provision of the FLSA or the peculiar nature of employment or arbitration law when it stated that an appeal brought by a representative plaintiff on behalf of himself and unnamed putative class members was not an appeal on behalf of the other named plaintiffs.  Rather, the Second Circuit read Rule 3(c)(3) narrowly, indicating that it is inapplicable to individual *named* plaintiffs in a class action, and that individual named plaintiffs are still obliged to comply with Rule 3(c)(1).  Its statement in footnote 3 indicates that if an individual named plaintiff's intent to appeal is not clear from the notice of appeal, as set forth in Rule 3(c)(4), his or her appeal must be dismissed.  The Court of Appeal's citation to *Torres*, which held that a failure to provide notice of the intent to appeal is a jurisdictional bar, *see supra*, confirms this interpretation of footnote 3's import.  Its citation to *Gusler v. City of Long Beach* similarly supports this interpretation, because *Gusler* recognized that even though Rule 3 was amended and liberalized with the inclusion of Rule 3(c)(4) in the wake of *Torres*, the 1993 amendments did not change Rule 3(c)(1)'s requirement that "the notice of appeal 'specify the party or parties taking the appeal by naming each one *in the caption or body* of the notice."  700 F.3d at 648 (emphasis in original) (quoting Rule 3(c)(1)(a)).

The PSLRA's lead plaintiff appointment process does not provide a basis for distinguishing *Cohen*.  That process determines a member of the putative class who is "most capable of adequately representing the interests of class members."  15 U.S.C. §78u-4(a)(3)(B)(i).  But the existence of this process does not mean that other named plaintiffs who may be part of the putative class are not able to protect their *own* interests; it only means that

Congress determined that lead plaintiffs are necessary to protect *unnamed* class members.[5]

*See In re Lehman Bros & Erisa Litig.* 655 F. App'x 13, 16 (2d Cir. 2016) *aff'd sub nom. California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc*., 137 S. Ct. 2042 (2017); *Cohen*, 799 F.3d at 177 n.3. By continuing to proceed as named plaintiffs, Cho and Ulug elected to participate in the litigation to protect their individual claims and not rely on Lead Plaintiffs.  Nothing in the PSLRA impacts the operation and interaction of Rule 3's various provisions.

The Second Circuit's *Cohen* decision recognizes that representing the interests of unnamed class members is different from representing the interests of other named plaintiffs. *Cohen*, 799 F.3d at 177 n.3.  Indeed, in most cases, putative class members who have not individually joined the lawsuit cannot be explicitly named in an appeal and likely would not have notice of the need to appeal.  *See* Fed. R. App. P. 3 advisory committee's notes to 1993 amendment.  In contrast, named plaintiffs, particularly those who are represented by counsel, have elected to appear on their own behalves in the action, and participate in the litigation, are fully capable of being identified in the notice of appeal and separately pursuing their individual rights.  *In re Lehman Bros.*, 655 F. App'x at 16 ("[Individual plaintiff's] right to initiate and pursue an individual action before, during, and after the putative class action was unchanged").  Rule 3(c)(1) and Rule 3(c)(3) recognize this and contain no language that would exclude plaintiffs who have joined the litigation to protect their individual interests from Rule 3's specificity requirements.  *See* Fed. R. App. P. 3 advisory committee's notes to 1993 amendment ("The test

---

[5] Cho and Ulug's citation to a footnote in *In re Cendant Corp. Litig.*, 264 F.3d 201, 223 (3d Cir. 2001), does not support their assertion that a lead plaintiff speaks for other named but non-lead plaintiffs.  The footnote discussed whether it was more appropriate to refer to the lead plaintiff group as the singular "lead plaintiff" rather than the plural "lead plaintiffs" because the designated group was comprised of multiple independent entities acting together.  *Cendant*, 264 F.3d at 223 n.3.  The footnote does not address whether non-lead named plaintiffs could rely on lead plaintiffs to appeal.

established by the rule . . . is whether it is objectively clear that a party intended to appeal. . . .
[T]he rule makes it clear that dismissal of appeal should not occur when it is otherwise *clear
from the notice* that the party intended to appeal.") (emphasis added).   Cho and Ulug's conduct
in this case bears this out.  They have at times signed documents as Additional Plaintiffs, and
their counsel has signed some documents as their counsel but signed the notice of appeal only
as additional counsel for the class.  This indicates that Mr. Brower sometimes acted on behalf of
Cho, Ulug, and the putative class and at other times just for Cho and Ulug or just for the
putative class.

