UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 08/29/2019

---

MARVIN PEARLSTEIN, et al.,

                 Plaintiffs,

       -against-

BLACKBERRY LIMITED, et al.,

             Defendants.

**OPINION AND ORDER
REGARDING ISSUANCE OF
A LETTER OF REQUEST
TO THE UNITED KINGDOM**

**13-CV-07060 (CM)(KHP)**

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

Plaintiffs move for the issuance of a letter of request, also known as a letter rogatory,[1] to the United Kingdom ("UK") pursuant to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Convention"), 23 U.S.T. 2555, T.I.A.S. 7444, 28 U.S.C. § 1781, and Federal Rule of Civil Procedure ("Rule") 28(b). (ECF No. 321.) Plaintiffs seek to depose William Douglas, a former executive at BlackBerry Limited ("BlackBerry"). Plaintiffs also have requested that the Court de-designate certain documents and deposition testimony that Defendants marked as Confidential pursuant to the Confidentiality Agreement and Stipulated Protective Order (the "Protective Order") entered into by the parties on June 18, 2018. (*See* Doc. No. 134.) Defendants object to the number and breadth of topics upon which Plaintiffs seek Mr. Douglas's testimony and object to language in the letter of request, which Defendants characterize as improperly requesting that the Court make factual findings. (ECF

---

[1] "Letters of request" are synonymous with "letters rogatory." *See Villella v. Chem. & Mining Co. of Chile Inc.*, No. 15 CIV. 2106 (ER), 2018 WL 2958361, at *2 n.1 (S.D.N.Y. June 13, 2018) (citing *Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 841 F. Supp. 2d 769, 775 n.5 (S.D.N.Y. 2012)); Fed. R. Civ. P. 28 advisory committee's notes to 1993 amendment. The Court uses the two expressions interchangeably.

1

No. 332.)  For the reasons set forth below, Plaintiffs' request is granted in part, subject to the

conditions below.

## BACKGROUND

This case is a putative class action alleging securities fraud stemming from alleged

material misrepresentations and omissions made by Defendants concerning the 2013 launch of

its BlackBerry 10 smartphones in the United States.  Plaintiffs contend that the

misrepresentations and omissions artificially inflated BlackBerry's stock price.  The Court

assumes familiarity with other background facts and procedural history and does not repeat

them here.  *See Pearlstein v. BlackBerry Ltd.*, No. 13-cv-7060 (CM), 2018 WL 1444401 (S.D.N.Y.

Mar. 19, 2018); *Pearlstein v. BlackBerry Ltd.*, 93 F. Supp. 3d 233 (S.D.N.Y. 2015), *aff'd in part and

vacated in part sub nom. Cox v. BlackBerry Ltd.,* 660 F. App'x 23 (2d Cir. 2016).

## LEGAL STANDARD

Depositions of third parties may be taken in a foreign country under Rule 28.  Fed. R.

Civ. P. 28(b).  The issuance of letters rogatory under the Hague Convention, of which both the

United States and the UK are signatories, is one method for seeking such a deposition.

*Blagman v. Apple, Inc.*, No. 12 CIV. 5453 ALC JCF, 2014 WL 1285496, at *3 (S.D.N.Y. Mar. 31,

2014) (citing  *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for S. Dist. of Iowa*,

482 U.S. 522, 530-531 (1987)); *see Villella*, 2018 WL 2958361, at *2; *Joseph v. Gnutti Carlo

S.p.A.*, No. 15-CV-8910 (AJN), 2016 WL 4083433, at *1 (S.D.N.Y. July 25, 2016).  The decision of

whether to issue letters rogatory is within the discretion of the court.  *Villella*, 2018 WL

2958361, at *2; *Blagman*, 2014 WL 1285496, at *4.  When determining whether to issue letters

rogatory, courts apply the principles of Rule 26.  *Villella*, 2018 WL 2958361, at *3 (citing *Joseph*,

2016 WL 4083433, at *1); *Blagman*, 2014 WL 1285496, at *4 (citing *Lantheus,* 841 F.Supp.2d at

776).  Though the Federal Rules of Civil Procedure are controlling, courts should be mindful of

the possible burden placed on foreign judiciary by the issuance of letters rogatory under the

Hague Convention.  *See Lantheus*, 841 F. Supp. 2d at 777-78; *Metso Minerals Inc. v.*

*Powerscreen Int'l Distribution Ltd.*, No. CV 06-1446 ADS ETB, 2007 WL 1875560, at *1 (E.D.N.Y.

June 25, 2007) (citing *Aérospatiale*, 482 U.S. at 546).

Under Rule 26, parties may seek discovery as to "any nonprivileged matter that is

relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ.

P. 26(b)(1).  Relevance under Rule 26 "is an extremely broad concept."  *Joseph*, 2016 WL

4083433, at *1 (quoting *Chen–Oster v. Goldman, Sachs & Co.*, 293 F.R.D. 557, 561

(S.D.N.Y.2013)).  The party seeking discovery has the burden, but it is not heavy.  *Villella*, 2018

WL 2958361, at *3 (citing *Joseph*, 2016 WL 4083433, at *1).  Nevertheless, "[d]iscovery may be

curtailed where the information sought would be 'unreasonably cumulative or duplicative' or

when 'the burden or expense of the proposed discovery outweighs its likely benefit.'"

