**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------- x

MARVIN PEARLSTEIN, Individually And On
Behalf of All Others Similarly Situated,

       Plaintiff,

   -against-

BLACKBERRY LIMITED (formerly known as
RESEARCH IN MOTION LIMITED),
THORSTEN HEINS, BRIAN BIDULKA, and
STEVE ZIPPERSTEIN,

       Defendants.

-------------------------------------------------------------------- x

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

**ECF CASE**

No. 13 Civ. 7060 (CM) (KHP)
(Consolidated)

Oral Argument Requested

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION *IN LIMINE***
**NO. 16 TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING**
**THE DRAFT APPLIED VALUE POWERPOINT**

MORRISON & FOERSTER LLP

Dan Marmalefsky (admitted *pro hac vice*)
707 Wilshire Boulevard
Los Angeles, California 90017
(213) 892-5200

Jamie A. Levitt
James J. Beha II
Christina L. Golden Ademola
250 West 55th Street
New York, New York 10019
(212) 468-8000

Jordan Eth (admitted *pro hac vice*)
Christin J. Hill (admitted *pro hac vice*)
425 Market Street
San Francisco, California 94105
(415) 268-7000

Erik J. Olson (admitted *pro hac vice*)
755 Page Mill Road
Palo Alto, California 94304
(650) 813-5600

*Attorneys for Defendants*

**INTRODUCTION**

Defendants BlackBerry Limited, Thorsten Heins, Brian Bidulka, and Steve Zipperstein submit this Memorandum of Law in support of their Motion *in limine* No. 16 to preclude any and all evidence, references to evidence, testimony, or argument relating to a draft 57-page PowerPoint presentation titled "BlackBerry Forecasting Analysis" prepared by a third-party consulting firm Applied Value, dated July 3, 2013 (the "Applied Value Presentation") (PX-552). Defendants move to exclude the Applied Value Presentation and all references to the Applied Value Presentation because it is irrelevant, any conceivable probative value is substantially outweighed by the danger of unfair prejudice to Defendants from its admission, it constitutes hearsay and contains multiple layers of hearsay for which no exceptions apply, and because there is no admissible evidence authenticating the Applied Value Presentation.

**ARGUMENT**

PX-552 is a July 3, 2013 email from Ryan Huff of consulting firm Applied Value LLC to BlackBerry employees Stuart Portz and Greg Spira, attaching the draft Applied Value Presentation.  (Ex. 1, PX-552.)[1]  Mr. Huff's email states:  "Stuart and Greg, Please see the attached 99% complete deck from our forecasting analysis study.  Our meeting with Kristian got canceled today so we have not finalized it with him."  (Ex. 1.)  We presume Kristian is then-BlackBerry COO Kristian Tear, to whom Mr. Portz and Mr. Spira reported.  Plaintiffs did not depose Mr. Portz, Mr. Spira, or Mr. Tear and none of them are listed on any witness list.

The Applied Value Presentation—which Mr. Huff of Applied Value referred to as "our forecasting analysis study"—on its face is labeled as a draft analysis conducted by Applied

---

[1]      References to "Ex. __" refer to exhibits to the Declaration of Christina L. Golden Ademola filed contemporaneously herewith.

Value that had not been "finalized with" Mr. Tear.  There is no indication that any BlackBerry

employee reviewed or approved Applied Value's draft analysis, nor any identification of the

sources for the information reflected in the report, much less the foundation for any information

provided by the unidentified sources.  The draft itself, entitled "BlackBerry Forecasting

Accuracy – Applied Value Analysis Confidential – draft" provides Applied Value's analysis of

BlackBerry's forecasting of future product demand.

The Court should exclude the presentation for numerous independently sufficient

reasons:

*First*, there is no admissible evidence authenticating the Applied Value Presentation in

the record.  No witness with personal knowledge of the Applied Value Presentation testified by

deposition in the case.  Plaintiffs questioned two witnesses—Mr. Bidulka and EY partner Lisa

Portnoy—about the document at their depositions.  Neither of them recognized or knew anything

about the Applied Value Presentation.  (Ex. 2 at 112:21-119:5; Ex. 3 at 281:12-283:20.)  Nor do

we expect any witness with personal knowledge of the Applied Value Presentation to testify at

trial to authenticate the presentation, explain the context in which it was prepared, or identify the

factual basis for the statements in the presentation.  While Plaintiffs included Mr. Huff on their

witness list, he should not be permitted to testify for the reasons set forth in Defendants' Motion

*in Limine* No. 6.

Second, the presentation constitutes hearsay and contains numerous instances of multiple

layers of hearsay, none of which is subject to any exception and, thus, should be excluded under

Rule 802.  Mr. Huff's cover email makes clear that the draft presentation reflects Applied

Value's analysis.  It is not a BlackBerry document.  Thus, it is not a party admission nor is it a

BlackBerry business record.  Nor is it admissible for any non-hearsay purpose.  There is no

evidence that any of the Individual Defendants or anyone else whose state of mind could be attributed to BlackBerry saw the document.  Mr. Huff's cover email affirmatively states that Mr. Tear did <u>not</u> see or sign-off on the presentation.  The only BlackBerry employees who may have seen the document are Mr. Portz and Mr. Spira.  But their having seen Applied Value's draft presentation is not relevant to any issue in the case.

