UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

MARVIN PEARLSTEIN, Individually and on
Behalf of All Others Similarly Situated,

          Plaintiffs,

     -against-

BLACKBERRY et al.,

          Defendants.

------------------------------------------------------------X

13 civ. 7060 (KHP)

MEMORANDUM FROM THE COURT TO TRIAL COUNSEL

McMahon, J.:

I have some information that I thought it prudent to share with you at this point.

**In Limine Motions**

I spent yesterday reading the briefs filed on the ten motions in limine that were filed by plaintiffs and the twenty-nine motions in limine that were filed by defendants. I expect responsive papers, in the form of short briefs, to be filed by Friday at noon at the latest; please make sure to deliver a hard copy of those papers in my chambers by noon Friday, as well as filing on ECF. Assuming the papers come in on time, you will have your rulings on these evidentiary matters on Friday night. As is my custom with in limine rulings, they will be brief and to the point. The rulings are final; I will not entertain reargument at the final pretrial conference on Monday or at any time thereafter. And I will accept no more *in limine* motions so don't bother making any; they will be summarily denied as untimely.

Some things you should know right now. For example, I can tell you that Defendants' Motion No. 21 will be denied because it is not a proper motion *in limine* – it seeks an adjudication of non-liability rather than being addressed to the admissibility of evidence. As to certain others – specifically Defendants' Motions No. 22 and 23 – until Defendants identify each and every bit of designated deposition testimony that falls within the parameters of Motion No. 22, or each and every individual document that they seek to preclude pursuant to Motion No. 23, I cannot possibly make any sort of ruling, and I will not make a general ruling that leaves room for argument during the trial, which wastes the jury's time. I can also tell you that no witness whose identity was not formally disclosed prior to January 31, 2020 will be allowed to testify – both sides apparently hope to offer testimony from such witnesses -- and that the contents of the expert reports as limited by

the *Daubert* rulings constrain the testimony that expert witnesses will be allowed to give. If knowing that cuts down on the need to file a response, the better for your respective clients.

### *Final Pre-Trial Conference*

Let me set out the parameters of next week's conference at some length, so no one will be surprised.

We will commence at 9:30 AM on Monday. First we will go over the list of witnesses – starting with plaintiffs' witnesses, then defendants' witnesses. As I think I told you, at a civil trial I only expect a witness to testify once, even if both sides are calling that witness. Counsel must be prepared to tell me what each witness will be called to testify about and how long direct is expected to take. While I will consider your estimates, and any estimates about cross examination, in setting time limits, I have already decided that I will allocate a precise number of days for this trial, and I will be dividing time accordingly. I will make those calculations and give you your time limits after the conference.

After that we will turn to the exhibits. To the extent that exhibits have not been admitted or precluded in the *in limine* rulings (a very small subset of your overly large proposed exhibit list), we will go through them exhibit by exhibit. Those to which no objection is lodged will simply be admitted. Those to which objection has been lodged will be the subject of brief argument and an immediate ruling on their admissibility. I would strongly suggest that, between now and Monday, you pare your lists to include only those exhibits that you will be discussing with the jury during your closing argument. Not everything on which experts rely in formulating opinions needs to be admitted into evidence; it simply needs to be available for use on cross examination. Be advised that expert reports will not be admitted into evidence; they may be used for impeachment or refreshment of recollection, but the expert testimony will come from the mouths of the witnesses. Were this a bench trial it would be otherwise.

Then we will proceed to the deposition designations of witnesses other than party witnesses (whose deposition testimony is admissible for any purpose). I will rule on each objection to a designation so that we know precisely what deposition testimony is coming in as evidence on someone's case in chief (not for impeachment on cross). To the extent that there are objections to questions in the deposition testimony of witnesses who are not being called to testify live, I will rule on those objections so that appropriate transcripts can be prepared in advance of jury selection. Obviously, you will have to sit there while I read the designated testimony in light of the objection. Please understand that time it takes to read or play deposition testimony (including dealing with any technical glitches) will count toward your time for presenting your case.

Given the number of witnesses you propose to call, the number of exhibits you have designated and the amount of deposition testimony you are designating, it appears that this conference will take a very long time indeed. We will begin Monday morning. We will take a short break for lunch. I will have to let the court reporter go at 6 PM, but we will revert at that point to recording the session, and we will obtain transcript of the recording when the court reporters are able to get to it. We will take no more than one half hour for a break at 6 PM; then we will reconvene. If we are not done by 10 PM, you will be expected to be back in my courtroom the next

morning at 9:30 AM. However, I have other matters on my calendar on Tuesday, so you will be interwoven with the rest of my calendar (only Monday belongs entirely to you). If we don't finish on Tuesday by 6 PM, we will continue on Wednesday. In other words, you should consider yourselves as being on trial starting on Monday, March 14 and we proceed from day to day until we conclude all of these preliminary matters. And they will be concluded. If some trial counsel have other obligations they cannot change, someone else must step in to replace them.

I strongly advise you to spend the time between now and next Monday thinking about how you are really going to try your case in the 15 total trial days, commencing on Friday, April 8 and ending on Tuesday, April 26, that I will allow you. You can and should prune your witness and your exhibit lists to the people you are really going to call and the exhibits you are really going to discuss and emphasize with the jurors ("key exhibits," which you will be expected to designate in advance of the trial). You should be able to get down to a reasonable number of witnesses and amount of deposition testimony. This is actually not such a complicated case; it can easily be tried in the number of days I am allotting for opening statements and the introduction of evidence.

Trial days will be April 8, 11, 12, 13, 14 (the 13th and 14th we will only work until 4 PM), 18, 19, 20, 21, 22, 25, 26 and 27. You will be expected to deliver your closing argument on the morning of Thursday, April 27 and I expect to charge that afternoon. We will take a special verdict on a statement by statement and defendant by defendant basis.

### *Issues for Trial*

As I held in denying defendants' motion for summary judgment: "The central triable issue is the issue of whether Blackberry misrepresented the success and profitability of its BB10 products to the investing public." The Second Circuit held, in affirming Judge Griesa, that mere misjudgments about accounting methodology, without more, would not be sufficient to support a verdict for Plaintiff. That does not make the accounting issue irrelevant, but it does render them non-dispositive. The jury will be advised that they must return a defendants' verdict if all plaintiffs prove is that "sell by" accounting would have better explained Blackberry's financial situation to the investing public.

Now that the court has reviewed the challenged public statements against more of the evidence, it has become apparent that this really is, for the most part, a classic securities fraud case. It involves not so much *Omicron* issues (statement of opinion that are, in certain circumstances, actionable) as alleged misrepresentations or omissions of fact that were contradicted by what Blackberry's principals allegedly knew to be true – issues that are in the case as a result of Plaintiffs' discovery of additional evidence after the dismissal of their original complaint, which is one of the bases on which Judge Griesa granted them leave to amend.

### *Settlement Discussions*

I do not know whether the parties are interested in pursuing settlement. I never involve myself in settlement discussions. My senior law clerk, Jim O'Neill – who serves rather more like a law secretary in the New York State Supreme Court – is available to conduct settlement discussions; he has achieved remarkable success at settling extremely complex, bit dollar cases.

He will be available while you are here next week; and while I will not halt proceedings to accommodate settlement discussions, if you have an interest in such discussions, we can proceed on two tracks simultaneously. If you have no interest in settlement, so be it. I am here to try cases.

Dated: March 9, 2022

_____
U.S.D.J.

BY ECF TO ALL COUNSEL