UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARVIN PEARLSTEIN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>BLACKBERRY LIMITED (formerly known as RESEARCH IN MOTION LIMITED), THORSTEN HEINS, BRIAN BIDULKA, and STEVE ZIPPERSTEIN,<br><br>Defendants. | Case No. 1:13-CV-7060-CM-KHP |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 11: TO PRECLUDE EVIDENCE OR ARGUMENT CONCERNING THE INDIVIDUAL DEFENDANTS AND OTHER EMPLOYEES WHO LEFT <u>BLACKBERRY AFTER THE CLASS PERIOD</u>**

Lead Plaintiffs Todd Cox and Mary Dinzik ("Plaintiffs") respectfully submit this memorandum in opposition to Defendants' Motion in Limine to Preclude Evidence or Argument Concerning the Individual Defendants and Other Employees who Left BlackBerry After the Class Period.

**I.     INTRODUCTION**

Defendants seek to exclude highly relevant evidence regarding the departure from BlackBerry of the Individual Defendants, as well as other non-executive employees, because they are worried that these departures will be viewed by the jury as "evidence that corroborates Plaintiffs' claims of wrongdoing." But that is precisely why such evidence is relevant in securities case: because "removal of [] executives . . . "can provide supplemental support for allegations of scienter." *New Orleans Emples. Ret. Sys. v. Celestica, Inc.*, 455 F. App'x 10, 14 n.3 (2d Cir. 2011) It should be up to the jury to determine the significance of the executives' departures and weigh that evidence along with all the other evidence in making its scienter determination. Further, evidence regarding the terms of employees' departure from BlackBerry-- including agreements that prevent them from disparaging BlackBerry-- are relevant to their credibility as witnesses.

**II.    ARGUMENT**

On November 13, 2013, BlackBerry announced that Defendant Thorsten Heins would be resigning as President and CEO and that John S. Chen would serve as Interim CEO pending completion of a search for a new CEO. ECF No. 84 (Second Am. Cplt.) ¶ 158. Only twelve days later, on November 25, 2013, BlackBerry announced that James Yersh, BlackBerry's Senior Vice President and Controller, had replaced Defendant Brian Bidulka as CFO. *Id.* at ¶ 158. Contrary to Defendants' insistence that there are "[n]o [ ] such unusual or suspicious circumstances" surrounding these departures (ECF No. 628 at 3), in fact, the timing of these "resignations" is

1

highly suspicious. They occurred in connection with the Company announcing that it had abandoned the search for a buyer for the Company and only six weeks after BlackBerry filed its Form 6-K with the SEC for the six months ended August 31, 2013, which revealed that BlackBerry was in even worse financial shape than previously reported – specifically, that BlackBerry would report a charge against inventory and supply commitments of approximately $930 million to $960 million, primarily attributable to BlackBerry Z10 devices, that the current quarter would also include a "restructuring charge" in the approximate amount of $72 million;" that the Company planned "to transition its future smartphone portfolio from six devices to four;" and that the Company would implement "a workforce reduction of approximately 4,500 positions or approximately 40% of the Company's global workforce." *Id*. at ¶¶ 55, 157. These stunning revelations caused BlackBerry's stock price to plummet. *Id.* at ¶ 56.

Based on their timing and circumstances, Plaintiffs intend to argue that Heins and Bidulka's "resignations" from BlackBerry were directly related to their Class Period misrepresentations, and when they could no longer hide the failure of the BlackBerry Z10 and the truth was revealed, Heins and Bidulka were replaced. As Judge Hellerstein recently observed, "the timing of terminations and resignations, in relation to the magnitude of corrections in a restatement, also can be a strong inference of scienter, "approaching recklessness or even conscious malfeasance" as to the targeted individuals." *In re Pareteum Sec. Litig*., 19 Civ. 9767, 2021 U.S. Dist. LEXIS 151106, at *49 (Aug. 11, 2021) (citations omitted); *see also In re Eletrobras Sec. Litig.*, 245 F. Supp. 3d 450, 469 (S.D.N.Y. 2017) ("the timing and circumstances of individual defendants' resignations may add some further weight to an overall inference of scienter.'"); *Plumbers & Pipefitters Nat'l Pension Fund v. Orthofix Int. N.V.*, 89 F. Supp. 3d 602, 619 (S.D.N.Y. 2015) ("same") (citing *In re OSG Sec. Litig.*, 12 F. Supp. 3d 622, 633 n.84

