UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

MARVIN PEARLSTEIN, Individually and
on behalf of All Others Similarly Situated,

        Plaintiff,

-against-                                         13 Civ. 7060 (CM)(KHP)

BLACKBERRY LIMITED (f/k/a/RESEARCH
IN MOTION LIMITED), THORSTEN HEINS,
BRIAN BIDULKA, and STEVE ZIPPERSTEIN,

        Defendants.

------------------------------------------------------------x

**DECISION ON MOTIONS *IN LIMINE***

McMahon, J.:

      The court, for its rulings on the parties' motions *in limine*, decides as follows:

*Plaintiffs' Motions*

      Motion No. 1: Plaintiffs move to exclude any evidence or argument relating to a defense of advice of counsel. (Docket #642). For the reasons outlined at page 3 of the brief in support of the motion (Docket #643), any such defense has been waived and no testimony or argument concerning same will be permitted. This does not mean that Defendants cannot introduce evidence that lawyers attended meetings or reviewed disclosure documents. *In re Veeco Instruments Inc. Securities Litigation*, 2007 WL 7630569, at *7-8 (S.D.N.Y. 2007). Those are simply facts. However, the jury will be instructed that there is no evidence in the case that defendants actually relied on the advice of any attorneys who attended meetings or reviewed documents. The jurors will also be told that it that they cannot infer that any attorney signed off on or approved of the decisions and disclosures that were eventually taken or made from the fact of attendance or review. Defendants are free to argue that the attendance of lawyers is evidence that they acted in good faith – that they would not have lawyers around if they were not acting in good faith – but more than that they simply cannot say, or even suggest.

      Motion No. 2: Plaintiffs move to exclude testimony from class representatives Mary Dinzik and Todd Cox, evidence or argument "regarding the class representatives," including their failure to testify or absence from the trial. (Docket #645). The motion is denied. The named plaintiffs are parties to this lawsuit. The defendants have every right to call them to the stand. It is true that the issue of class-wide damages will not be resolved at this trial – neither party has indicated any

intention to offer evidence on the subject – and if the jury concludes that there was a fraud on the market, the named plaintiffs are no less entitled to the benefit of the presumption raised by that theory than are absent class members. However, fraud on the market merely raises a presumption of reliance, and defendants are entitled to elicit evidence that the named plaintiffs did not in fact rely on market conditions in connection with their trading activity. If, however, this evidence can be elicited from Mr. Cox, because he made the trading decisions for both named plaintiffs, defense counsel will not be allowed to ask the jury to draw any negative inference from the fact that Ms. Dinzik did not testify, since a civil plaintiff, unlike a criminal defendant, has no obligation to be present during her trial.

Motion No. 3: Plaintiffs move to exclude argument concerning aggregate damages, defendants' ability to pay, and/or the effect of a judgment for plaintiffs. (Docket #648). The motion is granted, for substantially the reasons set forth in the moving brief (*see* Docket #649), with this exception: assuming the number of outstanding shares is in evidence, defendants may point out to the jury the total amount of damages sought by plaintiffs in this lawsuit. That is all they may do. They may not offer any evidence of defendants' ability to pay or of the effect that a judgment of that magnitude would have on BlackBerry the corporation or any of the individual defendants.

Motion No. 4: Plaintiffs move to limit the cross-examination of their experts by precluding defendants from questioning them about rulings made by other judges in other cases concerning the scope of their expertise. (Docket #653). If the motion is intended to preclude defendants from introducing the rulings of other judges on other *Daubert* motions, it is granted. There is no way, short of a mini-trial on collateral matters, to know whether any other court's decision to preclude a particular expert from testifying in some other matter rested on the judge's conclusion that the expert was unqualified in the same way that this court found the experts to be qualified, or that the opinions the expert was not allowed to give were the same types of opinions that the experts are giving in this case. We are not going to get into such time-consuming mini-trials or elicit any testimony that would undermine this court's *Daubert* rulings – which are law of the case. However, juries are routinely instructed that they may consider an expert's qualifications and experience when evaluating his or her testimony. Therefore, experts may always be asked on cross-examination whether they have ever been tendered as an expert and not deemed qualified – a yes or no question – and how many times that has happened. I have never seen a case in which a party presenting an expert did not elicit on direct the fact that the individual had been qualified and testified as an expert in previous cases; the bare fact that the individual was proffered as an expert but was not allowed to testify is certainly fair game for cross-examination. Similarly, it is possible that instances in which an expert was criticized by a court are fair game for cross-examination; I cannot possibly decide that in a vacuum. Jury verdicts in other cases that went against an expert's client are not fair game for cross-examination; there are too many reasons, aside from the expert's testimony, why such verdicts might have been rendered. Nothing in this ruling precludes vigorous cross-examination about the expert's opinions in this case.

