UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/4/2022
```

MARVIN PEARLSTEIN, Individually And On Behalf of All Others Similarly Situated,

                     Plaintiff,

-against-

BLACKBERRY LIMITED (formerly known as RESEARCH IN MOTION LIMITED), THORSTEN HEINS, BRIAN BIDULKA, and STEVE ZIPPERSTEIN,

                     Defendants.

No. 13 Civ. 7060 (CM) (KHP)
(Consolidated)

## DECISION AND ORDER DENYING DEFENDANT ZIPPERSTEIN'S MOTION FOR JUDGMENT ON THE PLEADINGS

McMahon, J.:

Defendant Steve Zipperstein files a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) and requests that the Court dismiss him from this case on the ground that the claim against him is time barred by the Exchange Act's two-year statute of limitations. (Dkt. No. 797). The motion is opposed. (Dkt. No. 799 ("Opp.")).

For the reasons that follow, Defendant Zipperstein's motion is DENIED.

### FACTS

The procedural history of this case is unique, and any decision on Zipperstein's motion requires a deep dive into that history – a significant part of which took place before another judge.

The plaintiffs originally filed a complaint on October 4, 2013, in which they sued Defendants Blackberry, Thorstein Heins and Brian Bidulka for securities fraud. They identified a number of statements made by or on behalf of Blackberry as false and misleading. Certain of those statements were made about a research report written by a firm called Detwiler Fenton, which

1

asserted, *inter alia*, that new BlackBerry 10 ("BB10") smartphones were being returned in large numbers. BlackBerry representatives made several statements robustly denying what Detwiler Fenton said, all of which were identified in the pleading as being false and misleading when made.

One of the statements so identified was made by Zipperstein, the General Counsel of BlackBerry, on April 12, 2013. Specifically, the original complaint alleges that Zipperstein stated:

> [Detwiler Fenton's] materially false and misleading comments about device return rates in the United States harm BlackBerry and our shareholders, and we call upon the appropriate authorities in Canada and the United States to conduct an immediate investigation. Everyone is entitled to their opinion about the merits of the many competing products in the smartphone industry, but when false statements of material fact are deliberately purveyed for the purpose of influencing the markets a red line has been crossed.

(Dkt. No.1 ("Compl.") ¶53). The complaint identifies this statement as false and misleading when made. (*Id.* ¶54). But while Heins and Bidulka were charged with Section 20 liability for all of the allegedly false and misleading statements pleaded in the complaint – including Zipperstein's statement – the maker of the statement, Zipperstein, was not named as a defendant.

On June 2, 2014, Plaintiffs filed their First Amended Complaint ("FAC"). (Dkt. No. 42). The FAC pleads that Zipperstein made the April 12, 2013 that was attributed to him in the original complaint, and again asserts that the statement was false and misleading. (*See* Dkt. No. 42 ("FAC") ¶¶49-50). Once again, only Heins and Bidulka were sued under Section 20 of the Exchange Act; Zipperstein was not named as a defendant in the FAC.

On July 29, 2014, Blackberry, Heins and Bidulka moved to dismiss the FAC. (Dkt. No. 44).

On February 24, 2015, a criminal complaint was filed against one James Dunham, Jr., a former executive at the wireless retailer Wireless Zone (the "Dunham Action"). The complaint alleged that Dunham, acting in his role as an executive at Wireless Zone, had obtained confidential information about Blackberry, including specific information about sales and returns, which he

2

then sold to the financial research firm Detwiler Fenton. Dunham later pled guilty in the Dunham action on June 4, 2015, at which hearing he admitted that he had sold Blackberry's confidential financial information to Detwiler Fenton, and that Detwiler Fenton had used this confidential information as the basis for the report, the allegations of which BlackBerry representatives (including Zipperstein) had publicly denied. Specifically, Dunham allocuted that

> his role at the franchisor provided him access to very specific confidential information from the franchisee, including specific sales information, specific return information, compensation information, information regarding activating or upgrading . . . and other cost information. He testified that the information he sold included specific sales information and specific return information concerning the Z10, which the Detwiler Fenton used as a basis for a report that it published in April 2013.

*Pearlstein v. Blackberry et al.*, 2017 WL 4082306, at *1 (S.D.N.Y. Sept. 13, 2017) (citing the record) (internal citations and quotations omitted).

