UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK



---

MARVIN PEARLSTEIN, Individually And On
Behalf of All Others Similarly Situated,

Plaintiff,

   -against-

BLACKBERRY LIMITED (formerly known as
RESEARCH IN MOTION LIMITED),
THORSTEN HEINS, BRIAN BIDULKA, and
STEVE ZIPPERSTEIN,

Defendants.

No. 13 Civ. 7060 (CM) (KHP)
(Consolidated)

<u>MEMORANDUM AND ORDER</u>

---

Colleen McMahon, Senior United States District Judge:

        In accordance with Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs

Todd Cox and Mary Dinzik move for final approval of a settlement resolving all claims in this

securities fraud class action, approval of Plan of Allocation,[1] and approval of the Notice

(collectively, the "Settlement"). For the following reasons, the Settlement is APPROVED.

        Plaintiffs also move for an award of attorneys' fees in the amount of 33-1/3% of

the gross Settlement Fund, or $55,000,000; reimbursement for Plaintiffs' Counsel's litigation

expenses in the amount of $4,278,824.37; and case contribution awards of $100,000 to each of

Cox and Dinzik.  For the following reasons, these amounts are APPROVED.

---

[1]     Capitalized terms not otherwise defined have the meaning assigned to them by the parties in
the Stipulation of Settlement ("Settlement Agreement"). (ECF No. 817.)

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The initial complaint in this class action was filed against Defendants BlackBerry, Heins, and Bidulka on October 4, 2013 alleging that Defendants violated Sections 10(b) and 20(a) of the Exchange Act by making materially false and misleading statements and omissions concerning the purported success of BlackBerry's new line of BlackBerry 10 smartphones. (ECF No. 1.) As a result, Plaintiffs alleged that the price of BlackBerry's common stock was artificially inflated, and Class Members were damaged when the truth was revealed, and the stock price crashed. Id. Two additional complaints, alleging substantially similar claims, were filed October 8, 2013 and November 8, 2013. On March 24, 2014, the Court consolidated the three cases and appointed Mr. Cox and Ms. Dinzik as Lead Plaintiffs. (ECF No. 36 at 2.) Plaintiffs filed their first Consolidated Amended Class Action Complaint for Violations of Federal Securities Laws (the "FAC") on June 2, 2014. (ECF No. 42.) The Court granted Defendants' motion to dismiss the FAC on March 13, 2015. (ECF No. 54).

On March 31, 2015, Plaintiffs moved for reconsideration and requested leave to amend based on newly discovered facts. (ECF Nos. 56.) The Court denied the motion on November 13, 2015. (ECF No. 62.) On appeal, the Second Circuit vacated in part and remanded for reconsideration of whether Plaintiffs should be granted leave to amend. Cox v. Blackberry Ltd., 660 Fed. App'x 23 (2d Cir. 2016).  After further briefing, Plaintiffs were granted permission to file the Second Consolidated Amended Class Action Complaint for Violations of Federal Securities Laws (the "SAC") on September 29, 2017. (ECF No. 84.)[2] Defendants moved to dismiss the SAC on November 20, 2017. (ECF Nos. 96, 100.)

---

[2]     Steven Zipperstein was added as a defendant in the SAC.

All of the above took place under the supervision of The Hon. Thomas P. Griesa. Sadly, Judge Griesa died on December 24, 2017. The case was reassigned to this Court on December 13, 2017. On March 19, 2018, this Court denied Defendants' motion to dismiss the SAC in full. (ECF No. 115.)

Following the denial of the motion to dismiss the SAC, the parties began to engage in discovery and proceed with the litigation. On May 11, 2018, Plaintiffs filed a motion for class certification. (ECF No. 129.) But after the motion for class certification was fully briefed and set for oral argument, this action was placed on the Suspense Calendar on January 4, 2019, pending the Second Circuit's decision in Arkansas Teacher Ret. Sys. v. Goldman Sachs Grp., Inc., 955 F.3d 254 (2d Cir. 2010). After the decision was issued, Plaintiffs filed a renewed motion for class certification on June 8, 2020, (ECF No. 463), which was granted on January 26, 2021. (ECF No. 488.) Plaintiffs then provided the Class with notice of the Action as directed by the Court. (ECF Nos. 569, 572.)

On April 19, 2021, Defendants moved for summary judgment. (ECF No. 506.) Defendants also moved to strike Plaintiffs' responses to their Rule 56.1 statement. (ECF No. 557.) Both parties filed *Daubert* motions to exclude two of each side's experts (ECF Nos. 498, 500, 512, 514), which the Court granted in part and denied in part on September 10, 2021. (ECF No. 567.) The Court denied Defendants' motion for summary judgment and motion to strike on January 3, 2022. (ECF No. 573.) On May 6, 2021, while Defendants' motion for summary judgment and the Parties' *Daubert* motions were pending, the Parties engaged in an initial mediation with the Hon. Layn R. Phillips (Ret.) as mediator. However, these initial settlement discussions were unsuccessful. (ECF No. 821, at 7.)