     Cases that Cho and Ulug cite either underscore the Court's conclusions or are
distinguishable.  For example, Cho and Ulug cite to *Billino v. Citibank, N.A* for the proposition
that the Second Circuit has acknowledged that the 1993 amendment was a response to *Torres*
and was intended "to alleviate the inadvertent loss of the right to appeal through the use of
terms such as 'et al.' or through the use of the name of a representative plaintiff in class
actions."  *See Billino*, 123 F.3d at 726.  *Billino*, however, was not a class action, and while noting
that the 1993 amendment was a clarification of Rule 3's requirements in response to *Torres*, it
held that a "complete *failure* to name the party taking the appeal creates a fatal defect" when
the party is identifiable and capable of being included in the notice of appeal.  *Id.* (emphasis in
original).  There, as here, "[t]o hold otherwise would render the requirements of Rule 3
meaningless," because "[n]aming the appealing party is a fundamental purpose of requiring a
formal notice of appeal . . . 'in that courts of appeal may not exercise jurisdiction over unnamed
parties after the time for filing a notice of appeal has passed.'"  *Id.* (quoting *DeLuca v. Long
Island Lighting Co.*, 862 F.2d 427, 429 (2d Cir.1988)).  *Massie v. U.S. Dep't of Hous. & Urban*

*Dev.*, another case relied on by Cho and Ulug, is factually distinguishable. 620 F.3d 340 (3d Cir. 2010). In *Massie*, the parties cross-moved for summary judgment. The district court granted summary judgment on all claims against plaintiffs and denied their motion for reconsideration.[6] After the class had been certified and from the motion to certify the class onward, none of the original named plaintiffs other than the lead plaintiff participated actively in the matter, including in the operative notice of appeal. (*See Massie v. U.S. Dep't of Hous. & Urban Dev.*, 2:06-cv-01004 (W.D. Pa.), Doc. No. 141.). The court concluded that the notice of appeal that listed the named plaintiff and et. al. was sufficient under Rule 3(C)(1) and Rule (3)(c)(3), given the facts of the case, to provide notice on behalf of all class members.[7] In any event, *Massie*, a Third Circuit decision*,* is not controlling—*Cohen* is.

Cho and Ulug argue that they benefit from Lead Plaintiffs' appeal because they did not opt out of the putative class. (Pls.' Opp'n. at 11-12.) This argument glosses over the very real distinction between a class and a putative class and the different rules of procedure that apply to each. Cho and Ulug cannot opt out of a non-certified class action. The very reason they joined as additional named plaintiffs was to assert and protect their individual claims. If no class is certified, this Court would still determine their individual claims. This explains why Rule 3 has different provisions for different types of plaintiffs.[8] *Cohen*, 799 F.3d at 177 n.3.

---

[6] Notably, the motion for reconsideration in *Massie* included all named plaintiffs. *Massie v. U.S. Dep't of Hous. & Urban Dev.*, 2:06-cv-01004 (W.D. Pa.), Motion for Reconsideration, Doc. No. 34.

[7] The two cases on which *Massie* relied are similarly factually distinguishable from this case. *See Olenhouse v. Commodity Credit Corp.,* 42 F.3d 1560, 1572 (10th Cir. 1994) (explicitly relying on class certification as grounds for allowing "et al." to provide sufficient notice for a class appeal); *Ford v. Elsbury*, 32 F.3d 931, 933–34 (5th Cir. 1994) (finding the notice of appeal sufficient where the notice of appeal included the term "Ford' plaintiffs" and where "[t]hroughout the district proceedings all [named] plaintiffs consistently referred to themselves as the 'Ford' plaintiffs").