*Blagman*, 2014 WL 1285496, at *4 (quoting Fed. R. Civ. P. 26(b)(2)(C)).  Once the requesting

party has met their burden, the opposing party must "justify any restrictions on discovery."  *Id.*

(citation omitted); *accord Joseph*, 2016 WL 4083433, at *1.

Foreign courts receiving letters rogatory may have different rules and standards that

govern if and how letters rogatory are executed.  *See Crouch v. Liberty Pride Corp.*, No. CV 15-

974 (JS)(AYS), 2016 WL 4718431, at *2 (E.D.N.Y. Sept. 9, 2016) (citing *Aérospatiale*, 428 U.S. at

537); *Blagman*, 2014 WL 1285496, at *4.  The Court notes that the UK has "reserved its rights to

impose stricter pretrial discovery standards when evaluating letters rogatory received from

foreign nations." *Blagman*, 2014 WL 1285496, at *4; *see Lantheus* 841 F. Supp. 2d at 777

("[C]ourts in the receiving country enforce the letters rogatory pursuant to domestic statute or

common law."); *see also Smith v. Phillip Morris Companies* [2006] EWHC 916 (QB), ¶ 31

(comparing the discovery regimes of the UK and United States and noting that the breadth of

oral discovery in the United States is greater).  As such, "the subject matter of [a pretrial]

deposition is restricted to [] evidence admissible at trial." *Blagman*, 2014 WL 1285496, at *4

(quoting *Apple Computers, Inc. v. Doe*, [2002] EWHC (QB) 2064, 2002 WL 31476324 (Queen's

Bench Division Sept. 18, 2002)).

### DISCUSSION

Plaintiffs seek the testimony of Mr. Douglas who is currently a UK resident and who is

unwilling to voluntarily appear for a deposition.  During the period relevant to Plaintiffs' claims,

Mr. Douglas served as BlackBerry's  Vice President, Global Commercial Strategy.  Mr. Douglas is

no longer employed by BlackBerry.  The topics upon which Plaintiffs wish to depose Mr.

Douglas concern, *inter alia*, BlackBerry's marketing budget and accounting for the BlackBerry 10

smartphones, BlackBerry's knowledge of the smartphone market and the performance of the

BlackBerry 10 smartphones, and the performance of BlackBerry's PlayBook tablet.

Defendants have not objected to the issuance of the letter of request for Mr. Douglas's

deposition except insofar as they argue that the topics in the letter of request are too broad

and that UK court will not execute the letter.  Defendants' arguments are unpersuasive except

as to the PlayBook topics.  The other topics relating to the BlackBerry 10 smartphones and the

accounting practices at issue in Plaintiffs' claims fall within the "extremely broad" ambit of

relevance under Rule 26.  *See Joseph*, 2016 WL 4083433, at *2.  Defendants note that Plaintiffs

have taken and will take discovery regarding many of topics addressed in the letter of request. However, this Court does not find discovery from Mr. Douglas on those topics unreasonably cumulative or duplicative, and this Court does not understand Defendants to be making that argument. *See* Fed. R. Civ. P. 26(b)(2)(C)(i).

The Court finds, however, that questioning Mr. Douglas about the BlackBerry PlayBook is not proportional to the needs of the case. The PlayBook tablet is a different *type* of product than the BlackBerry 10 smartphones at issue. The PlayBook was released significantly before the BlackBerry 10 smartphones entered the market and before the class period. The connections that Plaintiffs make between the two devices, that they were accounted for similarly and were treated similarly operationally, bear tenuous relation to the claims that Plaintiffs assert regarding the BlackBerry 10 smartphones and the representations about them upon which Plaintiffs' claims are based. Further, Mr. Douglas is neither a party to this matter, nor still employed by BlackBerry. He lives in the UK. Though the ambit of relevance under Rule 26 is broad, it is not unlimited, and a non-party especially should not be burdened with preparation for a broader array of topics than is proportional to the needs of the case. *See, e.g.*, *Blagman*, 2014 WL 1285496, at *4. Balancing these factors, the Court finds that, given the minimal relevance of the topic and the burden to the foreign non-party, questioning Mr. Douglas about the PlayBook is not proportional to the needs of the case. *See Villella*, 2018 WL 2958361, at *8 ("Proportionality and relevance are 'conjoined' concepts; the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate." (citation omitted)); *see also Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, No. 14CV09371KPFSN, 2017 WL 9401102, at *2

(S.D.N.Y. Mar. 2, 2017) (("[T]o the extent a subpoena sweepingly pursues material with little or apparent [sic] or likely relevance to the subject matter it runs the greater risk of being found overbroad and unreasonable." (first alteration in original) (quoting *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 50 (S.D.N.Y. 1996))); *Sahu v. Union Carbide Corp.*, 262 F.R.D. 308, 317 (S.D.N.Y. 2009) ("As a general matter, courts are more sensitive to the burdens of discovery when they would be placed on third parties.").