Third, the Applied Value Presentation does not identify anyone its authors interviewed, what statements it attributes to any such unidentified person, or any basis that unidentified person would have for any information he provided.

Fourth, the Applied Value Presentation covers time periods and products not at issue in this litigation.  For example, Slide 11 examines the costs of forecasting over nine quarters—dating back to Q1 FY 2012 (which began in March 2011).  The slide reflects that the forecasting costs were lowest in the last period for which data is supplied—Q4 2013—which ended on March 2, 2013, before the class period in this lawsuit began.  Slide 12 similarly states a conclusion about channel stuffing, based on events in August 2012—again well before the relevant period.

Finally, the danger of unfair prejudice from admission of the Presentation substantially outweighs any conceivable probative value that the Applied Value Presentation might have.  *See* FRE 403.  The draft presentation states that Applied Value's analysis "indicates high percentage of error in forecasting" and that one of the "costs due to poor forecasting" is "stuffing the sales channel."  (Ex. 1 at BBPearlstein_757749.)  Despite the absence of any foundation for these statements or any testimony about their basis, there can be no doubt that Plaintiffs intend to use these unsupported hearsay statements in a draft document prepared by a third-party to argue that BlackBerry knew it was shipping excessive numbers of Z10 devices to customers, and

3

improperly recognizing the revenue upon shipment.  Indeed, Plaintiffs' accounting expert

repeatedly cites the Applied Value Presentation to support his opinion that BlackBerry's revenue

accounting violated GAAP.  (*See* Ex. 4 at ¶¶ 192, 199, 274.)  And Plaintiffs' have designated

lengthy portions of the deposition of Ms. Portnoy—who had no knowledge about the Applied

Value Presentation—that amounts to little more than Plaintiffs' counsel reading the document

into the record, asking a question that assumes that the hearsay statements in the presentation are

facts, and Ms. Portnoy responding by confirming that she has no personal knowledge of the

Applied Value Presentation nor any admissible testimony to offer about it.  For example,

Plaintiffs have designated the following:

> Q.   Portnoy Exhibit 6 is . . . entitled "BlackBerry Forecasting Accuracy Applied Value Analysis Confidential - Draft."  Have you ever heard of the firm called Applied Value Analysis?
>
> A.   I have not.
>
> Q.   Okay. If you go to page 12 -- and, yes, this says "Draft 7-3-2013."  And under the first point there, stuffing the channels, it says "BlackBerry is stuffing the sales channel, and volume is being forced on customers when they really don't need it."  "Sell-through starts from August 2012 show that 50 percent of units had not moved within 30 days."  Were you aware of that information?
>
> A.   That was -- that information precedes the time I was involved with the company. So, no, and I don't know what that actually relates to.
>
> Q.   Okay. And you hadn't seen this report before; right?
>
> A.   No, I had not.
>
> Q.   Could you go to page 46?  Under "Top Feedback From Interviewed Staff," first one, "The sales incentive structure is fundamentally broken and promotes channel stuffing; switching to sell-through accounting would [ ]alleviate this problem."  . . .  Were you aware BlackBerry employees were of this view in or about July of 2013? . . .
>
> [Objection]
>
> A.   I was not aware of that statement, and I can't assess from this who they actually interviewed.

4

(Ex. 3 at 138:11-139:22.)

Because no witness with personal knowledge of the Applied Value Presentation will testify, any testimony at trial about the Applied Value Presentation will inevitably follow the same pattern: Plaintiffs' counsel reading inadmissible hearsay into the record, asking questions that presume that the hearsay is true, and the witness offering no relevant, probative, or otherwise admissible testimony in response.  Such presentation of unsupported snippets from the Applied Value Presentation can only confuse the jury and prejudice Defendants.

## CONCLUSION

For all the reasons discussed herein, Defendants respectfully request that the Court grant their *Motion in Limine* No. 16 and exclude evidence and argument of the draft Applied Value Presentation.

ny-2335335

Dated:  March 7, 2022
        New York, New York

_____/s/ Christina L. Golden Ademola_

MORRISON & FOERSTER LLP

Dan Marmalefsky (admitted *pro hac vice*)
707 Wilshire Boulevard
Los Angeles, California 90017
(213) 892-5200

Jamie A. Levitt
James J. Beha II
Christina L. Golden Ademola
250 West 55th Street
New York, New York 10019
(212) 468-8000

Jordan Eth (admitted *pro hac vice*)
Christin J. Hill (admitted *pro hac vice*)
425 Market Street
San Francisco, California 94105
(415) 268-7000

Erik J. Olson (admitted *pro hac vice*)
755 Page Mill Road
Palo Alto, California 94304
(650) 813-5600

*Attorneys for Defendants*

6