(S.D.N.Y. 2014) ("The circumstances and timing of the resignations suggest that both defendants were 'terminated in relation to the undisclosed tax issue.' . . . [which] more likely suggests a higher level of wrongdoing approaching recklessness or even conscious malfeasance.")); *In re Sadia, S.A. Sec. Litig.*, 643 F. Supp. 2d 521, 523-24, 534 (S.D.N.Y. 2009) (crediting resignations of chairman and vice chairman that occurred less than two weeks after company's fraud was revealed); *In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 158, 176-77 (S.D.N.Y. 2003) (accepting that inference of scienter could be drawn from company's recording of large loss immediately following departures of key management figures); *Varghese v. China Shenghuo Pharm. Holdings*, 672 F.Supp. 2d 596, 608 (S.D.N.Y. 2009) (finding independent director's resignation and "Qiong's removal as CEO also contribute[ ] to a strong inference of scienter.") (citing *In re Scottish Re Group Sec. Litig.*, 524 F. Supp. 2d 370, 394 n.176 (S.D.N.Y. 2007) ("[A]lthough not sufficient in and of themselves, [resignations] add to the overall pleading of circumstantial evidence of fraud.")); *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 505-06 (S.D.N.Y. 2005) (finding suspension of executives "support[s] a strong inference of scienter").[1]

While Defendants claim there was nothing suspicious about Heins' or Bidulka's departure,

---

[1] *See also Fain v. United States Techs.*, 707 F. App'x 91, 97 (3d Cir. 2017) (finding "[r]esignations or terminations might form a 'piece to the scienter puzzle'"); *In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964, 976 (N.D. Cal. 2009) (drawing inference of scienter based in part on "Defendants' terminations and resignations, which occurred contemporaneously with the financial restatements"); *Middlesex Ret. Sys. v. Quest Software Inc.*, 527 F. Supp. 2d 1164, 1187-88 (C.D. Cal. 2007) (finding support for scienter where officer resigned specifically to avoid cooperating with internal investigation); *In re Mercator Software, Inc.*, 161 F. Supp. 2d 143, 150 (D. Conn. 2001) (finding evidence of scienter where CFO was fired and new CFO resigned on date company announced restatement of financials).

The few cases cited by Defendants do not say anything different; they just stand for the unremarkable proposition that executive terminations, *on their own*, are not sufficient to give rise to an inference of scienter. *See* Dkt. No. 628 at 2-3 (citing *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 598 (S.D.N.Y. 2011); *Schiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 303 (S.D.N.Y. 2019); *Abrams v. Baker Hughes, Inc.*, 292 F.3d 424, 434 (5th Cir. 2002)).

3

they merely cite to the self-serving and speculative testimony of Mr. Bidulka as to why Mr. Heins may have left BlackBerry and why executives in general might leave companies. ECF No. 628 at 2. And even Heins' own description of the circumstances surrounding his "resignation" is highly suspicious. *See* Tr. of Jan. 23, 2020 Deposition of Thorsten Heins at 296:13-302:5 (testifying that on a Sunday he was "called in" to a Board meeting about "the strategy going forward for BlackBerry," and "out of the blue" he was introduced for the very first time to John Chen, who was referred to as the "Executive Chairman" of BlackBerry, and that because it seemed like Mr. Chen's responsibilities would be overlapping with his, he decided to resign).[2] At any rate, this is an issue for the jury to resolve. Further, the departure of non-executives who were the key employees involved in the relevant events surrounding the BB10 devices is also highly relevant, as many of these employees left in close proximity to each other and/or either during or shortly after the end of the Class Period. *See*, *e.g.*, Tr. of Sept. 24, 2019 Deposition of Geraldo Barron at 12:5-11 (testifying he left BlackBerry in 2014); Tr. of Apr. 19, 2019, Deposition of John Powell at 17:18-25 (testifying he left BlackBerry in December 2013).[3] And, again, the significance of employees' departures is a factual issue for the jury to resolve.[4]

---

[2] Pertinent excerpts of Mr. Heins' deposition transcript are attached as Exhibit A to the accompanying declaration of Kim E. Miller ("Miller Declaration").