Motion No. 5: Plaintiffs move to exclude evidence or argument concerning post-class period changes in generally accepted accounting principles – specifically, changes announced eight months after the close of the class period, to go into effect four years later. (Docket #656). The motion is granted, as any such evidence has little probative value and tremendous unfair

prejudicial impact. I reject defendants' argument that the change means there was no "bright line" rule in effect at the time of the alleged misstatements in this case.

Motion No. 6: Plaintiffs move to exclude character testimony concerning the three individual defendants and other Blackberry witnesses. (Docket #658). The motion is granted in part and denied in part. With limited exceptions, the usual rule is that character testimony is inadmissible in civil cases as proof that a person acted in conformity therewith on a particular occasion (Fed. R. Ev. 404(a)). That rule will be followed. However, if the veracity of the individual defendants is attacked, they are free to offer character evidence that they enjoy a good reputation in the community for truthfulness. I emphasize that it is a reputation in the community that is relevant – not the opinion of one testifying individual that a defendant is truthful person. Appropriate limiting instructions will of course be given.

Motion No. 7: Plaintiffs move to exclude evidence or argument concerning the SEC's inquiry into Blackberry's Revenue Recognition Practices and its Failure to Pursue Charges against Blackberry. (Docket #663). The motion is granted. The SEC's declination to add Blackberry's revenue recognition practices – already the subject of class litigation – to its busy docket does not constitute a finding that Blackberry's practices were correct or an endorsement of those practices. It could simply reflect an administrative priorities allocation on the agency's part. Since the jury could not possibly draw any conclusions from the Commission's taking no action whatever without giving any reason therefor, any such evidence would be entirely without probative value and would encourage speculation. While the court at one time expressed the view that the jury might learn about the SEC inquiry, my statement was not made in connection with a review of the evidence; it is not "law of the case" (which I would be free to revisit in any event); and to the extent that my earlier statement might have been seen as an evidentiary ruling, after careful consideration I conclude that I was wrong and reverse myself.

Motion No. 8: Plaintiffs move to exclude the testimony of Barbara Stymiest. (Docket #667). By notice dated March 8, 2022 (Docket #721), Plaintiffs indicate that this motion was filed in error and should be withdrawn. It is deemed withdrawn.

Motion No. 9: Plaintiffs move to exclude evidence or argument regarding a prior lawsuit brought against Research in Motion in this district (the Playbook Action). (Docket #715). The motion is granted as unopposed; as I suspected, defendants harbored no such intent.

Motion No. 10: Plaintiffs move to exclude evidence or argument concerning the dismissal of any claims, theories of liability or the dismissal of former named plaintiffs Cho and Ulug. (Docket #672). Again, the motion is (not surprisingly) unopposed. It is granted.

*Defendants' Motions*

Motion No. 1: Defendants move to preclude the admission of analyst and media reports for the truth of their contents, as these third-party statements are hearsay. (Docket #605). The motion is not opposed; the parties simply disagree over when and how often the court should instruct the jury that these reports are simply offered to show that particular information was (1) out in the marketplace, and (2) available and known or should have been known to Defendants – rather than

being offered for their truth. When and how often to charge the jury on this point is the province of the court.

Motion No. 2: Defendants move to preclude plaintiffs from arguing about Blackberry's corporate status in a manner that might arouse prejudice. (Docket #675). To the unlikely extent that such a motion is necessary, it is granted. I always instruct my juries (starting during *voir dire*) that all parties, individuals and corporations, stand as equals before the bar of justice. That being so, I will obviously not allow plaintiffs to suggest that Blackberry is bad because it is a corporation, or that this is an instance when the jury should defend the interests of "the little guy" against the big bad corporation. I will similarly not allow anyone to argue that class action lawyers and plaintiffs are bad because of what they do, either.