On March 13, 2015, the Hon. Thomas P. Griesa to whom this case was originally assigned, granted Defendants' motion to dismiss the FAC. *See Pearlstein v. BlackBerry Ltd.*, 93 F. Supp. 3d 233, 247 (S.D.N.Y. 2015); (Dkt. No. 54). He dismissed the FAC on several grounds, including that Plaintiffs failed to alleged scienter. *Id.*

On March 24, 2015, the Supreme Court issued its decision in *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, 575 U.S. 175 (2015), which altered the existing standard for finding a statement misleading. In *Omnicare*, the Supreme Court held that statements of opinion could be deemed misleading for the purposes of Section 10(b) and Rule 10b-5 claims – even if a defendant believed a statement at the time it was made – if the defendant omitted "material facts about the issuer's inquiry into or knowledge concerning a statement of opinion" and the omitted facts show the statement's issuer "lacked the basis for making those statements that a reasonable investor would expect." *Id.* at 189, 196. Under the prior standard, a

statement could only be found misleading if objectively false and disbelieved by the defendant when expressed.

On March 31, 2015, Plaintiffs moved for reconsideration (Dkt. No. 56) based on the Supreme Court's decision in *Omnicare*. (Dkt. No. 57, at 2-3). The moving brief on the motion for reconsideration did not mention anything about the Dunham action.

Defendants (BlackBerry, Heins and Bidulka) opposed the motion for reconsideration. They pointed out that *Omnicare* only changed the standard for determining whether a statement could be deemed misleading, while the court had also dismissed the FAC for failure to plead scienter. (Dkt. No. 58, at 2). Defendants pointed out that nothing about *Omnicare* called that aspect of Judge Griesa's decision into question. (*Id.*).

In their reply brief -- while continuing to assert that reconsideration was warranted under *Omnicare* -- Plaintiffs also urged that Plaintiffs should be permitted to replead because of what they had learned from reading the Detwiler complaint. They argued that this new information -- information indicating that the Detwiler report was in fact predicated on internal BlackBerry information that had to be known to the company's senior officers -- would satisfy the requirement that they plead scienter. (Dkt. No. 59, at 9).

Plaintiffs attached a "proposed amendment" to their reply brief, and stated in their reply brief that they planned, if allowed to replead, to add a new information from the Dunham action to their complaint. (Dkt. No. 59-1, at ¶69). The proposed amendment did not include Zipperstein's name in the caption or list him in the beginning of the pleading. Nowhere in the reply briefing did Plaintiffs mention that they were adding a new defendant.

On November 13, 2015, Judge Griesa denied Plaintiffs' motion for reconsideration and request for leave to amend. (Dkt. No. 62). In the single-page decision, Judge Griesa explained that

"'Reconsideration . . . is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" (Dkt. No. 62 (quoting *Parrish v. Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003)). Judge Griesa simply stated he had "considered the parties' arguments" and said that he was denying the motion and the "request for leave to amend" that had been made "for the first time" in the reply papers.

Plaintiffs appealed.

On August 24, 2016, the Second Circuit affirmed Judge Griesa's decision on the motion to dismiss the FAC on the ground that the FAC's allegations failed to give rise to a strong inference of scienter. However, the Second Circuit remanded so the district court could reconsider whether the shareholders should be granted leave to amend the complaint. *Cox v. Blackberry Limited*, 660 Fed.App'x 23, 27 (2d Cir. 2016). The Court of Appeals explained that the request to amend had been made "for the first time in a reply brief in support of their motion for reconsideration" and stated that it was "unclear from the district court's order" why leave to amend was not granted. *Id.* The Second Circuit directed that, "If the district court determines that leave to amend should be denied, it should explain the basis for its decision." *Id.*[1]

After the mandate issued, Judge Griesa ordered that the parties brief the question of whether Plaintiffs should be granted leave to amend. (Dkt. No. 66). Plaintiffs promptly (and finally) made a formal motion for leave to amend on November 17, 2016. (Dkt. No. 68).

The motion for leave to amend was accompanied by a Proposed Second Amended Complaint ("PSAC"). The PSAC was identical in most respects to the pleading whose dismissal had already been affirmed. (*See* Dkt. No. 70-1). It was also identical to the proposed amendment

---

[1] Under Second Circuit law, an application made for the first time in a reply brief is not supposed to be considered. *See Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993). However, while Judge Griesa mentioned the fact that the application for leave to amend was made for the first time in reply, he did not specify that this was the reason he was denying the motion.