3

On February 2, 2022, the Court issued a Ready for Trial Order, stating trial would be set for early April. (ECF No. 577.) On March 3, 2022, the Court informed the Parties that jury selection would begin on April 7, 2022. (ECF No. 604.) Plaintiffs filed ten motions *in limine* (eight were granted in full or in part, one was withdrawn, and one was denied) and opposed 22 of Defendants' 29 motions *in limine* (18 were denied or denied as moot). (ECF No. 790.) On March 14, 2022, the Court held a Final Pre-Trial Conference. On April 4, 2022, the Court denied the Defendant's motion for judgment on the pleadings. (ECF No. 809.)

Following the Final Pre-Trial Conference, the Parties agreed to engage in renewed settlement discussions. (ECF No. 821, at 7.) While initially the Parties' respective positions were very far apart and negotiations broke down, the Parties renewed discussions and on April 5, 2022, after more rounds of exchanging proposals, Judge Phillips made a mediator's proposal to settle the Action for the Settlement Amount. Both sides accepted the proposal on April 6, 2022— the day before jury selection was scheduled to begin. (ECF No. 821, at 9.) Under the terms of the settlement, Defendants paid $165 million into an interest-bearing escrow account to be allocated pursuant to a Plan of Allocation (ECF No. 830, at 12-13, 23.)

On June 13, 2022, Plaintiffs filed a motion to preliminarily approve the class action settlement. (ECF No. 815.) On June 14, 2022, the Court entered an order preliminarily approving the Settlement and setting a fairness hearing for September 29, 2022. (ECF No. 818.) The Court's Preliminary Approval Order established a detailed plan to provide notice to the Class, which Plaintiffs and the Claims Administrator followed. (ECF No. 833, at ¶¶ 3-5.) Three objections and three requests for exclusion were timely made. Of these, one objection has been formally withdrawn and all three exclusions are deficient. (ECF No. 831, at 2.)

DISCUSSION

I.      Final Settlement Approval

"The law favors compromise and settlement of class action suits." Christine Asia

Co. v. Jack Yun Ma, No. 15-md-02631, 2019 U.S. Dist. LEXIS 179836, at *34 (S.D.N.Y. Oct.

16, 2019) (citing Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 116 (2d Cir. 2005)

(noting "strong judicial policy in favor of settlements, particularly in the class action context")).

In determining whether to approve a settlement, "the Court should consider both the process by

which the settlement was negotiated and the substantive fairness of the agreed-upon terms in light

of the circumstances of the litigation." In re NQ Mobile, Inc. Secs. Litig., No. 13-cv-7608, 2016

U.S. Dist. LEXIS 189606, at *6 (S.D.N.Y. Mar. 11, 2016). Courts should "not decide the final

merits of the case or resolve unsettled legal questions." Carson v. Am. Brands, Inc., 450 U.S. 79,

88 n.14 (1981). This is particularly important in class actions and other complex cases where

substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged

litigation. See William Rubenstein, et al., 4 NEWBERG ON CLASS ACTIONS § 13.44 (5th ed. 2014).

    A.      Grinnell Factors

To evaluate a settlement's substantive fairness, courts in the Second Circuit

consider the nine factors identified in City of Detroit v. Grinnell: (1) complexity, expense, and

likely duration of the litigation; (2) reaction of the class; (3) stage of the proceedings and amount

of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6)

risks of maintaining the class action through trial; (7) defendants' ability to withstand a greater

judgment; (8) range of reasonableness of the settlement in light of the best possible recovery; and

(9) range of reasonableness of the settlement in light of all the attendant risk of litigation. 495

F.2d 448, 463 (2d Cir. 1974). "All nine factors need not be satisfied; the court must look at the

totality of these factors in light of the specific circumstances involved." In re Hi-Crush Partners L.P. Sec. Litig., No. 12-cv-8557, 2014 U.S. Dist. LEXIS 177175, at *14 (S.D.N.Y. Dec. 19, 2014).

### 1.   The Complexity, Expense, and Likely Duration of the Litigation

"[I]n evaluating the settlement of a securities class action, federal courts, 'have long recognized that such litigation is notably difficult and notoriously uncertain.'" In re Signet Jewelers Ltd. Sec. Litig., No. 16-cv- 6728, 2020 U.S. Dist. LEXIS 128998, at *11 (S.D.N.Y. July 21, 2010). "Accordingly, '[c]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation.'" Id.

This complex case required Plaintiffs to carry a heavy burden to convince a jury Defendants made material misrepresentations or omissions, Defendants acted with scienter, there was artificial inflation of BlackBerry securities, and declines in the prices of BlackBerry securities were attributable to disclosures of information revealing the fraud. See Maley v. Del Glob. Techs. Corp., 186 F.Supp. 2d 358, 372 (S.D.N.Y. 2002) (discussing "factual and legal hurdles" in establishing securities fraud case). Moreover, this case involved foreign defendants—a complexity courts have recognized in approving class action settlements. See Teachers' Ret. Sys. v. A.C.L.N., Ltd., No. 01-cv-11814, 2004 U.S. Dist. LEXIS 8608, at *6-7 (S.D.N.Y. May 14, 2004) (approving settlement where defendant, many witnesses, and documents were abroad, beyond the court's subpoena power).