[8] Cho and Ulug provided supplemental authority in the form of a stipulated notice of the pendency of class action approved by the Hon. Colleen McMahon in *Guevoura Fund, Ltd., v. Robert F.X. Sillerman*, *et al.*, No. 1:15-cv-07192-CM as support for their proposition that they benefit from Lead Plaintiffs' appeal. *See* Doc. Nos. 276, 278. In that

Relatedly, Cho and Ulug also contend that they needed to join the FAC in order to preserve

their ability to later opt out under precedent set by the Supreme Court in *Cal. Pub. Emps.' Ret.*

*Sys. v. ANZ Sec., Inc.,* 137 S. Ct. 2042 (2017) ("*CalPERS*") and *China Agritech, Inc. v. Resh,* 138 S.

Ct. 1800 (2018).  (Pls.' Opp'n at 14-15.)  The issue in *CalPERS* was whether a complaint filed on

behalf of a putative class of stock purchasers, of which CalPERS was a member, was subject to

equitable tolling such that CalPERS could file an individual complaint after the statute of repose

period had passed.  The Supreme Court held that statutes of repose are not subject to

equitable tolling.  *See CalPERS*, 137 S. Ct. at 2050, 2052-55.  Nowhere in the opinion did the

Supreme Court hold that a named plaintiff is relieved of the duty to appeal or of the duty to

comply with other statutory requirements, such as a statute of repose.  The issue in *China*

*Agritech* was whether equitable tolling of the statute of limitations under *American Pipe &*

*Constr. Co. v. Utah*, 414 U.S. 538 (1973), allowed a putative class member to commence a new

class action after denial of class certification.  The Supreme Court held that it did not, as it did

not promote efficiency or economy of litigation.  *China Agritech*, 138 S. Ct., at 1811.  Nowhere

in *China Agritech* did the Supreme Court relieve plaintiffs from Rule 3's requirements.  Thus,

---

matter there were two separate but related putative class actions (*Gutman*, 15-cv-07192-CM, and *Wilfrid*, 15-cv-08774-CM) filed in federal court. Guevoura Fund Ltd. ("Guevoura") and Wilfrid Global Opportunity Fund ("Wilfrid") both moved to be appointed lead plaintiff in *Gutman*. The cases were then consolidated. Guevoura was appointed lead plaintiff. Guevoura filed an amended class action complaint that was captioned as "Guevoura Fund Ltd., On Behalf of Itself and All Others Similarly Situated." The *Wilfrid* plaintiffs filed a voluntary dismissal without prejudice, though the case was not formally dismissed. A non-class state action was brought by a number of defendants. The class was certified. Subsequently the parties filed the stipulated notice of the pendency of class action. Part of the stipulation provides a method by which the plaintiffs in the state action and in the *Wilfrid* action may choose to opt out of the class certified in *Guevoura*. Cho and Ulug argue that the stipulation stands for the proposition that the plaintiffs in the state actions and in *Wilfrid* remained members of the class notwithstanding their individual separate actions until such time as they opted out of the class by the procedures set forth int the stipulation. Notably, no notice of appeal has been filed in the case, and no separate individual plaintiffs signed onto the Consolidated Amended Complaint as additional plaintiffs. Plaintiffs' point is irrelevant to the issue of whether they can rely on Lead Plaintiffs to appeal for them.

these two cases and their holdings are inapposite to the determination of the instant motion. Furthermore, neither of these cases directly holds that a class member must join a lead plaintiff's complaint as a named plaintiff to retain his or her ability to opt out of a class that might be certified in the future, and there is no need to reach this issue to resolve the instant motion.

Having concluded that Cho and Ulug did not comply with Rule 3's specificity requirements, to the extent they purport to have appealed, their appeal was jurisdictionally barred. *Torres*, 487 U.S. at 314–18.