Turning to Defendants' concerns regarding whether the letter of request is too broad and too "investigatory" for the UK courts to execute, the Court finds that "[s]uch a decision is best left to the judicial authorities in the [UK]." *Metso Minerals*, 2007 WL 1875560, at *3. Though UK courts have denied letters rogatory for depositions as too broad and too investigatory, crafting a letter of request in compliance with the UK law is outside of the purview of this Court. *See, e.g.*, *Metso Minerals Inc. v. Powerscreen Int'l Distribution Ltd.*, No. CV 06-1446ADSETB, 2008 WL 719243, at *1 (E.D.N.Y. Mar. 18, 2008) (noting that a previous letter of request had been denied by the UK courts for being "overly broad and blatantly inconsistent with U.K. precedents governing pre-trial discovery"); *Smith*, [2006] EWHC 916 (QB), ¶ 40 (denying a letter of request for seeking "an impermissible investigation"). Rather, the responsibility of this Court is to determine whether the letter of request should be issued given the principles of discovery under Rule 26. *See, e.g., Lantheus*, 841 F. Supp. 2d at 776 (collecting cases). The UK courts will make the determination of whether to enforce the letter of request pursuant to UK law. *See*, *e.g.*, *id.* at 777; *see also Crouch*, 2016 WL 4718431, at *2 ("[W]hile the propriety of issuance of the [letter of request] is a matter for this Court, the decision of whether to execute [it] will be decided by the sovereign court to which [it] is addressed."). The topics

included in the letter of request, except as to the BlackBerry PlayBook, are relevant under Rule 26, and thus the Court will issue the letter of request.

Defendants have also raised concerns that Plaintiffs' proposed letter of request improperly asks that the Court make factual findings. The Court has appended a version of the letter of request with its own edits which address Defendants' concerns and the Court's interest in ensuring the request is neutral as to the merits of this case. Plaintiffs are directed to input the revisions and file a clean version on ECF by **September 6, 2019**. Plaintiff shall also simultaneously email a .docx version of letter of request to Chambers.

Plaintiffs request that the Court de-designate and unseal certain documents and portions of deposition transcripts, which have been designated Confidential pursuant to the Protective Order, for inclusion with the letter of request and submission to the UK courts. When a party challenges a Confidential designation, the producing party is "obliged to sustain the burden of establishing that good cause existed for continuing confidential treatment." *Salomon Smith Barney, Inc. v. HBO & Co.*, No. 98CIV8721(LAK), 2001 WL 225040, at *1 (S.D.N.Y. Mar. 7, 2001); *accord Endo Pharm. Inc. v. Amneal Pharm., LLC*, No. 12 CIV. 8060 (TPG), 2016 WL 1732751, at *9 (S.D.N.Y. Apr. 29, 2016). Defendants have not objected. The documents and testimony involve events that are six years in the past and involve a line of business in which BlackBerry no longer participates. The material at issue, insofar as they remain part of the revised letter of request, may give context to the UK courts when considering whether to execute the letter of request. Therefore, Plaintiffs' request to de-designate is granted.

Plaintiffs further request that the Court compel Defendants to disclose Mr. Douglas's home address. Plaintiffs have stated that they know Mr. Douglas's business address but do not

have his home address or phone number.  ECF No. 348, August 1, 2019 Conf. Tr. 51:11-21.

However, Defendants have represented that, under the European Union's General Data

Protection Regulation, they are unable to disclose his address without his consent, which they

have not received.  Tr. 45:14-46:1. Thus, the Court denies Plaintiffs' request to compel

Defendants to provide the witness's address.

## CONCLUSION

For the reasons above, Plaintiffs' request for the issuance of a letter of request is

granted in part.  By **September 6, 2019**, Plaintiffs will file a clean version of the appended

revised letter of request and email a .docx version of the letter of request to Chambers.

Plaintiffs' request to de-designate and unseal for the purposes of the letter of request is

granted.  The Clerk of Court is respectfully requested to terminate the motion at ECF No. 321.


**SO ORDERED.**

Dated:    August 29, 2019
          New York, New York


KATHARINE H. PARKER
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

| | |
|---|---|
| MARVIN PEARLSTEIN, Individually And On Behalf of All Others Similarly Situated, | ) ) **Case No. 2:13-CV-07060-CM-KHP** |
| Plaintiff, | ) ) ) |
| vs. | ) ) ) |
| BLACKBERRY LIMITED (formerly known as RESEARCH IN MOTION LIMITED), THORSTEN HEINS, BRIAN BIDULKA, and STEVE ZIPPERSTEIN, | ) ) ) ) ) |
| Defendants. | ) ) ) |

_____)

## REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS

The United States District Court for the Southern District of New York (the "Court") presents its compliments to the appropriate judicial authority of the United Kingdom and respectfully requests international judicial assistance to obtain evidence in the form of an oral examination under oath from William Douglas ("Mr. Douglas"), who was the Vice President of Global Commercial Strategy at BlackBerry Limited ("BlackBerry"), to be used at trial in a civil lawsuit before this Court in the above-caption action (the "Action"). A trial date has not yet been set, but pre-trial fact discovery is to be completed by ~~September 17, 2019.~~ November 25, 2019.