[3] Pertinent excerpts of Mr. Barron's and Mr. Powell's deposition transcripts are attached to the Miller Declaration, respectively, as Exhibits B and C.

[4] Defendants' cited cases (ECF No. 628 at 3-4). are inapposite. Four of them are not securities cases (*Anderson v. Brown Indus.*, No. 11-cv-0225-HLM, 2014 WL 12521732, at *10 (N.D. Ga. Mar. 14, 2014); *Johnson v. Young*, No. 14-cv-00178-RCJ, 2016 WL 7104250, at *6 (D. Nev. Dec. 5, 2016); *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 541 (2d Cir. 1992); *Insignia Sys. Inc. v. News Am. Mktg. In-Store, Inc.*, No. 04-4213 (JRT/AJB), 2011 WL 382964, at *5 (D. Minn. Feb. 3, 2011)), and the one that is a securities case, *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1002 (9th Cir. 2009), stands, again, merely for the unremarkable proposition that employee terminations *alone* are not enough to give rise to an inference of scienter.

4

Finally, evidence and argument regarding any agreements any former employees entered into with BlackBerry as part of their departure are highly relevant, as they bear on their credibility and potential bias as witnesses.[5] *See Trireme Energy Holdings, Inc. v. Innogy Renewables US, LLC*, No. 20-cv-5015, 2022 U.S. Dist. LEXIS 39589, at * 7-8 (S.D.N.Y. 2022) (circumstances or terms under which individual left defendant's employment "are relevant, at minimum, to the 'potential bias or prejudice' of a key witness"); *Morgan Art Found. Ltd. v. McKenzie*, No. 18-CV-4438, 2020 U.S. Dist. EXIS 116074, at * 16-17 (S.D.N.Y. July 1, 2020) (settlement agreement relevant to potential bias or prejudice of "pivotal witness"). While Defendants argue that the agreements these former employees entered into upon their departure from BlackBerry "do not prevent truthful testimony" (ECF No. 628 at 5), it is up to the jury to make that determination and evaluate these witnesses' credibility.

### III.   CONCLUSION

For the reasons set forth above, the Court should deny Defendants' Motion in Limine to Preclude Evidence or Argument Concerning the Individual Defendants and Other Employees who Left BlackBerry After the Class Period.

| | |
|---|---|
| DATED: March 10, 2022 | **KAHN SWICK & FOTI, LLC** |
| | /s/ *Kim E. Miller* |
| | Kim E. Miller (KM-6996) |
| | J. Ryan Lopatka (admitted PHV) |
| | 250 Park Avenue, Suite 2040 |
| | New York, NY 10177 |
| | Telephone: (212) 696-3730 |
| | Facsimile: (504) 455-1498 |
| | Email: kim.miller@ksfcounsel.com |
| | Email: j.lopatka@ksfcounsel.com |
| | |
| | -and- |

---

[5] Each of the former employees identified in Defendants' motion (Frank Boulben, Rick Costanzo, Heidi Davidson, Richard Piasentin, and John Powell) are on listed on one or both of the parties' witness lists. *See* ECF Nos. 680-6, 680-7.

Lewis S. Kahn (admitted PHV)
Craig J. Geraci, Jr. (admitted PHV)
1100 Poydras St. Ste. 3200
New Orleans, LA 70163
Telephone: (504) 455-1400
Facsimile: (504) 455-1498
Email: lewis.kahn@ksfcounsel.com
Email: craig.geraci@ksfcounsel.com

*Lead Counsel for Lead Plaintiffs and Class Counsel*

**BROWER PIVEN**
**A Professional Corporation**
David A.P. Brower
136 Madison Avenue, 5th Floor
New York, NY 10016
Telephone: (212) 501-9000
Facsimile: (212) 501-0300
Email: brower@browerpiven.com

*Additional Counsel for Lead Plaintiffs and the Class*

**BECK REDDEN LLP**
David J. Beck (admitted PHV)
Fields Alexander (admitted PHV)
1221 McKinney Street, Suite 4500
Houston, TX 77010
Telephone: (713) 951-3700
Facsimile: (713) 951-3720
Email: dbeck@beckredden.com
Email: falexander@beckredden.com

*Additional Trial Counsel for Lead Plaintiffs and the Class*