Motion No. 3: Defendants move to preclude plaintiffs from introducing deposition testimony from witnesses who are within the subpoena power of the court. (Docket #610). This is, or certainly should be, an unnecessary application; the rules of evidence and of civil procedure will be enforced. Third-party witnesses who are within the subpoena power of the court must be subpoenaed and take the witness stand; third-party witnesses who are not within the subpoena power of the court may testify by deposition if they do not wish to appear voluntarily. Party-witness deposition testimony may of course be introduced, because that is what the rules provide. Therefore, if people wish to use their limited time to introduce party deposition testimony, they are free to do so. But the court controls the conduct of trials in its courtroom, and this court does not permit any duplicate testimony to be introduced. So if a party-witness testifies by deposition, the witness cannot be put on the stand and asked the same questions. And if a witness testifies from the stand, then his or her deposition testimony on the same subject will not be read into the record. Under no circumstances will we waste the jury's or the court's time with duplicative party testimony; that would lead to an inefficient trial, would do nothing more than constitute bolstering and would run afoul of the rule against the admission of prior consistent statements to suggest that the witness is telling the truth from the stand. So where party witnesses are concerned, take your pick: live testimony or deposition testimony, but no duplication, not so much as a single question. For what it's worth: my experience is that live testimony works better with the trier of fact. And for the record: this has nothing to do with impeachment or refreshment of recollection. Any witness' deposition may be used to impeach (following the classic formulation, with no variation in the form of questioning allowed) or to refresh recollection (not by reading the testimony aloud, but by physically showing it to the witness and asking if it refreshes the witness' recollection). I trust this is clear.

Motion No. 4: Defendants move to preclude testimony and argument about unrelated settlements by accounting firms and/or PCAOB examinations. (Docket #636). Decision reserved. If the PCAOB examination revealed that E&Y was deficient in its auditing practices for a reason that is relevant to this lawsuit – for example, for relying overly on client representations and failing to do something that was necessary to make sure those representations were in fact true – then obviously it would be admitted. There may be other reasons why the PCAOB examination is admissible, even though it does not identify the clients about whose work E&Y was being criticized.

Motion No. 5: Defendants move to preclude testimony concerning defendant Heins' post-class period employment history at a company called PowerMat, Inc. (Docket #607). The motion is unopposed, and it granted for substantially the reasons set forth in the brief in support of the motion. (*See* Docket #608). If for some reason this becomes an issue for impeachment, we will address it during trial.

Motion No. 6: Defendants move to preclude the testimony of certain witnesses (Gelblum and Huff) who were not disclosed prior to the discovery cutoff in January 2020. (Docket #612). In responding to the motion, Plaintiffs coyly make the following statement: "Lead Plaintiffs . . . respectfully alert the court that they do not oppose Defendants' motion *in limine* requesting an order excluding the testimony of witnesses Plaintiffs failed to timely disclose in light of the Court's March 9, 2021 Order instructing the parties 'that no witness whose identity was not formally disclosed prior to January 31, 2020 will be allowed to testify.'" (Docket #766). Nonetheless, both challenged witnesses are identified on Plaintiffs' most recent witness list as testifying live. (Docket #680-6) However, plaintiffs offer no rebuttal to the facts that were proffered by Defendant in support of this motion. I thus conclude that Mr. Huff was not disclosed as a witness prior to the cutoff date, and he may not testify. I further find that, while Mr. Gelblum's name appeared on plaintiff's original list of 228 potential witnesses, it was removed from that list when plaintiffs were instructed by Magistrate Judge Parker to provide defendants with a "more meaningful" witness list. And I find that Defendants relied on that removal by not deposing Mr. Gelblum. He may not testify, either.

Motion No. 7: Defendants move to preclude testimony from non-party Rule 30(b)(6) witnesses that is not based on personal knowledge. (Docket #616). The specific target of this motion is Dana Moorehead of AT&T. The motion is not opposed, and the deposition testimony of Ms. Moorehead is no longer being offered. The motion is, therefore, moot.

Motion No. 8: Defendants move to preclude testimony about attorney-client privileged communications. (Docket #619). The motion is granted. Plaintiff cannot successfully seek to preclude the use of an advice of counsel defense and simultaneously question witnesses (including specifically the General Counsel of Blackberry) about privileged conversations. Please see the ruling on Plaintiffs' Motion No. 1 concerning the limitations on inferences that the court will allow the trier of fact to draw from the fact that certain individuals were present at meetings or reviewed documents.

Motion No. 9: Defendants move to preclude testimony about their clients' net worth. (Docket #621). The motion is granted, except insofar as it may be deemed to cover evidence and arguments predicated on the individual defendants' compensation from and stock ownership in Blackberry, which is highly relevant to scienter. However, information about their overall net worth is excluded.