5

previously filed and described above. (*See* Dkt. No. 59-1). But it included specific allegations about the Detwiler Report that were derived from the criminal complaint and accompanying Affidavit of FBI Special Agent David Makor in the Dunham action[2] – for example, it alleged that based on Mr. Makor's affidavit, "Mr. Dunham, a former executive at a wireless franchisor [Wireless Zone], obtained very specific, confidential financial data and information concerning sales and returns of a wireless smartphone manufacturer [BlackBerry] and provided it to a financial analyst [Detwiler Fenton]" and that "that Detwiler Fenton relied upon this true, real-time data in its analyst report of April 11, 2013 concerning BlackBerry." (*Id.* ¶¶9, 13). Obviously, the Detwiler Report was not a new fact; it was pleaded extensively in the original complaint and in the FAC. But in their motion for leave to amend, Plaintiffs argued that the new evidence from the Dunham complaint "show[s] that the Detwiler Report was based upon accurate, real-time data collected from hundreds of retail stores" and demonstrated scienter, because Defendants' statements denying the Detwiler Report were either "outright lie[s]" or "had no reasonable basis in fact." (Dkt. No. 69, at 3, 21).

The caption of the PSAC was identical to that of the FAC and the "proposed amendment" that had been filed with the reply brief on the motion for reconsideration – that is, it did not name Zipperstein as a defendant. However, Zipperstein was listed as a defendant in the body of the PSAC, and was named under Count I as a defendant on the Section 10(b) and Rule 10b-5 claim. (*See* Dkt. No. 70-1, at ¶69). Obviously, the plaintiffs should have called attention to that change in their motion papers and justified that addition. They did not do so. Their notice of motion, moving brief, declaration in support of their motion, and reply brief do not so much as mention adding Zipperstein as a defendant, let alone argue why he should be added. (Dkt. Nos. 68, 69, 70).

---

[2] Plaintiffs did not rely on Dunham's plea allocution in the PSAC.

However, Defendants apparently failed to notice that Plaintiffs had sneaked Zipperstein into the PSAC as a new defendant; they did not address in their opposition whether adding a new defendant was merited. (*See* Dkt. No. 74).

Judge Griesa ultimately granted Plaintiffs' motion for leave to amend as to the Section 10(b) and Rule 10b-5 claim (Count I) on September 13, 2017. He concluded that amendment would not be futile based on two things: (1) the new information proffered in support of Plaintiffs' claims, and (2) the change in controlling law under *Omnicare. See Pearlstein v. BlackBerry Limited*, No. 13-cv-7060, 2017 WL 4082306, at *1 (S.D.N.Y. Sept. 13, 2017). Judge Griesa specifically held that the proposed complaint would survive a motion to dismiss, explaining, "Based on plaintiff's new allegations—*e.g.*, sales data coming from Dunham's criminal proceeding—it is plausible that the defendant [sic] had knowledge of information contradicting its public statements with respect to its financial results as well as its statements in opposition to the Detwiler Fenton report. The plaintiff has made out a claim that would survive a motion to dismiss under Rule 12(b)(6)." *Id.* at *4.

Plaintiff filed the SAC on September 29, 2017. (Dkt. No. 84).

A summons issued as to defendant Zipperstein on October 2, 2017.

Notwithstanding Judge Griesa's explicit statement that the SAC could not be dismissed on motion, Blackberry, Heins, and Bidulka moved to dismiss it on November 20, 2017. (Dkt. No. 96). Zipperstein moved separately to dismiss the claim against him on December 1, 2017. (Dkt. No. 100). In his motion, Defendant Zipperstein raised the statute of limitations, Plaintiffs addressed in their opposition with many of the same arguments Plaintiffs now raise on this motion. (*See* Dkt. Nos. 101, 103).

7

Meanwhile, Judge Griesa was dying. On December 13, 2017, the case was reassigned to this Court. The good Judge left this world on December 24, 2017.