Even if Plaintiffs prevailed at trial, "[d]elay, not just at the trial stage but through post-trial motions and the appellate process, would cause Class Members to wait years for any recovery, further reducing its value." Del Glob. Techs., 186 F. Supp. 2d at 362. Even very large

judgments recovered after lengthy litigation and trial can be completely lost on appeal or because of post-trial motion practice. This is especially true of securities class actions, where intervening shifts in legal standards have undermined trial victories. See, e.g., In re Vivendi Universal, S.A. Sec. Litig., 765 F. Supp. 2d 512, 533 (S.D.N.Y. 2011), aff'd, 838 F.3d 223 (2d Cir. 2016) (Supreme Court decision after entry of billion-dollar verdict reduced award to approximately $78 million). The Settlement provides the Class with substantial relief without the delay and risk of trial and post-trial proceedings, which offsets the potential of a higher award. As such, this factor strongly weighs in favor of approval.

### 2.   The Reaction of the Class to the Settlement

"The favorable reaction of the overwhelming majority of class members to the Settlement is perhaps the most significant factor in [the] Grinnell inquiry." Wal-Mart, 396 F.3d at 119. "If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." Id. at 118.

In this case over 100,000 notices were disseminated, 10,912 Proofs of Claims received, and there were only three objections and three requests for exclusion. (ECF No. 831, at 2.) Of the three objections, two have been successfully resolved. The first, an objection of Class Member G. Todd Cokinos, related to a misunderstanding of the supportive documentation requirement for his Claim(s). (ECF No. 831, at 3-4.) After receiving additional guidance from Lead Counsel regarding acceptable forms of supportive documentation, Mr. Cokinos successfully submitted Claims to the Claim Administrator (ECF No. 834, at ¶ 3.) While Lead Counsel did not request that Mr. Cokinos formally withdraw his objection, their understanding is that his concern has been addressed. (ECF No. 831, at 4.)

The second objection, from Swisscanto Fondsleitung AG, requested

7

clarification as to the scope of the covered transactions in the Settlement and the scope of the releases in the Stipulation. (ECF No. 826.) To resolve the issue, Plaintiffs and Defendants entered into the Amended Stipulation to further articulate that claims based on transactions on the Toronto Securities Exchange or any Canadian alternative trading system registered with Canadian securities regulators would not be subject to the release (ECF No. 830, at ¶ 2.) Swisscanto has since withdrawn the objection. (ECF No. 829.)

The final objection, from Claiton Richter, relates to the adequacy of the Settlement Amount and Mr. Richter's belief that "Blackberry should use all means to payback much higher amountf to all shareholders...." (ECF No. 832, Ex. A). Mr. Richter asserts that he should receive the difference between the amount he lost investing in BlackBerry stock and the amount he could have gained had he retained his investment in Facebook stock. Id. "Courts routinely overrule objections from class members that the anticipated relief they will receive under the settlement is too low." Sykes v. Mel Harris & Assocs., LLC, No. 09-cv8486, 2016 U.S. Dist. LEXIS 74566, at *57 (S.D.N.Y. May 24, 2016); see, e.g., In re Petrobras Sec. Litig., 317 F. Supp. 3d 858, 871 (S.D.N.Y. 2018) (overruling objection that settlement amount should represent "the full value of the loss realized," noting that "any recovery...was far from a certainty, given the substantial defenses that were raised"); In re Wachovia Equity Sec. Litig., No. 08-cv-6171, 2012 U.S. Dist. LEXIS 97910, at *11-12 (S.D.N.Y. June 8, 2012) (overruling objection that settlement was too low as "conclusory"); Hicks v. Stanley, No. 01-cv-10071, 2005 U.S. Dist. LEXIS 24890, at *17 (S.D.N.Y. Oct. 24, 2005) (overruling objections that settlement amount was too low as "[t]here are obstacles that the plaintiffs would face in continued litigation with defendants, and it is uncertain whether they could overcome these obstacles to prove both liability and damages"). Moreover, it would have been

impossible for Plaintiffs to advance a class-wide damages methodology premised on highly individualized, subjective determinations regarding each Class Member's "opportunity cost"; such damages are wholly unrelated to Plaintiffs' theory of liability. See, e.g., Waggoner v. Barclays PLC, 875 F.3d 79, 105-06 (2d Cir. 2017), cert. denied, 138 S. Ct. 1702 (2018).

With respect to the opt out requests, all three are deficient. See Farrell Exclusion Request (ECF No. 819, Ex. C, at 2) (does not provide supportive documentation or assert Farrell purchased shares during the Class Period); Wells Exclusion Request (ECF No. 819, Ex. A, at 1) (does not provide supportive documentation, evidence of authority to act in representative capacity, or assert Wells purchased shares during the Class Period); Geissler Exclusion Request (ECF No. 819, Ex. A, at 3) (asserts Geisslers purchased shares before the Class Period). In any event, three opt outs would not be sufficient to cause Defendants to walk away from the settlement.