Furthermore, Cho and Ulug may not benefit from Lead Plaintiffs' success securing reversal of Judge Griesa's decision denying them the opportunity to file an amended complaint. The United States Supreme Court held in *Federated Dep't Stores, Inc. v. Moitie* that there is no "exception to the finality of a party's failure to appeal merely because his rights are 'closely interwoven with those of another party.'" 452 U.S. at 400-402,; *Bhd. of Maint. of Way Emps. v. St. Johnsbury & L.C.R.R*., 806 F.2d 14, 15-16 (2d Cir. 1986) (noting that "[i]f the appellee wishes to upset [a] dismissal he must file a timely notice of appeal"). It further made clear that Cho and Ulug cannot now "be the windfall beneficiaries of an appellate reversal procured by other independent parties." *Moitie,* 522 U.S. at 400. Cho and Ulug argue that *Moitie* is outmoded, inconsistent with current federal rules, and its application foreclosed by the PSLRA and the 1993 amendments to Rule 3. (Pls.' Opp'n at 18-19.) But *Moitie* is controlling precedent, as is the Second Circuit's *Cohen* decision, and this Court is bound by them.

**2.      *Res Judicata* and the Law of the Case Doctrine**

Having determined that Judge Griesa's March 2015 decision was a final judgment against Cho and Ulug from which Cho and Ulug did not appeal, the next issue raised is whether Cho and Ulug are precluded from asserting newly formulated claims arising from the same nucleus of facts against the Original Defendants or new Defendant Zipperstein. Defendants argue such claims are barred by res judicata and/or law of the case.

Federal law applies "in determining the preclusive effect of a federal judgment." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). Thus, federal law applies here. "Under the doctrine of res judicata, or claim preclusion, '[a] final judgment on the merits of an action precludes the parties or their privies from re-litigating issues that were or could have been raised in that action.'" *Maersk, Inc. v. Neewra, Inc.*, 554 F. Supp. 2d 424, 465 (S.D.N.Y. 2008) (quoting *EDP Med. Computer Sys., Inc. v. U.S.*, 480 F.3d 621, 624 (2d Cir.2007)); *accord Austin v. Downs, Rachlin & Martin Burlington St. Johnsbury,* 270 F. App'x 52, 53 (2d Cir. 2008). An action is subject to claim preclusion when the "earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *Maersk*, 554 F. Supp. 2d at 465 (quoting *EDP*, 480 F.3d at 624); *Monahan v. N.Y.C. Dep't of Corrs.*, 214 F.3d 275, 285 (2d Cir. 2000). "Even claims based upon different legal theories are barred provided they arise from the same transaction or occurrence." *Id.* (internal quotation marks and citation omitted); *L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc.*, 198 F.3d 85 (2d Cir. 1999) (holding that *res judicata* bars "claims based upon different legal theories . . . provided they arise from the transaction or occurrence"). Whether a claim that was not raised in the previous action could have been raised therein "depends in part on whether the same transaction or connected series of

transactions is at issue, [and] whether the same evidence is needed to support both claims." *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 90 (2d Cir. 1997) (citation and internal quotation marks omitted) (alteration in original).

Res judicata "does not speak to the direct attacks in the same case, but rather has application in subsequent actions." *Rezzonico v. H&R Block, Inc.,* 182 F.3d 144, 148 (2d Cir. 1999). However, the Second Circuit has applied the principles of *res judicata* to bar subsequent claims in the same continuing action after a judgement on the merits has been granted on some claims. *See L-Tec*, 198 F.3d at 87-88 (applying the principles of *res judicata* to preclude new claims raised in an amended complaint subsequent to summary judgment).[9]