This request is made pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, as adopted and implemented at 28 U.S.C. §1781 and the Evidence (Proceedings in Other Jurisdictions) Act 1975 c.34. This Court is a competent court of law and equity which properly has jurisdiction over this civil proceeding. Plaintiffs believe Mr. Douglas has knowledge on the topics set forth in Section 8.a. He is located

in London, England, United Kingdom.

Plaintiffs assert that the testimony of this witness is intended for use at trial and is relevant and important to the claims and defenses asserted in this Action, as discussed in detail herein.  The testimony ~~sought here goes to the heart of the significant~~ *is relevant to* issues of fact and law that ~~will~~ *may* influence the final determination of the existence, non-existence, and/or extent of any liability.  This request is made with the understanding that it will in no way require any person to commit any offense, or to undergo a broader form of inquiry than he would if the litigation were conducted in England.  In the proper exercise of its authority, this Court has determined that the testimony sought from Mr. Douglas as described herein cannot be secured except by the intervention of the appropriate judicial authority of the United Kingdom, as Mr. Douglas is neither domiciled nor doing business in the United States.

**1.      Sender**

> The Honorable Katharine H. Parker
> United States Magistrate Judge
> United States District Court
> for the Southern District of New York
> 500 Pearl Street
> New York, NY 10007-1312
> United States of America

**2.      Central Authority Of The Requested State**

> Central Authority for the United Kingdom
> The Senior Master
> Foreign Process Section
> Room E16
> Royal Courts of Justice
> Strand, London WC2A 2LL

**3.  Person To Whom The Executed Request Is To Be Returned**

> Kim E. Miller
> J. Ryan Lopatka
> KAHN SWICK & FOTI, LLC
> 250 Park Avenue, Suite 2040
> New York, NY 10177
> Tel.: (212) 696-3730

**4.  Specification Of The Date By Which The Requesting Authority Requires Receipt Of The Response To The Letter Of Request**

As soon as reasonably practicable in order to ensure that evidence may be obtained

before the deadline for pre-trial fact discovery to be completed, currently set for ~~September 17,~~ <span style="color:red">November 25, 2019.</span>

~~2019.~~

**IN CONFORMITY WITH ARTICLE 3 OF THE CONVENTION, THE UNDERSIGNED APPLICANT HAS THE HONOR TO SUBMIT THE FOLLOWING LETTER REQUEST:**

**5.a.  Requesting Judicial Authority**

> United States District Court for the Southern District of New York
> 500 Pearl Street
> New York, NY 10007-1312
> United States of America

**5.b.  To The Competent Authority Of**

> England, United Kingdom

**5.c.  Name Of The Case And Any Identifying Number**

> *Pearlstein v. Blackberry Limited, et al.*, No. 2:13-cv-07060 (CM) (KHP) (S.D.N.Y.)

**6.  Names And Addresses Of The Parties And Their Representatives**

> **a.** Lead Counsel for Lead Plaintiffs Todd Cox and Mary Dinzik and the Class:

> KAHN SWICK & FOTI, LLC
> Kim E. Miller
> J. Ryan Lopatka
> 250 Park Avenue, Suite 2040
> New York, NY 10177

-and-

Lewis S. Kahn
1100 Poydras Street, Suite 3200
New Orleans, LA 70163

<u>Counsel for Additional Plaintiffs Yong M. Cho, Batuhan Ulug and the Class</u>

BROWER PIVEN
 A Professional Corporation
David A.P. Brower
136 Madison Avenue, 5th Floor
New York, NY 10016

**b.** Counsel for Defendants BlackBerry Limited, Thorsten Heins, Brian Bidulka
<u>and Steve Zipperstein</u>

MORRISON & FOERSTER LLP
Dan Marmalefsky
707 Wilshire Boulevard
Los Angeles, California 90017

-and-

Joel C. Haims
James J. Beha II
250 West 55th Street
New York, New York 10019

**7.a.    Nature Of The Proceedings**

This is a civil Action pending in the United States District Court for the Southern District

of New York under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange

Act") and Rule 10b-5 promulgated thereunder.  15 U.S.C. §§78j(b), 78t(a); 17 C.F.R. §240.10b-

5. ~~Plaintiffs have survived Defendants' motions to dismiss and the Action is currently at the pre-
trial fact discovery stage until September 17, 2019.~~ Some of the Plaintiffs' claims survived Defendants' motion to dismiss.  The parties are actively conducting fact discovery on the surviving claims in anticipation of trial.

**7.b.    Summary Of The Claims**

Plaintiffs are alleged purchasers, or assignees of purchasers, of BlackBerry common

4

stock.[1] Plaintiffs allegedly suffered significant investment losses in connection with Defendants' alleged misrepresentations and omissions concerning the purported success of BlackBerry 10 Devices (BlackBerry Z10 and Q10 smartphones), BlackBerry's recognition of revenue and BlackBerry's compliance with Generally Accepted Accounting Principles.