Motion No. 10: Defendants move to preclude testimony or argument about executives who left Blackberry prior to the class period. (Docket #624). The motion is denied to the extent that it seeks to preclude the introduction of evidence about the success or failure of prior BlackBerry products and the fact (assuming it to be a fact) that several executives were fired for that reason.

Such evidence is relevant and probative in that it provides a backdrop against which the events in suit played out.

Motion No. 11: Defendants move to preclude testimony or argument about employees who left Blackberry after the close of the class period. (Docket #627). The motion is denied for substantially the reasons set forth in the brief filed in opposition to the motion. (*See* Docket #763)

Motion No. 12: Defendants seek to preclude evidence and argument regarding criminal proceedings against James Dunham Jr. (Docket #633). The motion is denied. One of the reasons that the Second Circuit asked Judge Griesa to consider whether to permit amendment of the complaint, and one of the reasons Judge Griesa granted that motion, was the fact that plaintiff's counsel became aware, as a result of reading Dunham's plea allocution in his criminal case, that Dunham had stolen his employer's confidential Z10 sales and return information and providing it to Detwiler Fenton, whose subsequent report (based on that stolen information) was publicly denounced as categorically false by BlackBerry. Dunham has been deposed and has testified under oath about his dealings with Detwiler, and his deposition testimony is obviously going to come in; so will the fact that he has been indicted and pleaded guilty. If, as is suggested at the bottom of page 2 of the moving brief (Docket #634), information from the plea allocution was used at Dunham's deposition to impeach his testimony that he did not provide Detwiler with information about "key retail partners," that information will certainly come before the jury; and plaintiffs will be permitted to introduce evidence of Detwiler's guilty plea. The only "prejudice" that might be suffered in this case from the introduction of such evidence is the perfectly allowable "prejudice" that the jury might conclude that Detwiler's efforts to "walk back the cat" on matters relating to his plea allocution (which was given under oath in circumstances attesting to its truthfulness) were a recent fabrication.

Motion No. 13: Defendants move to preclude references by plaintiffs to any "duty" or "obligation" to disclose "trends" regarding sell-through information and return rates, on the ground that the court dismissed with prejudice Plaintiffs' claim that Blackberry failed to comply with SEC Item 303 of Reg. S-K, 17 C.F.R. §229.303. (Docket #630) Certainly plaintiff is precluded from arguing that Blackberry violated Item 303, because Blackberry is a Canadian entity and so is not bound to comply with Item 303 – and indeed, in its responsive brief, plaintiffs have indicated that they do not intend to make any such argument and have withdrawn the deposition designations that led to the making of this motion. (*See* Docket #750). However, I agree with plaintiffs that the fact that sales are trending in a particular direction may well constitute material information that a reasonable investor would expect to be disclosed, such that the failure to disclose might violate Section 10(b)-5 rather than Item 303. Nothing in this ruling precludes the mention of "trends" or "trending" at the trial.

Motion No. 14: Defendants move to preclude one of plaintiffs' experts, Dr. Feinstein, from opining that alleged misstatements were material to the price of Blackberry's stock. (Docket #639). The motion is denied. No witness may offer an opinion about the ultimate issue of materiality to a reasonable investor; that word should not escape Dr. Feinstein's lips during his testimony. But Dr. Feinstein is perfectly free to testify to the matters comprehended in his report concerning the economic impact that withheld information would have had on the valuation of BlackBerry stock. He can most certainly testify about the proximity between the release of negative information and

a consequent significant decline in the price of Blackberry's stock. Plaintiffs are then free to argue materiality; no jury needs an expert to assess that argument for them.

Motion No. 15: Defendants move to exclude the introduction of specific media articles: PX 001, 003, 004, 005, 007, 012, 549, 574, 577 and 579. (Docket #677). Plaintiffs inform the court that they "are withdrawing the identified exhibits from their exhibit list." (*See* Docket #747). Therefore, the motion is moot.

Motion No. 16: Defendants move to exclude evidence or argument about something they call the Draft Applied Value Power Point, and that Plaintiffs call the Applied Value Presentation. (Docket #650). Whatever you call it, the motion is denied, for substantially the reasons articulated in the brief filed in opposition to the motion. (Docket #738).

Motion No. 17: Defendants move to preclude Plaintiffs' expert Thomas Lys from testifying about matters that were not comprehended in his expert report – specifically Blackberry's "valuation of its own inventory, raw materials and supply commitments." (Docket #701). The motion is unopposed. It is, therefore, granted.