Upon inheriting the case, the Court denied the motion to dismiss the SAC, stating, "In light of the *Omnicare* standard and the information from the Dunham Action, the Court finds that Plaintiffs have made out a plausible claim to relief." *Pearlstein v. Blackberry Limited*, No. 13-cv-7060, 2018 WL 1444401, at *4 (S.D.N.Y. Mar. 19, 2018); (Dkt. No. 115). Rather than restating what Judge Griesa found, what I should have said is simply that my predecessor judge, who knew the case far better than I possibly could have, had already ruled that the SAC stated a viable claim for relief, and I was not prepared to second guess him. That was in fact the reason that I did not grant the motion. I did not address Zipperstein's statute of limitations argument at all.

Zipperstein now renews his statute of limitations motion (Dkt. No. 797) following this Court's denial of Defendants' motion for summary judgment (Dkt. No. 573) and in advance of trial.

## STANDARD

Federal Rule of Civil Procedure 12(c) provides that "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate if, from the pleadings, the moving party is entitled to judgment as a matter of law." *Burns Int'l Sec. Servs., Inc. v. Int'l Union, United Plant Guard Workers*, 47 F.3d 14, 16 (2d Cir. 1995). The standard for addressing a motion for judgment on the pleadings pursuant to Rule 12(c) is the same as the standard used in evaluating a motion to dismiss under Rule 12(b)(6). *L-7 Designs, Inc. v. Old Navy*, 647 F.3d 419, 429 (2d Cir. 2011). Thus, the Court "accept[s] all factual allegations in the complaint as true and draw[s] all reasonable inferences in Plaintiff's favor." *Id.* (alterations, citation and quotation omitted).

## DISCUSSION

Securities fraud claims under the Exchange Act are subject to a two-year statute of limitations. 28 U.S.C. § 1658(b). The statute of limitations begins to run "(1) when the plaintiff did in fact discover, or (2) when a reasonably diligent plaintiff would have discovered, 'the facts constituting the violation'—whichever comes first." *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 637 (2010).

"[A] fact is not deemed 'discovered' until a reasonably diligent plaintiff would have sufficient information about that fact to adequately plead it in a complaint. In other words, the reasonably diligent plaintiff has not 'discovered' one of the facts constituting a securities fraud violation until he can plead that fact with sufficient detail and particularity to survive a 12(b)(6) motion to dismiss." *City of Pontiac General Employees' Retirement System v. MBIA, Inc.*, 637 F.3d 169, 175 (2d Cir. 2011).

"Under this standard, the amount of particularity and detail a plaintiff must know before having 'discovered' the fact will depend on the nature of the fact. For example, a sufficient allegation of scienter requires the pleader to 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind' such that 'it is at least as likely as not that the defendant acted with the relevant knowledge or intent.'" *Id.* (quoting *Merck*, 559 U.S. at 649). "Until the plaintiff has uncovered—or a reasonably diligent plaintiff would have uncovered—enough information about the defendant's knowledge or intent to satisfy this pleading standard, he has not 'discovered' the fact of scienter, and the statute of limitations cannot begin to run." *Id.*

## A. Plaintiffs' Claim Against Defendant Zipperstein is Timely

### i. Zipperstein Was Sued for Statute of Limitations Purposes on November 17, 2016

The Court must first set the date on which Zipperstein is deemed to have been sued for statute of limitations purposes. Defendants argue that Zipperstein was not sued until September 29, 2017 when the SAC was filed (Dkt. No. 797-1 ("Br.") at 2); Plaintiffs contend that Zipperstein should be deemed sued on April 27, 2015 when Plaintiffs filed a reply brief in further support of their motion for reconsideration and appended a "proposed amendment" that sneaked Zipperstein's name into the body of the complaint as a defendant.. (*See* Dkt. No. 59-1; Opp. 9-10). Neither date is correct. The correct date is November 17, 2016, when Plaintiffs first filed a formal motion to amend and the PSAC including Zipperstein as a Defendant.

"When a plaintiff seeks to add a new defendant in an existing action, the date of the filing of the motion to amend constitutes the date the action was commenced for statute of limitations purposes." *Rothman v. Gregor*, 220 F.3d 81, 96 (2d Cir. 2000). "[S]ince an action is deemed to have been commenced when the complaint is filed," a plaintiff's "filing of a motion to amend" to add a defendant "will toll the applicable statute of limitations for that claim." *Scelfo v. Aurora Concept, Inc.*, No. 02 CIV. 7835(MHD), 2006 WL 336038, at *19 (S.D.N.Y. Feb. 10, 2006).