Based on the above and the overwhelmingly positive response by the Class, the Court finds that this factor strongly favors approval.

### 3. The Stage of the Proceedings and the Amount of Discovery Completed

This factor asks, "whether the parties…counsel possessed a record sufficient to permit evaluation of the merits of Plaintiffs' claims, the strengths of the defenses asserted by Defendants, and the value of Plaintiffs' causes of action for purposes of settlement." Signet Jewelers, 2020 U.S. Dist. LEXIS 128998, at *19. Extensive discovery ensures the parties had access to sufficient material to evaluate the strengths and weaknesses of their cases and assess the settlement. See Parker v. Time Warner Entm't Co., 631 F. Supp. 2d 242, 259 (E.D.N.Y. 2009), aff'd sub nom. Lobur v. Parker, 378 F. App'x 63 (2d Cir. 2010).

Here, the proceedings were more than sufficiently advanced to provide Plaintiffs with a thorough understanding of the strengths and weaknesses of their claims. Indeed, by the time the Parties agreed to settle, they had completed fact and expert discovery and had litigated until the literal eve of trial. As a result, counsel "had a strong grasp of the strengths and weaknesses of the case when negotiating and evaluating the proposed Settlement...." New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC, No. 08-cv-5310, 2019 U.S. Dist. LEXIS 39807, at *15 (S.D.N.Y. Mar. 8, 2019), aff'd as modified sub nom. New Jersey Carpenters Health Fund v. NovaStar Mortg., Inc., 28 F.4th 357 (2d Cir. 2022). As such, this factor strongly favors approval.

4.  The Risks of Establishing Liability, Damages, and Maintaining the Class Through Trial

"Courts generally consider the fourth, fifth, and sixth Grinnell factors together." Dial Corp. v. News Corp., 317 F.R.D. 426, 432 (S.D.N.Y. 2016). With respect to establishing liability, there are substantial risks to prosecuting this Action through trial. "Securities litigation generally involves complex issues of fact and law." Del Glob. Techs., 186 F. Supp. 2d at 364. These risks "would be exacerbated by the risks inherent in all shareholder litigation, such as the unpredictability of a lengthy and complex jury trial, the risks that witnesses would suddenly become unavailable or jurors could react to the evidence in unforeseen ways." Id. at *51. Further, Plaintiffs face a "substantial risk involved in proving scienter, because it goes directly to a defendant's state of mind, and proof of state of mind is inherently difficult." Athale v. Sinotech Energy Ltd., No. 11-cv-05831, 2013 U.S. Dist. LEXIS 199696, at *16 (S.D.N.Y. Sept. 4, 2013). Defendants would diligently contest this issue and, at trial, would argue, *inter alia*, that clean audit opinions received by BlackBerry, lack of a restatement of BlackBerry's financials, and absence of any Class Period insider stock sales further negate scienter. See, e.g.,

10

ECF No. 507. Plaintiffs would also have to show that the alleged securities violations caused their losses. See Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 345-46 (2005). Defendants would argue at trial that the alleged misstatements had no price impact and the alleged corrective disclosures were not, in fact, "corrective." See, Vaccaro v. New Source Energy Partners L.P., No. 15-cv- 8954, 2017 U.S. Dist. LEXIS 205785, at *16 (S.D.N.Y. Dec. 14, 2017) ("Plaintiffs may have been unable to prove that Defendants' misleading statements were the cause of Plaintiffs' losses").

Furthermore, "[t]he determination of damages, like the determination of liability, is a complicated and uncertain process...." Del Glob. Techs., 186 F. Supp. 2d at 365. At trial, Plaintiffs would attempt to prove that Defendants' alleged misrepresentations artificially inflated the price of BlackBerry shares by a certain amount throughout the Class Period, which caused losses to Class Members who held their stock through a corrective disclosure. Defendants would argue that the amount of inflation, if any at all, was lower. See, e.g., ECF No. 476. These disputes would involve at trial a "battle of the experts," and a "jury could be swayed by experts for the Defendants, who [c]ould minimize the amount of Plaintiffs' losses." In re Bear Stearns Cos. Inc. Sec., Deriv. & ERISA Litig., 909 F. Supp. 2d 259, 266-268 (S.D.N.Y. 2012).

Finally, while the Court has certified the Class here, that does not obviate the risk of later decertification because "[FRCP] 23(c) authorizes a court to decertify a class at any time." In re Advanced Battery Techs. Sec. Litig., 298 F.R.D. 171, 178 (S.D.N.Y. 2014). Accordingly, the risks and uncertainties of maintaining class action status (and for the entire Class Period) supports approval of the Settlement. Overall, these factors counsel in favor of approving the settlement.