The law of the case doctrine is similar to *res judicata* and provides that "a decision made at a previous stage of litigation, which could have been challenged in the ensuing appeal but was not, becomes the law of the case." *United States v. Ben Zvi*, 242 F.3d 89, 96 (2d Cir. 2001); *accord Rezzonico*, 182 F.3d at 148 ("[The law of the case doctrine" limits relitigation of an issue once it has been decided."). The law of the case doctrine has two related, subsidiary rules. The first is that a district court generally has the obligation to adhere to its own decision at an earlier stage of the litigation absent new facts or a change in controlling law. *See Ben Zvi*, 242 F. 3d at 95. This rule is discretionary, however, and the district court may revise its previous decision at any time prior to final judgment on all claims, rights, and liabilities. *See Dominick & Dominick LLC v. Deutsche Oel & Gas AG*, No. 14-CV-06445 (PKC), 2017 WL 3669619, at *4 (S.D.N.Y. Aug. 24, 2017), *aff'd sub nom. Dominick & Dickerman LLC v. Deutsche Oel & Gas AG*,

---

[9] *But see Tomasino v. Estee Lauder Companies, Inc.*, No. 13-CV-4692 ERK RML, 2015 WL 1470177, at *3 (E.D.N.Y. Mar. 31, 2015) (analyzing the holding of *L-Tec* as an application of law of the case doctrine; denying a finding of *res judicata* where leave to amend was given as part of a successful motion to dismiss).

756 F. App'x 58 (2d Cir. 2018).  The second is the "mandate rule," which requires the district

court on remand to comply with the dictates of the appellate court's remand order and

"forecloses relitigation of issues expressly or *impliedly* decided by the appellate court."

*LFoundry Rousset, SAS v. Atmel Corp*., 690 F. App'x 748, 751 (2d Cir. 2017) (emphasis in original)

(citation omitted); *accord United States v. Stanley,* 54 F.3d 103, 107 (2d Cir. 1995)).

      As discussed above, because there was a final judgment against them which they did

not appeal, principles of *res judicata* and/or law of the case prohibit Cho and Ulug from filing a

new action or an amended complaint in this action against the Original Defendants for claims

based on the same nucleus of facts.  *Moitie*, 452 U.S. at 399 n.4 ("An adverse judgment from

which no appeal has been taken is *res judicata* and bars any future action on the same claim.");

*Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994) (holding that judgment against a non-

appealing party remains undisturbed); *L-Tec*, 198 F.3d at 87-88 (holding that district court

properly dismissed amended complaint based on principles of *res judicata* and recognizing that

doctrine bars claims based upon different legal theories if they arise from same transaction or

occurrence, even if based on newly discovered evidence); *see also LFoundry*, 690 F. App'x at

751 (holding that district court did not err when deciding that it was foreclosed from

reconsideration of issue that was not directly addressed in earlier appellate affirmance);

*Stanley,* 54 F.3d at 107 (holding on a second appeal that, because court of appeals remanded

on narrow issue in earlier appeal, district court could not reconsider ruling that was not raised

on the first appeal).  All of the claims in the SAC against the original Defendants are based on

the same nucleus of facts—i.e., the same alleged public misrepresentations—and, therefore, are barred by the doctrine of res judicata or, alternatively, law of the case.

In the SAC Plaintiffs asserted claims against new Defendant Zipperstein, BlackBerry's former Chief Legal Officer.  These claims arise from statements he made in an April 12, 2013 press release which has been one of the bases for the claims originally pleaded in this case. (*Compare* Doc. No. 42 at ¶ 49 *with* Doc. No. 84 at ¶ 84.)  Defendants contend that principles of *res judicata* and the law of the case doctrine also bar Cho and Ulug from bringing claims against Zipperstein because Zipperstein was in privity with the Original Defendants.