Plaintiffs allege that the truth regarding these alleged misrepresentations began to emerge on June 28, 2013, when, prior to the opening of the market, BlackBerry filed its 1st quarter fiscal 2014 financial report for the period ending June 1, 2013, wherein the Company posted a loss for the quarter, revealed it shipped 2.7 million new BlackBerry 10 Devices, and disclosed that BlackBerry 10 Devices made up 40% of the Company's total smartphone shipments in the period. Plaintiffs allege that these were discouraging figures given that this was the first full quarter that the new smartphones were on sale. Plaintiffs also allege that the market reacted swiftly and negatively to the disclosure, which Plaintiffs allege partially revealed the truth behind Defendants' alleged misrepresentations regarding BlackBerry 10 Devices.

As these revelations came to light, however, Plaintiffs allege Defendants continued to mislead the market regarding BlackBerry 10 Devices and to downplay the significance of the first quarter fiscal 2014 results. Finally, on September 20, 2013, the last day of the Class Period (March 28, 2013 to September 20, 2013), Plaintiffs allege that the full truth emerged when BlackBerry issued a press release announcing its preliminary second quarter fiscal 2014 results. BlackBerry disclosed that it expected to report a primarily non-cash, pre-tax charge against inventory and supply commitments in the second quarter of approximately $930 million to $960 million, which was primarily attributable to BlackBerry 10 Devices. Plaintiffs seek to recover

---

[1] The factual assertions set forth herein are Plaintiffs' allegations, which the Defendants dispute, and do not represent the Court's factual findings.

investment losses they allegedly suffered as a result of Defendants' alleged fraud as described above.

**7.c.    Summary Of Defenses Or Counterclaims**

Defendants have denied Plaintiffs' allegations and have asserted numerous affirmative defenses, including, *inter alia*: failure to state a claim; failure to allege a misstatement; the applicable statutes of limitations and/or repose bar the claims; Plaintiffs' damages, if any, resulted from acts of third parties; Plaintiffs cannot show damages; Plaintiffs' claims are barred because the matters alleged to be misleading were publicly disclosed; Plaintiffs have failed to plead justifiable reliance; the presumption of reliance does not apply; the safe harbor protects Defendants' forward-looking statements; the alleged misstatements fall within the "bespeaks caution" doctrine; Plaintiffs have failed to allege materiality; there is a lack of impact on market price; and Plaintiffs' claims are barred by the Defendants' right to petition the government for redress.  There are no counterclaims.

Plaintiffs and Defendants currently are engaged in pre-trial discovery, where the parties exchange information concerning their claims and defenses. The Court accordingly has not ~~finally~~ addressed the merits of Plaintiffs' allegations.

**7.d.    Other Necessary Information Or Documents**

According to BlackBerry's counsel, upon termination of his employment, Mr. Douglas entered into a separation agreement with BlackBerry UK Limited, a wholly-owned subsidiary of BlackBerry, a company incorporated and registered in England and Wales.  ~~This agreement was entered into months after this Action was initiated.  His agreement addresses giving relevant evidence in connection with "any … investigation, regulatory proceedings, and threatened or actual litigation," as follows:~~ His agreement obliges him to cooperate with BlackBerry in connection with litigation insofar as it states:

On the request of the Company or any Group Company, the Employee will assist in any internal investigation, regulatory proceedings, and threatened or actual litigation where the Employee has in his/her possession or knowledge any facts or other matters which the Company or any Group Company reasonably considers is relevant to such investigation, proceedings or litigation (including but not limited to giving witness statements/affidavits, meeting with legal and other professional advisors and attending any hearing and giving evidence).

The email from BlackBerry's counsel referencing the agreement is attached as Exhibit A.

The transcript excerpts from the June 27, 2019 hearing before The Honorable Katharine H. Parker ~~during which BlackBerry's counsel stated that he would not oppose the deposition of Mr. Douglas and during which the Court heard arguments relevant to the~~ pertaining to the proposed deposition of Mr. Douglas is attached as Exhibit B hereto (and references to it are to "Tr._"). *See* Tr. 36:25-37:19; Tr. 39:1-9; 39:12-19. The Confidentiality Agreement and Stipulated Protective Order entered in this Action by the U.S. District Court for the Southern District of New York on June 19, 2018 is attached as Exhibit C hereto. The Second Consolidated Amended Class Action Complaint for Violations of Federal Securities Laws is attached as Exhibit D hereto. The Decision and Order Denying Defendants' Motion to Dismiss the Second Amended Complaint and Request for Oral Argument on the Motion is attached as Exhibit E hereto.