Motion No. 18: Defendants move to preclude Plaintiffs' expert Professor Tulin Erdem from offering factual summaries, timelines, chronologies or recitation of hearsay designed to mimic closing argument. (Docket #661). This issue was disposed of in the court's *Daubert* decision, as Plaintiffs correctly point out in their responsive brief. The motion is stricken as unnecessary. Professor Erdem will not be allowed to summarize Plaintiffs' case; she will be allowed to testify about the marketing history of BlackBerry products and its competitors' products to the extent needed to explain her opinions.

Motion No. 19: Defendants move to preclude Plaintiffs from arguing that the knowledge of Blackberry senior executives other than the defendants concerning the truth or falsity of the statements at issue in this case can be attributed to Blackberry for purposes of establishing scienter as to the corporation. (Docket #671). The motion – which addresses a matter that is not evidentiary, but that should have been taken up during a charging conference -- is denied for substantially the reasons set forth in the brief filed in opposition to the motion. (*See* Docket #733). While only a "speaker" (a person who actually makes a statement to the marketplace) can be held liable under Section 10(b) and Rule 10b-5, *see Janus Capital Group, Inc. v. First Derivative Traders*, ___ U.S. ___, 131 S.Ct. 2296, 180 L.Ed.2d 166 (2011), the Supreme Court made no ruling about corporate scienter in that case; and the Second Circuit has ruled squarely to the contrary of Defendants' argument in *Jackson v. Abernathy*, 960 F. 3d 94 (2d Cir. 2020). On this point, I am entirely persuaded by the reasoning of my late colleague, Judge Pauley, in *Pa. Public School Employees Ret. Systems v. Bank of America Corp.*, 874 F. Supp. 2d 341 (S.D.N.Y. 2012). I will follow Judge Pauley's logic in trying this case.

Motion No. 20: Defendants move to preclude Plaintiffs from introducing evidence about statements that the court has ruled are not actionable. (Docket #681). The motion is denied. The fact that plaintiffs cannot recover for a particular false statement due to the running of the statute of repose does not mean that the making of the statement has no evidentiary value. The statements that were not timely pleaded will not appear on the verdict sheet; the jury will not formally assess

their truthfulness, or the circumstances in which they were made, for purposes of assessing liability against the defendants. That is the only thing precluded by the grant of summary judgment.

Motion No. 21: Defendants move to preclude evidence or argument seeking to impose liability on Defendants Zipperstein and Bidulka for statements that they are not alleged to have made. (Docket #684). This is not a proper motion *in limine*. It is denied.

Motion No. 22: Defendants move to preclude the introduction of deposition testimony from witnesses who are read lengthy portions of documents and who then claim to have no personal knowledge of said documents. (Docket #686). The motion is denied. The court will be forced to rule on hundreds of Rule 602 objections, designation by designation. However, if plaintiffs' characterization of the testimony of Lisa Portnoy, which is cited at page 2 of the brief filed in support of the motion (Docket #687), is correct – and I have some reason to suspect that it is – then we will waste a lot of time on those objections, because Ms. Portnoy will be permitted to testify to anything and everything of which she was and was not made aware by BlackBerry. The person best situated to testify about what Ms. Portnoy of E&Y knew or did not know is – surprise – Ms. Portnoy; and Rule 602 objections to such testimony would be frivolous, and treated as such. Whether E&Y was told everything it needed to know in order to issue the much vaunted "clean opinions" on BlackBerry's financials is very much at issue in this case

Motion No. 23: Defendants move to preclude the introduction of documents about which the individual defendants have no knowledge. (Docket #692). This is an improper motion *in limine*, for the reasons set forth in my memorandum to the parties dated March 9. (*See* Docket #724). However, I am fairly certain that most if not all of the emails to which objection is made on this ground will be admissible as against BlackBerry; and if the defendants do not recall seeing internal corporate documents that one might expect would be called to their attention given their position in the company, that ordinarily goes to the weight of the evidence, not to its admissibility. Certainly, counsel's representation is not proof that the individual defendants never saw any particular document. Defendants can get on the stand and testify that they did not see particular emails on which they are not copied, but that could or perhaps should have been called to their attention by others – for example, emails that are business records of BlackBerry, for which they worked. The jury can make its own assessment of the truth of that testimony. That will be the general guiding principle at our final pre-trial conference next Monday.