Applying this rule, Plaintiffs first moved for leave to amend on November 17, 2016. Plaintiffs' argument that the filing of the "proposed amendment" on reply in support of their motion for reconsideration on April 27, 2015 tolled the statute of limitations is incorrect. The filing of a reply brief in support of a pending motion for reconsideration of the dismissal of the complaint is not the same thing as "filing of a motion to amend." No notice of motion was filed seeking that relief until November 2016. Moreover, plaintiffs are hoist on their own petard here. When Defendants asked the Court to strike the reply brief, with its accompanying "proposed amendment," as procedurally improper, Plaintiffs specifically stated to Judge Griesa that by they

10

were NOT requesting leave to amend by attaching the "proposed amendment" to their reply papers; rather, they were trying to demonstrate that they would have a good faith basis to make such a motion in the future. (*See* Dkt. No. 61).

The complicating factor of course is that the Second Circuit, ignoring its own law, appeared to treat the reply papers on the motion for reconsideration as though it were a motion for leave to amend and directed Judge Griesa to explain why he had denied it. However, this court concludes that plaintiffs should be taken at their own word.[3] They did not make a motion for leave to amend when they filed their reply papers; rather they asked for permission to make such a motion in their reply papers, and that is what Judge Griesa denied. Asking for permission to make a motion for leave to amend does not toll the statute of limitations. Instead, it was Plaintiffs' formal motion for leave to amend, made on November 17, 2016, that in fact tolled the running of the statute.

Defendants counter that the Plaintiffs' motion to amend did not toll the running of the statute because Zipperstein was not named as a Defendant in the caption or introductory paragraph of the PSAC. Rather, Plaintiffs sneaked his name in at paragraph 69 amongst the list of Defendants in the body of the document. (*See* Dkt. No. 59-1). The Court has found another place in which Zipperstein was named as a Defendant in the PSAC: under Count I of the PSAC, the Section 10(b) and Rule 10b-5 claim, in the heading, which states: "CLAIMS FOR RELIEF . . . COUNT I . . . For Violations of §10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants—BlackBerry, Heins, Bidulka and Zipperstein . . ." However, I cannot disagree with Defendants that, in their moving papers, Plaintiffs did not call Judge Griesa's attention to the

---

[3] I was not involved in this case at the time so I have no idea whether plaintiffs (or for that matter defendants) alerted the Court of Appeals to the fact that plaintiffs had specifically abjured making a motion for leave to amend in their reply papers on the motion for reconsideration. I doubt very much that the Second Circuit would have chosen to ignore a specific representation to the district court that no motion was then being made. But frankly, I have spent far more time than anyone should have to trying to reconstruct what happened in this case prior to Judge Griesa's death. I can't get into the heads of the four judges who preceded me, and I am done trying. I am simply going to apply the rules.

fact that they were adding Zipperstein as a Defendant or discuss any reason why adding him was warranted. They did not prominently advertise what they were doing until they added Zipperstein's name to the caption of the SAC (not the PSAC) on September 29, 2017. I thoroughly disapprove of the sneaky way in which this was done; there is simply no excuse for such sharp practice.

However, I am not persuaded that this means the statute was not tolled as to Zipperstein. Plaintiffs' making of a motion to amend the pleading in a particular way is the dispositive action for tolling the statute; and the PSAC that was attached to that formal motion did in fact name Zipperstein as one of the Defendants in the body of the pleading, and included him specifically as a Defendant in the heading for Count I, the claim for Violations of §10(b) of the Exchange Act and Rule 10b-5. It was Defendants' burden to read the proposed pleading with great care; that they obviously missed something does not mean that it was not there.

The Court thus concludes that Zipperstein was "sued" as of November 17, 2016, and that the statute of limitations was tolled as of that date.

    ii.    The Statute of Limitations Had Not Run by November 17, 2016

Next, this Court must determine whether the statute of limitations had run by November 17, 2016. And while this lawsuit was originally filed more than three years prior to that date, the answer to that question, on the peculiar facts of this case, is no. The procedural history of this case makes it crystal clear that the facts necessary to plead scienter with the particularity required by law were not "discovered" until February 24, 2015. Under Second Circuit law, "The two-year statute of limitations cannot commence before that point." *City of Pontiac,* 637 F.3d at 175.