5.   The Ability of Defendants to Withstand a Greater Judgment

It is not certain as to whether Defendants could withstand a judgment much larger than the $165 million Settlement. Indeed, even if Plaintiffs won at trial and their expert economist's approach was endorsed by the jury and the verdict upheld on appeal, the issue of collectability would come into play given Defendants' lack of insurance and liquid assets. (ECF No. 821, at 20.) To fund the Settlement in cash, BlackBerry incorporated it into its financial results for its first quarter of fiscal year 2023, resulting in a $181 million net loss. (ECF No. 824, at ¶ 7.) The Settlement delivers an immediate all-cash fund for the benefit of Class Members near what Plaintiffs perceive as Defendants' maximum ability to pay. Thus, this factor strongly favors final approval.

Even if Defendants could withstand a greater judgment, this would not "be an impediment to settlement when [as here] the other factors favor the settlement." Hi-Crush, 2014 U.S. Dist. LEXIS 177175, at *24 (citing In re Sony SXRD Rear Projection TV Class Action Litig., 06 Civ. 5173, 2008 U.S. Dist. LEXIS 36093, at *23 (S.D.N.Y. May 1, 2008) ("[A] defendant is not required to 'empty its coffers before a settlement can be found adequate....'")).

6.   The Range of Reasonableness of the Settlement Fund in Light of the
Best Possible Recovery and All the Attendant Risks of the Litigation

Courts typically analyze the last two Grinnell factors together. See Grinnell, 495 F.2d at 463. In so doing, courts "consider[] and weigh[] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." Id. at 462. A court's "determination of whether a settlement amount is reasonable in light of the best possibl[e] recovery does not involve the use of a mathematical equation yielding a particularized sum." Bear Stearns, 909 F. Supp. 2d at 269.

Instead, "[t]here is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." Wal-Mart, 396 F.3d at 119.

The Settlement provides for a recovery of $165 million. After consulting with a damages expert, Plaintiffs and their counsel believe a successful verdict on all claims, in a perfect world, could result in aggregated damages to the Class as high as $1.2 billion. The Settlement thus represents approximately *13.75%* of Plaintiffs' estimated maximum recoverable damages. That is well within the range of reasonableness and, in fact, considerably above the high end of historical averages. See, e.g., In re China Sunergy Sec. Litig., No. 07-cv-7895, 2011 U.S. Dist. LEXIS 53007, at *15 (S.D.N.Y. May 13, 2011) ("[T]he average settlement amounts in securities fraud class actions where investors sustained losses over the past decade...have ranged from 3% to 7% of the class members' estimated losses...."); In re Initial Pub. Offering Sec. Litig., 671 F. Supp. 2d 467, 483 (S.D.N.Y. 2009) (citing law review article finding "the ratio of securities class action settlements to investors' economic losses has ranged over recent years between two and three percent"); In re Merrill Lynch & Co. Rsch. Reps. Sec. Litig., No. 02-md-1484, 2007 U.S. Dist. LEXIS 9450, at *33 (S.D.N.Y. Feb. 1, 2007) (recovery of approximately 6.25% "at the higher end of the range of reasonableness of recovery in class action[] securities litigations"). Indeed, the 13.75% recovery substantially exceeds the median recovery of 2.3% of simplified tiered damages for securities class actions with damages of over $1 billion between 2012-2020, as well as the median recovery of 4.2% of damages in 2021. (ECF No. 821, at 22.)

Further, as in any securities class action, it is almost certain that less than 100% of eligible Class Members will file claims (despite efforts made to notify as many eligible

claimants as possible); accordingly, the percentage of damages that claiming Class Members will recover will likely be higher—and could be significantly higher. And without opining overly on the merits, the court is skeptical that a jury would have awarded the amount claimed by Plaintiffs – another reason why settlement is appropriate here.

### 7.   Aggregation of All Factors

Overall, the Grinnell factors strongly counsel in favor of approving the Settlement. This action was contested at each stage of the litigation.   Additionally, Plaintiffs face substantial risk in proving misrepresentation, scienter, and loss causation.  Finally, only three members of the Proposed Class objected to the Settlement and two of those objections were resolved  and three members opted out  all three of which were deficient.

### B.   Rule 23(e) Requirements

"The factors set forth in Rule 23(e)(2) have been applied in tandem with the Second Circuit's Grinnell factors. Fed. R. Civ. P. 23(e) lists four factors to consider in determining fairness:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's-length; (C) the relief provided for the class was adequate, taking into account: (i) the cost, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