"In its modern form, the principle of privity bars relitigation of the same cause of action against a new defendant known by a plaintiff at the time of the first suit where the new defendant has a sufficiently close relationship to the original defendant to justify preclusion." *Central Hudson Gas & Elec. Corp. v. Empresa Naviera Sana S.A.*, 56 F.3d 359, 367-68 (2d Cir. 1995); *accord Monahan*, 214 F.3d at 285; *see also Richards v. Jefferson Cty., Ala.*, 517 U.S. 793, 798 (1996) (noting that privity is used "to describe various relationships between litigants that would not have come within the traditional definition of that term"); *Sweeper v. Tavera*, 08-CV-6372, 2009 WL 2999702, at *4 (S.D.N.Y. Sept. 21, 2009) ("Privity may also be found where the claims in the prior action and the subsequent action are identical, the same witnesses, facts and legal theories are involved, and the first action did not involve any defense unique to those parties.").  Whether a new defendant is in privity with a previous defendant is a "'legal conclusion that the relationship between the parties is sufficiently close to warrant claim preclusion.'" *7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*, No. 13 CIV. 981 PGG, 2015 WL 1514539, at *27 (S.D.N.Y. Mar. 31, 2015 (quoting *Discon Inc. v. NYNEX Corp.*, 86 F.Supp.2d 154,

166 (W.D.N.Y.2000)), a*ff'd*, No. 18-1102-CV, 2019 WL 1914278 (2d Cir. Apr. 30, 2019)).   A

determination of privity for purposes of applying the doctrine of *res judicata* requires a flexible,

case-specific analysis of the facts and relationships between the parties which may be in privity.

*7 W. 57th St. Realty Co., LLC.*, 2015 WL 1514539, at *25 ("The doctrine of privity, which extends

the *res judicata* effect of a prior judgment to nonparties who are in privity with the parties in

the first action, is to be applied with flexibility." (quoting *Amalgamated Sugar Co. v. NL Indus.,*

*Inc.*, 825 F.2d 634, 640 (2d Cir.1987)).   A variety of relationships have been found to be in privity

for purposes of *res judicata*, including the employee-employer relationship.  *See Fischer v.*

*Brushy Mountain Bee Farm, Inc.*, No. 17CV10094PAEOTW, 2019 WL 935957, at *7 (S.D.N.Y. Feb.

26, 2019); *see also Alaimo v. General Motors Corp.*, 07-cv-7624, 2008 WL 4695026 (S.D.N.Y. Oct.

2, 2008) (finding that plaintiff, who lost claim against General Motors, could not avoid bar of res

judicata by adding new defendant who was an employee of General Motors); *Amadsau v. Bronx*

*Lebanon Hosp. Ctr.,* 03 Civ. 6450, 2005 WL 121746, at *8 (S.D.N.Y. Jan. 21, 2005) (finding

employees and employer defendant in prior litigation with same plaintiff to have "sufficiently

close relationship" to be in privity for *res judicata* purposes); *John Street Leasehold, LLC v.*

*Capital Mgmt. Res., L.P.,* 154 F.Supp.2d 527, 542-44 (S.D.N.Y.2001) (same), *aff'd,* 283 F.3d 73

(2d Cir.2002) (*per curiam* ); *Ray Legal Consulting Grp. v. Gray*, 37 F. Supp. 3d 689, 701 (S.D.N.Y.

2014) (finding that attorney-employee was in privity with client-employer for purposes of *res*

*judicata*); *Powers v. City of New York*, 04-CV-02246 (NGG), 2007 WL 1026407, at *5 & n.1

(E.D.N.Y. Mar. 30, 2007) (finding that defendants who were unnamed in the prior litigation but

who worked for entity defendant in supervisory roles were parties in privity for purposes of *res judicata* analysis).

Zipperstein, as a high-level officer of BlackBerry, who made statements in the April 2013 press release in his official capacity, is in privity with BlackBerry for the purpose of applying *res judicata* principles.  There is no doubt that Plaintiffs could have named Zipperstein as an individual defendant when they filed the original complaint in this matter, as they identified the very press release in which he made statements about the return rates of BlackBerry Z10 devices as one of the documents that mislead investors about the potential and anticipated success of the Z10 launch.  That Zipperstein is being sued in his individual capacity under a "primary violator" theory does not change the analysis.   (Doc No. 257, Plaintiff's sur-reply, ("Pls.' SurReply") at 6.)  *Tibbetts v. Stempel*, to which they cite, does not hold otherwise.  354 F. Supp. 2d 137 (D. Conn. 2005) (holding *res judicata* barred claims against new defendants who were sued in both their individual and official capacities because the conduct for which they were being sued was taken within the scope of their official duties for their employer), *aff'd sub nom. Tibbetts v. Levin*, 288 F. App'x 743 (2d Cir. 2008).  Zipperstein's exposure to individual liability has no bearing on his relationship with BlackBerry and arises solely out of his official actions for BlackBerry.  Having found that Zipperstein is in privity with BlackBerry, this Court can easily conclude that the claims arise from the same "factual predicate" as the claims against the original Defendants because they are based on the same series and events (and indeed the very