**8.a.    Evidence To Be Obtained Or Other Judicial Act To Be Performed**

It is requested that the appropriate judicial authority of the United Kingdom compel the testimony of Mr. Douglas, under oath, on the following topics, of which Plaintiffs claim that he has knowledge according to Plaintiffs' investigation to date, for the period of January 1, 2012 to December 31, 2013, limited to product marketing, commercial strategy and planning, budget planning, strategic pricing, marketing analytics, and competitive intelligence in connection with the launch, sales and marketing of the BlackBerry 10 Devices in Europe, Canada and the United States:

1. Information on BlackBerry's budgets for BlackBerry 10 Devices.

2. Information regarding BlackBerry's allocation of the marketing budgets for BlackBerry 10 Devices.

3. Information regarding BlackBerry's marketing spend processes for BlackBerry 10 Devices.

4. Information on BlackBerry's commercial strategies for BlackBerry 10 Devices.

5. Information regarding ~~global~~ smartphone handset marketing trends.

6. Information regarding ~~global~~ sales and marketing trends for BlackBerry 10 Devices.

7. Information regarding the commercial success, or lack thereof, related to the sales of BlackBerry 10 Devices.

8. Information regarding the commercial viability, or lack thereof, related to the sales of BlackBerry 10 Devices.

9. ~~Information regarding the commercial success, or lack thereof, related to the sales of the BlackBerry PlayBook.~~

10. ~~Information regarding the commercial liability, or lack thereof, related to the sales of the BlackBerry PlayBook.~~

11. Information related to any issues with respect to inventory levels for BlackBerry 10 Devices.

12. Information on ~~global~~ smartphone handset market shares.

13. Information on market share for BlackBerry 10 Devices.

14. Information on smartphone handset sales trends.

15. Information on sales and revenue targets for BlackBerry 10 Devices.

16. Information related to ~~global~~ smartphone handset return rates.

17. Information related to return rates for BlackBerry 10 Devices.

18. Information related to sell-through revenue recognition for BlackBerry 10 Devices.

19. Information related to sell-in revenue recognition for BlackBerry 10 Devices.

20.     Information relating to ~~global~~ smartphone handset remorse returns.

21.     Information related to remorse returns of BlackBerry 10 Devices.

22.     Information related to defect returns of BlackBerry 10 Devices.

23.     Information related to returns based on dissatisfaction, and reasons thereto, of BlackBerry 10 Devices.

24.     Information regarding BlackBerry's revenue recognition policy(ies), and the application(s) thereof.

25.     Information regarding ~~global~~ smartphone handset pricing.

26.     Information regarding pricing of BlackBerry 10 Devices.

27.     Information regarding discounting of BlackBerry 10 Devices.

28.     Information relating to BlackBerry's concessions and other inducements provided to carriers and distributors of BlackBerry 10 Devices.

29.     Information relating to agreements between BlackBerry and carriers and distributors relating to sales and marketing of BlackBerry 10 Devices.

30.     Information regarding BlackBerry's returns on investment with respect to BlackBerry 10 Devices.

31.     Information regarding the knowledge of BlackBerry senior management of topics 1-30 above.

32.     Information regarding the existence and location of documents evidencing the matters covered in topics 1-30 above.

**8.b.     Purpose Of The Evidence Or Judicial Act Sought**

Plaintiffs claim that Mr. Douglas' deposition is necessary in order to formally obtain evidence for trial in support of the claims asserted by Plaintiffs and the class in the lawsuit, including for establishing "scienter" – that Defendants acted with the required state of mind under Section 10(b) of the Exchange Act, in that they had knowledge of facts or access to information contradicting their public statements during the Class Period, including regarding the

the success/failure of the ~~failed~~ worldwide launch of the BlackBerry 10 Devices, and that the statements and omissions were false when made. ~~While this~~ Court expresses no view at this time as to the merits or otherwise raised by the parties in the above-captioned case~~,~~; however, the evidence sought is it believes the evidence sought here relevant to Plaintiffs' claims under the relevance standard of the Federal Rules of Civil Procedure ~~will be relevant to and either probative or not of material facts relevant to the parties' claims~~ and probative regarding a material element of Plaintiffs' claims against Defendants. ~~defenses for use in trial in respect to those issues.~~

~~The Court has also heard arguments from counsel on both sides regarding the deposition of Mr. Douglas, and BlackBerry's counsel has stated on the record that he does not oppose Mr. Douglas being deposed.  *See* Tr. 39:1-9 (noting that BlackBerry does not object to a deposition). Finally, during the hearing, the parties and the Court discussed the basis on which the English Courts operate, and the basis of this Request.  *See* Tr. 36:25-37:19; 39:12-19.~~

Mr. Douglas resides in the United Kingdom and, according to his LinkedIn profile, served as a Business Management Director at BlackBerry from December 2005 to 2008 in the United Kingdom, the Director of EMEA Product Management from 2008 to April 2011 in the United Kingdom, and the Senior Director of EMEA Regional Planning & Operations from April 2011 to June 2012 in the United Kingdom, after which time he served as BlackBerry's Vice President of Global Commercial Strategy from May 2012 to April 2014.  In his Vice President role, he reported to the Chief Market Officer and his global duties included, *inter alia*, product marketing, commercial strategy and planning, budget planning, strategic pricing, marketing analytics, and competitive intelligence.  Defendants' counsel has also confirmed that Mr. Douglas was "a marketing person with oversight for marketing in Europe."  Tr. at 30:24-31:1. Further, BlackBerry's former Chief Marketing Officer, Frank Boulben, during his May 3, 2019 deposition testified ~~made clear~~ that Mr. Douglas has ~~unique~~ knowledge regarding BlackBerry's ~~revenue recognition accounting and~~ commercial strategy.  *See* Transcript from the Deposition of Frank

10

Boulben (attached as Exhibit F hereto) at 70:23-25 ("Commercial strategy was led by . . . William Douglas. He had multiple responsibilities"); 71:2-12 (stating that Mr. Douglas was responsible for understanding marketing trends in different countries, analyzing return on investment, and allocating the marketing budget); 202:11-13 ("Typically on [accounting] matters I would follow Will['s] recommendation, as Will was working closely with our finance organization.").