Motion No. 24: Defendants move to exclude evidence or argument concerning the opinions of Geraldo Barron and Paul Holtz – two BlackBerry employees – on the propriety of accounting judgments made by others at BlackBerry. (Docket #707). The motion is denied, for substantially the reasons set forth in the brief filed in opposition to the motion. (*See* Docket #770). To the extent BlackBerry's arguments as set forth in its brief pass the laugh test, they go to the weight of the evidence being offered – not to its admissibility. If BlackBerry wishes to put someone on the stand to testify to the fact that its employees were incompetent, and that they were nonetheless asked to perform work that was beyond their ken, it is free to do so. I would not be surprised, however, if the jury were to find that testimony less than compelling.

Motion No. 25: Defendants move to exclude evidence or argument regarding "Gerard Barron's draft memorandum." (Docket #695). The motion, too, is denied. The memo, which

discusses Blackberry's application of GAAP accounting to BB10 sales in the Q1 of FY 2014, was prepared by a BlackBerry accounting employee at the request of his supervisor; it is a BlackBerry business record, prepared after a review of data that was part of BlackBerry's business records; and it is plainly relevant to the issues to be decided in the case. The fact that this memo was a draft does not render it inadmissible; drafts are admitted all the time at trial, and they can be especially probative when their recommendations or analysis are subsequently rejected by the corporation and its more senior officers. The fact that the document was a draft goes to the weight of the evidence -- as does BlackBerry's argument that Mr. Barron was not qualified to prepare it, even though BlackBerry was paying him to do precisely that. Barron's supervisor, who commissioned the analysis, may testify that the draft was riddled with errors and thrown in the trash; but I have no way of knowing whether there will be such testimony or whether the jury will find it credible. The fact that a subsequent memo covers the same topic (and reaches different conclusions) does not render the document inadmissible. Given that Mr. Barron was tasked by BlackBerry with preparing the memorandum, I am certainly not going to exclude it as impermissible lay opinion testimony; in fact, I agree with Plaintiffs that Mr. Barron's "lay opinions" on the subject of his memo are exactly the sort of opinions that can come in pursuant to Fed. R. Evid. 701. And the memo cannot be kept out of evidence on the ground that it might confuse or mislead the jury; things that Defendants must explain away are not automatically and for that reason confusing or misleading. In fact, often they are quite enlightening.

Motion No. 26: Defendants move to preclude all references to something called a draft channel policy that was never adopted (PX 452 and numerous unidentified exhibits that mention the document). (Docket #704). The motion is denied, for substantially the reasons set forth in Plaintiffs' brief in opposition to the motion. (*See* Docket #744).

Motion No. 27: Defendants seek to exclude evidence and argument regarding December 2013 emails from John Chen. (Docket #698). The motion is denied, for substantially the reasons set forth in Plaintiffs' brief in opposition to the motion. (*See* Docket #760).

Motion No. 28: Defendants seek to exclude testimony and argument about internal discussions at Blackberry about whether to consent to AT&T's request to push out shipments of Z10 devices from the first to the third quarter of FY 2014. (Docket #710). The motion is denied, for substantially the reasons set forth in Plaintiffs' brief in opposition to the motion. (*See* Docket #748).

Motion No. 29: Finally, Defendants seek to preclude evidence or argument about post-class period events. (Docket #689). The motion is denied, for substantially the reasons set forth in Plaintiffs' brief filed in opposition to the motion. (*See* Docket #749).[1]

This constitutes the written decision and order of the court.

---

[1] The court notes that a number of the *in limine* motion, but most particularly the last six of defendants' motions, are classic instances of the well-known "this document/testimony is bad for our case, so exclude it" *in limine* motion -- the evidentiary version of "this expert's testimony contradicts our expert's testimony, so strike it" *Daubert* motion. Both are equally lacking in merit and equally unwelcome. There is far too much to do in connection with this trial to waste time on such matters.

The Clerk of Court is directed to remove the following from the court's list of open motions: Docket Numbers 605, 607, 610, 612, 616, 619, 621, 624, 627, 630, 633, 636, 639, 642, 645, 648, 650, 653, 656, 658, 661, 663, 667, 671, 672, 675, 677, 681, 684, 686, 689, 692, 695, 698, 701, 704, 707, 710, and 715.

Dated: March 11, 2022

_____
U.S.D.J.

BY ECF TO ALL COUNSEL