It is true that on September 20, 2013, the market became aware that numerous statements made by representatives of BlackBerry during the Class Period were arguably false and misleading. That was the date of the so-called "corrective disclosure," pursuant to which BlackBerry announced, *inter alia,* that it would report a "charge against inventory and supply

12

commitments in the second quarter of approximately $930 million to $960 million, which is primarily attributable to BlackBerry Z10 devices;" that it would "transition its future smartphone portfolio from six devices to four;" and that it would implement "a workforce reduction of approximately 4,500 positions or approximately 40% of the Company's global workforce." (SAC ¶55).

The statements that preceded this corrective disclosure that have been identified as arguably false and misleading included the allegedly false and misleading statement Zipperstein made in the April 12, 2013 Press Release. Both Plaintiffs' original Complaint and the First Amended Complaint ("FAC") quoted from the April 12, 2013 Press Release, identified Zipperstein as the maker of the statement, identified him as BlackBerry's Chief Legal Officer, and alleged that Zipperstein's statement was false and misleading. (*See* Compl. ¶¶53-54; FAC ¶¶49-50).

However, Plaintiffs argue – correctly – that they could not have included Zipperstein as a Defendant because they did not discover facts supporting an allegation of scienter on Zipperstein's part – or for that matter, on the part of *any* Defendant – until February 24, 2015, when the criminal complaint was filed in the Dunham criminal proceeding (discussed in the court's opinion at Docket Number 115). (Opp. 2). We know this because the FAC was dismissed, *inter alia*, for failure to plead scienter adequately, and Judge Griesa's decision in that regard was affirmed by the Second Circuit. Therefore, both the district court and the Court of Appeals concluded that whatever was pleaded by way of facts related to scienter (with respect to BlackBerry, Heins or Bidulka) in the original complaint were insufficient to state a claim that could withstand a motion to dismiss. This defect was cured only by virtue of the facts revealed in the Dunham complaint. As Plaintiffs point out, "both Judge Griesa and this Court held [the facts from the Dunham action] made the difference with respect to pleading scienter." (*Id.*). And that is absolutely true. *See Cox*, 660 Fed.App'x at 25.

Under controlling Second Circuit law, the start of the limitations period – which normally runs from the date of the corrective disclosure, was delayed until the discovery of facts necessary to survive a motion to dismiss for failure to plead scienter. *See City of Pontiac,* 637 F.3d at 175. It cannot be disputed that, until Plaintiffs had the facts from the Dunham action, they did not have the facts necessary to plead "scienter . . . with sufficient particularity to survive a motion to dismiss under the heightened pleading requirements for scienter under 15 U.S.C. § 78u–4(b)(2)." *Id.* We do not have to guess whether the original complaint adequately pleaded scienter – Judge Griesa dismissed it on that ground and the Second Circuit affirmed: "The district court correctly held that the allegations in the Complaint, even when considered holistically, fail to give rise to a strong inference of scienter." *Cox,* 660 Fed.App'x at 25. "The fact that defendants Heins and Bidulka occupied high-ranking positions at BlackBerry and had an incentive for the company to succeed" was deemed "insufficient to establish scienter." *Id.*

Those statements are law of the case, which this Court is not free to countermand. It is also law of the case that the addition of the facts revealed by the Dunham complaint cured that defect; Judge Griesa not only allowed the SAC to be filed on that basis, but concluded that the SAC would survive a motion to dismiss for failure to plead scienter – a conclusion that this Court reaffirmed after his death.

So while the contents of the Dunham complaint and allocution add nothing to the quantum of knowledge that Plaintiffs had specifically about Zipperstein's scienter, Plaintiffs are correct that the statute of limitations did not begin to run – against Zipperstein or anyone else – until February 24, 2015, the time of the filing of the Dunham action. This date is when Plaintiffs "discovered" the facts that would allow them to plead scienter and survive a motion to dismiss.

Plaintiffs' claim against Zipperstein is, therefore, timely.

## CONCLUSION

For the foregoing reasons, Defendant Zipperstein's motion is DENIED.

The Clerk of the Court is requested to close the open motion at Docket Number 797.

This constitutes the opinion and order of the Court. This is a written opinion.

Dated: April 4, 2022

                                                    U.S.D.J.

BY ECF TO ALL COUNSEL