In negotiating the Settlement, Plaintiffs had the benefit of attorneys who are highly experienced in complex securities litigation and deeply familiar with the legal and factual issues of the case. (ECF No. 824, Ex. H, Ex. B, Ex. C.) The Settlement was reached through arm's-length negotiation, which included extensive mediation efforts led by a highly regarded mediator. (ECF No. 824, Ex. G, at ¶¶ 7-15.) The hard fought, arm's-length negotiations and

involvement of an experienced mediator "helps to ensure that the proceedings were free of collusion and undue pressure." D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001). Lead Counsel's belief that the Settlement is in the best interest of the Class (see ECF No. 824, at ¶¶ 114-17) "is entitled to "great weight." Signet Jewelers, 2020 U.S. Dist. LEXIS 128998, at *10. As the Parties and their counsel had litigated until the literal eve of trial, they were eminently knowledgeable about the strengths and weaknesses of the Action prior to the Settlement. Lead Counsel's request, on behalf of all Plaintiffs' Counsel, for a proposed fee award of 33-1/3% of the Settlement Fund is fair and reasonable. See discussion *infra* Section IV. With respect to Section (C)(iv), the Stipulation identifies that the Parties have entered into a Supplemental Agreement, as is standard practice in securities fraud class action settlements. (ECF No. 817 at ¶ 7.6.) The Supplemental Agreement provides Defendants with the option to terminate the Settlement if Class Members possessing a certain aggregate number of shares who meet certain criteria exclude themselves from the Class. Id. To protect the Class, the specific terms of the Supplemental Agreement are confidential "to avoid creating incentives for a small group of investors to opt out solely to leverage the threshold to exact an individual settlement." In re PPDAI Grp. Inc. Sec. Litig., No. 18-cv-6716, 2022 U.S. Dist. LEXIS 11427, at *34-35 (E.D.N.Y. Jan. 21, 2022). Finally, the proposed Plan of Allocation treats all Class Members equitably. See discussion *infra* Section II.

As both the Grinnell factors and the Rule 23(e)(2) factors weigh in favor of approving the Settlement, the Settlement is approved.

II.       The Plan of Allocation

"To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized—namely, it must be fair and adequate." In re EVCI

Career Colls. Holding Corp. Sec. Litig., No. 05-cv- 10240, 2007 U.S. Dist. LEXIS 57918, at *32 (S.D.N.Y. July 27, 2007). This does not mean that the plan must be "perfect"; rather, "[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." Id.

Here, Lead Counsel vetted the proposed Plan of Allocation and are of the opinion that it provides a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members who submit valid Claim Forms. (ECF No. 824, at ¶ 129.) A Recognized Loss amount will be calculated for each purchase or acquisition of BlackBerry common stock during the Class Period listed on the Claim Form and for which adequate documentation is provided. The calculation of Recognized Loss amounts is based on the difference between the amount of estimated alleged artificial inflation in BlackBerry common stock on the purchase date and the amount of estimated alleged artificial inflation on the sale date. (Id. at ¶ 130.) The sum of the Recognized Loss amounts for all of a Claimant's transactions in BlackBerry common stock is the Claimant's recognized claim ("Recognized Claim"), and the Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims. (Id. at ¶ 137.)

Because the Plan of Allocation appears to fairly and rationally allocate the proceeds of the Net Settlement Fund among Class Members and comes by the recommendation of experienced Class Counsel, it is approved.

III.     The Notice

The Court-approved notice included all the information required by Rule 23(c)(2)(B) and the PSLRA, 15 U.S.C. § 78u-4(a)(7), including: (i) an explanation of the nature of the Action and the claims asserted; (ii) the definition of the Class; (iii) the amount of the

Settlement; (iv) a description of the Plan of Allocation; (v) the Parties' reasons for proposing the

Settlement; (vi) the attorneys' fees and costs sought; (vii) how to opt-out of the Class; (viii) how

to object to the Settlement, Plan of Allocation, or the requested attorneys' fees or expenses; and

(ix) the binding effect of a judgment on Class Members. (ECF No. 818.) The Notice also apprised

Class Members about the final approval hearing, as did the Court's entry on PACER and the

Settlement website.

JND Legal Administration ("JND"), a nationally recognized claims administrator,

carried out the notice program under Lead Counsel's supervision. As the Court ordered, the

Postcard Notice was mailed to 99,938 potential Class Members. (ECF No. 824 at ¶ 124.) The

Summary Notice was also published twice—in *Business Wire* and *PR Newswire*—on July 5,

2022, directing potential Class Members to the settlement website at

www.BlackBerryUSSecuritiesLitigation.com (the "Website"), which contains the Notice, Claim

Form, Stipulation, Preliminary Approval Order, and other documents. (ECF No. 819 at ¶ 7.) The

Website, which is accessible 24 hours a day, seven days a week, also allows potential Class

Members to submit their claim online. (Id. at ¶ 9.) Additionally, JND has maintained a toll-free

telephone number to answer any questions from Class Members. (Id. at ¶ 8.)

This combination of individual first-class mail and/or email notice to all Class

Members who could be identified with reasonable effort, supplemented by publication notice in a

relevant widely circulated publication, via newswires, and posted on the internet, was "the best

notice practicable under the circumstances including individual notice to all members who can

be identified through reasonable effort." Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173-74

(1974) (citing FED. R. CIV. P. 23(c)(2)). As such, the Notice is approved.