same press release) as the claims brought previously against the original Defendants.  *L-Tec*, 198 F. 3d at 88; *accord Fischer*, 2019 WL 935957, at *10.

Finally, to the extent Cho and Ulug argue that *res judicata* cannot apply to subsequent claims in the same case, their argument is contrary to the Second Circuit's decision in *L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc*.  198 F.3d 85.  Additionally, some of the cases they cite support a finding that, if *L-Tech* were not controlling, the law of the case doctrine would bar their claims in any event or are not on point.  *See, e.g., Rezzonico*, 82 F.3d at 148 (not involving application of *res judicat*a against parties whose claims were dismissed in a final judgment attempting to renew claims in the same action that was ongoing for other parties; holding merely that the law of the case doctrine does not absolutely preclude a court from revisiting its prior decision; noting that *res judicata* is similar to the law of the case doctrine and that res judicata generally does not speak to direct attacks in the same case); *Goodheart Clothing Co. v. Laura Goodman Enterprises, Inc*, 962 F.2d 268, 274 (2d Cir. 1992) (noting merely, in case involving whether a preliminary injunction had *res judicata* effect, that if it did, it would be under the law of the case doctrine); *Tomasino v. Estee Lauder Companies, Inc.*, No. 13-CV-4692 ERK RML, 2015 WL 1470177, at *2 (E.D.N.Y. Mar. 31, 2015) ( not involving situation where claim was dismissed by final judgment on the merits; stating *L-Tec* decision is "better understood as an application of the law of the case doctrine because the decisions were made in the context of a single ongoing case.").

## CONCLUSION

For the foregoing reasons, this Court respectfully recommends that Defendants' motion for judgment on the pleadings against Cho and Ulug be granted.  A party is entitled to judgment

on the pleadings when they establish that no material issue of fact remains to be resolved and that they are entitled to judgment as a matter of law. *Verragio*, 2017 WL 4125368, at *4. The Second Circuit has stated that named plaintiffs in putative class actions are treated differently than unnamed class members for the purposes of notices of appeal. As Cho and Ulug do not appear on Lead Plaintiffs' notice of appeal, they did not appeal the previous judgement. Cho and Ulug are also not beneficiaries of Lead Plaintiffs' successful appeal. As such, the earlier dismissal on the merits, principles of res judicata and the law of the case doctrine forecloses their continued pursuit of their claims against Original Defendants. Cho and Ulug's claims against Zipperstein similarly are barred under the principles of *res judicata* and law of the case because the non-appealed dismissal was a judgment on the merits, Zipperstein was in privity with Original Defendants, and Cho and Ulug's claims against Zipperstein arise from the same nucleus of facts.

Dated:   August 2, 2019
         New York, New York


_____
KATHARINE H. PARKER
United States Magistrate Judge


**The Defendants shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days only when service is made under Fed. R. Civ. P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)). Plaintiffs shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.**

If the Plaintiffs file written objections to this Report and Recommendation, the Defendants may respond to Plaintiffs' objections within fourteen days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Alternatively, if Defendants file written objections, the Plaintiffs may respond to such objections within fourteen days after being served with a copy.  Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a), (d).  Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Colleen McMahon at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).  Any requests for an extension of time for filing objections must be addressed to Chief Judge McMahon.  The failure to file these timely objections will result in a waiver of those objections for purposes of appeal.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).