Further, Plaintiffs contend, according to Plaintiffs' review of documents to date, that Mr. Douglas was in a position to have direct knowledge of the details of BlackBerry 10 Devices' global marketing, inventory levels, sales, and returns and accounting, which is evidenced by, *inter alia*, his responsibilities and communications regarding marketing, pricing, discounting, inventory and revenue recognition accounting. Plaintiffs believe that the sample of documents described below are exemplary of Mr. Douglas's frequent exchanges regarding the limited topics Plaintiffs seek to have Mr. Douglas testify about and Plaintiffs believe that Mr. Douglas can reasonably be expected to have the evidence on the topics mentioned.  Plaintiffs also believe that the relevant testimony from Mr. Douglas, including the marketing, pricing, discounting, and revenue recognition accounting goes directly to Defendants' knowledge of facts or access to information contradicting their public statements, and Plaintiffs believe the testimony is necessary for the trial that will occur.

According to Plaintiffs, an email from January 14, 2013 confirms that Mr. Douglas sent out weekly updates on commercial strategy including, *inter alia*, quantity of approved carrier commercial offers, quota and budget discussions, marketing efficiencies, including country-specific marketing, and regional business reviews with sales and marketing teams.  *See* BBPearlstein_00301290-91 (Exhibit G); *see also* BBPearlstein_00302200-01 (Exhibit H)

(emails from March 1 to March 4, 2013 regarding first quarter 2013 budget; Mr. Douglas: "we are basically out of money now in Q1" and "We have basically no money for business cases this quarter and the sales teams are largely behind quota so they will be pushing business cases."); BBPearlstein_00328943-45 (Exhibit I) (emails from April 24, 2013 regarding marketing spend breakdowns by country; Mr. Douglas is named as the "functional owner" of actions to "operationalize on 8-9 countries" and define the process; Mr. Douglas is named the lead on marketing budgeting and reporting process).

Plaintiffs contend that emails from February 1, 2013 evidence that Mr. Douglas was in the center of tracking market share. *See* BBPearlstein_00254377 (Exhibit J) (Mr. Douglas: "In the numbers I'm showing we NEED the kind of numbers we are seeing from the UK in all our strong markets from day one just to hit my numbers . . . "; "I really think we need to think twice about turning our attention to opex before we have a careful think strategy about whether FY14 is an investment year (lower EPS thinking and drive share) or not."); BBPearlstein_00121730-33 (Exhibit K) (emails from February 10, 2019 regarding market share scenarios; Mr. Douglas: "40M is an aggressive plan. 41.7M-42M is a top end stretch we should work toward. 44M is out of reach.").

Plaintiffs further contend that, based on other emails, Mr. Douglas had access to information on return rates, market analysis for every country that was being launched in certain quarters, information on pricing, subsidies and market share, and was person who advised on revenue recognition and accounting. ~~*See* BBPearlstein_00118843-44 (Exhibit L) (emails from February 26, 2013 to March 4, 2013 stating that Mr. Douglas has requested return rates be included in weekly updates to him); BBPearlstein_00557506-08 (Exhibit M) (emails from April 11 to April 12, 2013 regarding return rates; requesting Mr. Douglas to look at "global trends" for~~

~~remorse returns, discussing device resetting problems)~~; BBPearlstein_00592496-98 (Exhibit N) (emails from February 1, 2013 on subsidies, pricing and revenue recognition); ~~BBPearlstein_00736568-69 (Exhibit O) (emails from February 18, 2013; Mr. Douglas: "For PFS we were at extreme hype and launch levels. It would come down anyway . . ."); BBPearlstein_00131819-20 (Exhibit P) (emails from February 26 to 28, 2013; Mr. Douglas: "the targets are a real stretch"); BBPearlstein_01314637-38 (Exhibit Q) (emails from February 22 to March 1, 2013; performance tracker summarizing market share, prepay share, contract price and smartphone share; showing market share decreasing in the UK);~~ BBPearlstein_00036530 (Exhibit R) (emails from March 8, 2013 regarding UK weekly performance tracker for week 9, UK market share continuing to decrease in the UK); ~~BBPearlstein_00302560 (Exhibit S) (emails from April 10, 2013; Mr. Douglas: "As expected, Q2 bottom up view came in well below target . . . This is a legitimate red flag . . . ");~~ BBPearlstein_00302521-26 (Exhibit T) (emails from April 9 to April 10, 2013 regarding strategic decision and pricing; Mr. Douglas: "drop in price will kill us and impact the stock.")~~; BBPearlstein_00178672-73 (Exhibit U) (emails from April 11, 2013 on proper accounting, avoiding sell through accounting, "which would be a disaster," "stimulating demand in the US market" and avoiding "early price actions."); BBPearlstein_00817797-98 (Exhibit V) (emails from April 12, 2013; Mr. Douglas: ". . . if we talk about Canada they will ask about UK, US, UAE, FR . . . and if we answer, it's not as good . . .").~~

Thus, it is necessary for the purposes of justice and for the due determination of the matters in dispute between the parties that you cause the following witness, who upon information and belief is resident within your jurisdiction, to be examined on the topics of relevance to this litigation.