IV.     Attorneys' Fees, Expenses, and Case Contribution Awards

Class Counsel seek an award of attorneys' fees of $55,000,000, which constitutes 33-1/3% of the $165,000,000 settlement fund, plus accrued interest, as well as reimbursement of litigation expenses in the amount of $4,278,824.37, plus accrued interest. In addition, Cox and Dinzik each request Case Contribution Awards in the amount of $100,000.

A.     Attorneys' Fees

The Supreme Court has held that where counsel has created a common fund, attorneys' fees are properly determined on a percentage-of-recovery basis. See Blum v. Stenson, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund doctrine,'…a reasonable fee is based on a percentage of the fund bestowed on the class…."). The Second Circuit has approved this method. Goldberger v. Integrated Res., Inc., 209 F.3d 43, 48-49 (2d Cir. 2000).

"As a 'cross-check on the reasonableness of the requested percentage,' however, courts also look to the lodestar multiplier, which should be a reasonable multiple of the total number of hours billed at a standard hourly rate." Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc., 2021 WL 76328, at *4 (S.D.N.Y. Jan. 7, 2021) (quoting Goldberger, 209 F.3d at 53).

In Goldberger, the Second Circuit explained that whether the court uses the percentage of-the-fund method or the lodestar approach, it should consider the traditional criteria that reflect a reasonable fee in common fund cases, including: (i) time and labor expended by counsel; (ii) risks of the litigation; (iii) magnitude and complexity of the litigation; (iv) requested fee in relation to the settlement; (v) quality of representation; and (vi) public policy considerations. 209 F.3d at 50. An analysis of these factors demonstrates that Counsel's

requested fee of one-third of the Settlement Fund, or $55,000,000, plus accrued interest, is fair and reasonable.

Class Counsel has expended significant time and labor over nearly nine years to litigate this case. Plaintiffs successfully appealed and vacated the dismissal of the first amended complaint, defeated Defendants' second attempt to dismiss the case, completed large-scale discovery, certified a class, defeated in large part Defendants' motion for summary judgment, and were fully prepared to take this matter to trial. At each stage, Class Counsel took on the risk that the claims would fail leaving Class Counsel with nothing. Finally, there is no public policy consideration suggesting a reduction in the requested fees. Rather, "Congress, the Executive Branch, and [the Supreme] Court…have recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission." Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455, 478 (2013). Accordingly, Class Counsel's requested percentage is in line with the Goldberger factors.

Class Counsel's request for one-third of the gross settlement fund is reasonable within this circuit. See In re Chi. Bridge & Iron Co. N.V. Secs. Litig.,No. 17-cv-1580, 2022 U.S. Dist. LEXIS 144451, at *4 & ECF Nos. 438, 446 (Aug. 5, 2022) (awarding 33-1/3% of $44 million settlement; trial preparations underway; pending nearly 5.5 years); In re JP Morgan Precious Metals Spoofing Litig., No. 18-cv-10356, ECF No. 114 (S.D.N.Y. July 7, 2022) (33.33% of $60 million settlement; case stayed pre-discovery due to related criminal prosecution; pending four and a half years); In re J.P. Morgan Stable Value Fund ERISA Litig., No. 12-cv-2548, 2019 U.S. Dist. LEXIS 163884, at *7, 16 (S.D.N.Y. Sept. 23, 2019) (33.33% of $75 million settlement; summary judgment denied; pending seven years); Merryman v. Citigroup

Inc., No. 15-cv-9185, ECF No. 163 (S.D.N.Y. July 3, 2019) (33.33% of $14.75 million settlement; discovery complete; pending four years).

A cross-check of Class Counsel's lodestar confirms the reasonableness of the requested award. Lead Counsel has expended over 36,000 hours in the investigation, prosecution, and resolution of the claims against Defendants, for a lodestar of $25,617,773.00, resulting in a multiplier of 2.15. (ECF No. 824, at ¶ 151.) Moreover, if re-calculated to include all Plaintiffs' Counsel, the lodestar is $34,175,242.50—which yields an even more modest lodestar multiplier of 1.61. Id. Further, after final approval there will be significant additional tasks relating to the Settlement, lowering the lodestar multiplier even further. See Clem v. KeyBank, N.A., No. 13-cv- 789, 2014 U.S. Dist. LEXIS 87174, at *27 (S.D.N.Y. June 20, 2014) (Where "class counsel will be required to spend significant additional time on this litigation in connection with implementing and monitoring the settlement, the multiplier will actually be significantly lower because the award includes not only time spent prior to the award, but after in enforcing the settlement.").

These multipliers are well within the range of multipliers that have been applied by courts in this Circuit in similar common fund cases. See JP Morgan Precious Metals, No. 18-cv-10356, ECF Nos. 99, 114 (multiplier of 3.24; fees of 33.33% of $60 million settlement); Osberg v. Foot Locker, Inc., No. 07- cv-1358, ECF No. 423 (S.D.N.Y. June 8, 2018) (4.8 multiplier; fees of 33% of $288.4 million settlement); Haddock v. Nationwide Life Ins. Co., No. 01-cv-1552, ECF Nos. 598-1, 601 (D. Conn. Apr. 9, 2015) (3.0 multiplier; fees of 35% of $140 million settlement); In re U.S. Foodservice, Inc. Pricing Litig., No. 07-md-1894, ECF No. 521 (D. Conn. Dec. 9, 2014) (2.23 multiplier; fees of 33.33% of $297 million settlement); Del Glob. Techs., 186 F.Supp. 2d at 369 (4.65 multiplier; fees of 33.33% of $11.5 million settlement).