**9.** **Identity And Address Of Any Person To Be Examined**

William Douglas
JLL
30 Warwick Street
London W1B 5NH
United Kingdom

**10.** **Questions To Be Put To The Person To Be Examined Or Statement Of The Subject-Matter About Which They Are To Be Examined**

*See* topics listed in Section 8.a. above.

**11.** **Documents Or Other Property To Be Inspected**

None.

**12.** **Any Requirements That The Evidence Be Given Under Oath And Any Special Form To Be Used**

This Court requests that testimony be taken under oath or affirmation. Pursuant to United States Federal Rule of Evidence 603, this Court requests that the witness be required to declare that he will testify truthfully, by oath or affirmation administered in a form calculated to awaken his conscience and impress his mind with the duty to do so.

**13.** **Special Methods Or Procedure To Be Followed**

The deposition shall take place in London, England at a location agreed to by Mr. Douglas, Plaintiffs and Defendants. The examination shall be taken under the Federal Rules of Civil Procedure of the United States, except to the extent such procedure is incompatible with the internal laws of the United Kingdom. This Court requests: (1) that the examination be taken orally; (2) that the examination be taken before a commercial stenographer and videographer selected by Plaintiffs; (3) that the stenographer be permitted to record the examination by audio means; (4) that the stenographer be allowed to record a verbatim transcript of the examination; (5) that counsel for Plaintiffs and counsel for Defendants be notified as soon as possible of the

date, time, and place of the examination, along with any other pertinent information, including what authority has been appointed to preside over the deposition; (6) that counsel for Plaintiffs and counsel for Defendants be permitted to question the witness regarding the topics described in this Request; (7) that 7.0 hours be allotted for the examination; (8) that the examination be closed to the public; and (9) that the witness be examined as soon as possible.

This Court further requests that (1) counsel for the parties and the witness be permitted to object to the form of questions just as they would in a deposition taken in the United States pursuant to the Federal Rules of Civil Procedure; (2) any such objections be recorded by the stenographer; and (3) to the extent reasonably necessary to avoid the disclosure of information protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privilege, counsel be permitted to direct the witness not to answer.

Pursuant to the Protective Order, the questioning of the witness, the witness's testimony, and any transcript or audio recording of the questioning and testimony, will be designated as "Confidential" in accordance with the Stipulation and Protective Order.

If the evidence cannot be taken according to some or all of the procedures described above, this Court requests that it be taken in such manner as provided by the applicable law of the United Kingdom for the formal taking of testimonial evidence. When required, this Court will provide similar assistance as requested herein to the appropriate judicial authorities of the United Kingdom.

## 14. Request For Notification Of The Time And Place For The Execution Of The Request And Identity And Address Of Any Person To Be Notified

Please notify the counsel listed in Section 6 regarding the time and place for the execution of the Request.

**15.     Request For Attendance Or Participation Of Judicial Personnel**

No attendance of judicial personnel is requested.  Pursuant to the Federal Rules of Civil Procedure, depositions may be taken without involvement of judicial personnel.

**16.     Specification Of Privilege Or Duty To Refuse To Give Evidence Under The Law Of The State Of Origin**

Under the laws of the United States, a witness has a privilege to refuse to give evidence if to do so would disclose a confidential communication between the witness and his attorney that was communicated specifically for the purpose of obtaining legal advice and which privilege has not been waived. United States law also recognizes a privilege against self-incrimination. Certain limited immunities are also recognized outside the strict definition of privilege, such as the limited protection of work product created by attorneys during or in anticipation of litigation.

**17.     Fees and Costs**

Should there be any costs associated with the service herein, including the required fees and costs incurred in executing this letter of request, in serving process to compel the appearance of the witness and his attendance, and in preparing a transcript of the proceedings, pursuant to Article 26 of the Hague Convention, it will be the responsibility of the attorneys for Plaintiffs to reimburse the judicial authorities of the United Kingdom for any costs and fees.  Please direct any correspondence or communications concerning costs to Plaintiffs' counsel listed in Section 6.

<u>**RECIPROCITY**</u>

In the furtherance of justice and by the proper and usual process of this court, the United States District Court for the Southern District of New York assures the judicial authorities of the United Kingdom that it is willing to provide similar cooperation and assistance to the judicial

authorities of the United Kingdom in the event that the United Kingdom requests similar assistance.

## <u>CONCLUSION</u>

This Court, in the spirit of comity and reciprocity, hereby requests international judicial assistance from the appropriate judicial authority of the United Kingdom to obtain the oral examination (deposition), under oath, of Mr. Douglas, in London, England, as described herein.

Please accept the assurance of our highest esteem.

**DATE OF REQUEST:** ~~July ___, 2019~~

_____
THE HONORABLE KATHARINE H. PARKER
United States Magistrate Judge
United States District Court
for the Southern District of New York