This is a case in which lodestar plus multiplier makes sense, as it went all the way to the eve of trial and counsel really developed the entire case.

The billing rates used to develop Lead Counsel's lodestar are also reasonable. In a lodestar analysis, the appropriate hourly rates are those rates that are "normally charged in the community where the counsel practices, *i.e.*, the 'market rate.'" Hi-Crush, 2014 U.S. Dist. LEXIS 177175, at *38-40. The hourly billing rates for Lead Counsel attorneys working on this case ranged from $500 (associates) to $1,200 (senior partners). (ECF No. 824, at ¶ 169). These rates are comparable to peer plaintiffs and defense firms litigating matters of similar magnitude and complexity and similar rates have been approved by courts in this district. See, e.g., Belton v. GE Capital Consumer Lending, No. 21- cv-9492, ECF Nos. 11, 17 (S.D.N.Y. Feb. 10, 2022) (awarding fees with attorney rates ranging from $350 to $1,100 an hour); In re Hudson's Bay Co. Consumer Litig., No. 18-cv-8472, ECF Nos. 187, 189-218 (S.D.N.Y. June 8, 2022) (awarding fees with hourly attorney rates of $330-$1,000).

In light of the time and effort devoted to this case by Plaintiffs' Counsel to achieve the $165 million recovery and the lodestar cross-check – whether based on Lead Counsel's time alone (2.15) or including all Plaintiffs' Counsel (1.61)— the Court finds the requested fee award is reasonable.

B.    Class Counsel's Request for Reimbursement of Expenses

Lead Counsel requests that the Court grant reimbursement of $4,278,824.37 in expenses—consisting of $4,093,462.31 in litigation expenses advanced by Lead Counsel and $185,362.06 in litigation expenses advanced by Additional Class Counsel. "It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they

advanced to a class, and should therefore be reimbursed "for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation.'" Christine Asia Co., 2019 U.S. Dist. LEXIS 179836, at *68.

The expenses for which Class Counsel seek reimbursement are of the type normally reimbursed. Further, no member of the Class has objected to Class Counsel's request for reimbursement of expenses. (ECF No. 831, at 3.) Accordingly, Class Counsel's request for reimbursement is granted.

### C.   Case Contribution Awards

Finally, Cox and Dinzik each request a Case Contribution Award of $100,000. Mr. Cox and Ms. Dinzik were actively involved in the litigation and diligently and capably represented the best interests of the Class, from their appointment as Lead Plaintiffs in March 2014 through the Settlement. In total, Mr. Cox and Ms. Dinzik devoted more than 420 and 260 hours, respectively, to the litigation, sacrificing significant time away from work and personal obligations. (ECF No. 824, ¶¶ 198-202). Plaintiffs' requested awards are commensurate with the level of their involvement in the Action, and, further, the awards only represent approximately 0.3% of the total settlement amount. These awards also fall well below the noticed cap of $125,000, to which no Class Members have objected. (ECF No. 824, ¶ 203).

The award amount is consistent with similar awards granted in this district. See, e.g., In re Flag Telecom Holdings, No. 02-cv-3400, 2010 U.S. Dist. LEXIS 119702, at *89-90 (S.D.N.Y. Nov. 5, 2010) (awarding $100,000 (0.4% of the settlement) to lead plaintiff based on his involvement over eight years of litigation); Alaska Elec. Pension Fund v. Bank of Am. Corp., No. 14-cv-7126, 2018 U.S. Dist. LEXIS 202526, at *18 (S.D.N.Y. Nov. 29, 2018)

(awarding $500,000 ($50,000 to six plaintiffs and $100,000 to two), finding "the considerable effort expended by the named Plaintiffs to assist in the litigation renders the incentive awards requested [ ] appropriate" and "in the aggregate they amount to a miniscule portion of the settlement fund" (0.09%)). Accordingly, the Case Contribution Awards to Cox and Dinzik are approved.

CONCLUSION

For the foregoing reasons, the motion for final approval of the settlement is granted and the motion for an award of attorneys' fees and expenses and case contribution award is granted. The Proposed Settlement, Plan of Allocation, and Notice are approved. In addition, Class Counsel is awarded attorneys' fees in the amount of $55,000,000, representing 33-1/3% of the Settlement Fund. Moreover, Class Counsel shall be reimbursed for $4,278,824.37 in litigation expenses forthwith. Finally, Cox and Dinzik may each be disbursed $100,000 forthwith.

The Clerk of Court is directed to terminate all pending motions and to mark this case closed.

Dated: September 29, 2022

_____
United States District Judge

BY ECF TO ALL PARTIES